UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-CV-20465-BLOOM/Elfenbein

**IVAN R. FREITES C.**, *et al.*,

    Plaintiffs,

v.

**HORACIO MEDINA**, *et al.*,

    Defendants.
_____/

## REPORT AND RECOMMENDATION ON PLAINTIFFS' MOTION TO DISQUALIFY SARDI LAW PLLC AS COUNSEL FOR DEFENDANT CENTER FOR LIBERAL DEMOCRACY DEVELOPMENT, INC.

**THIS CAUSE** is before the Court on *Pro se* Plaintiffs Ivan R. Freites C. ("Freites"), Miguel Enrique Otero C. ("Otero"), and Jorge Alejandro Rodriguez M. ("Rodriguez")'s Motion to Disqualify Sardi Law PLLC as Counsel for Defendant Center for Liberal Democracy Development, Inc. (the "Motion").[1] *See* ECF No. [51]. In the Motion, Plaintiffs ask the Court to disqualify Carlos Sardi ("Sardi") and his law firm Sardi Law PLLC ("Sardi Law") from representing Defendant Center for Liberal Democracy Development, Inc. ("CLDD") because Sardi "holds three simultaneous roles with respect to CLDD," which Plaintiffs contend violate the Florida Rules of Professional Conduct. *See* ECF No. [51] at 1–2. The Honorable Beth Bloom referred this case to me "for a Report and Recommendations." *See* ECF No. [75]. For the reasons

---

[1] Although Freites was the only Plaintiff when the Motion was filed on March 19, 2025, *see* ECF No. [51], an Amended Complaint adding Otero and Rodriguez as Plaintiffs was filed the same day, *see* ECF No. [52]. Because the Amended Complaint was timely filed within 21 days of Defendants' Motion to Dismiss, *see* ECF No. [16]; ECF No. [52]; Fed. R. Civ. P. 15(a)(1)(B), and because all three Plaintiffs signed the Reply in Support of the Motion filed on April 10, 2025, *see* ECF No. [778]; ECF No. [79], the Court construes the Motion as being advanced by Freites, Otero, and Rodriguez.

explained below, I respectfully **RECOMMEND** that the Motion, **ECF No. [51]**, be **DENIED**.

I.     RELEVANT BACKGROUND

According to their Amended Complaint, Plaintiffs are "known Venezuelan dissidents in exile" who are "actively involved in significant legal proceedings related to" Venezuela's "state-owned oil company" and "its U.S. subsidiary." ECF No. [52] at 15. Defendants are a group of twenty — ten individuals, four for-profit companies, and six non-profit corporations, ECF No. [52] at 21–30 — that Plaintiffs allege coordinated a "malicious campaign involving defamation, intimidation, obstruction of justice, witness tampering, and racketeering against" them, ECF No. [52] at 15. Three Defendants are particularly relevant here: CLDD, which is a Florida non-profit that was "administratively dissolved" in September 2023, *see* ECF No. [51] at 3; ECF No. [52] at 25–26; Orlando Viera-Blanco, "an attorney and former Venezuelan diplomat" who was an officer of CLDD, *see* ECF No. [51] at 3; ECF No. [52] at 21; and José Carrasquero, a social media manager who was also an officer of CLDD, *see* ECF No. [51] at 3; ECF No. [52] at 22. Sardi and Sardi Law are counsel representing CLDD, Viera-Blanco, and Carrasquero in this lawsuit. ECF No. [51] at 1–3.

In the Motion, Plaintiffs ask the Court to disqualify Sardi and Sardi Law from representing CLDD because of "multiple, unresolvable conflicts of interest." ECF No. [51] at 1–2. Specifically, they note that Sardi was (and, because "a dissolved corporation does not cease to exist for litigation purposes," remains) a corporate officer of CLDD and is also CLDD's registered agent and legal counsel. ECF No. [51] at 2–4. They argue Sardi's "overlapping roles" are problematic in several ways: (1) his "fiduciary obligations" as CLDD's "Secretary/Treasurer . . . can conflict with his duty as legal counsel" and give him "access to privileged corporate information that should not be used in litigation"; (2) his "neutral" role as CLDD's registered agent

does not comport with his adversarial role as legal counsel, which gives him "control over what legal communications are disclosed"; (3) his legal representation of both CLDD and its officers Viera-Blanco and Carrasquero creates a conflict of interest; and (4) his "ability to act independently as lawyer for CLDD" is "compromised by his personal stake in the corporation." *See* ECF No. [51] at 3–5.

In his Response, Sardi argues Plaintiffs do not have standing to bring the Motion because they have never been involved with CLDD, so they lack the privity of contract with Sardi required to assert a conflict of interest. *See* ECF No. [66] at 3. As to the merits of the Motion, Sardi argues both that Plaintiffs base the Motion on imagined events that "what could potentially be the basis for disqualification without more" and that there is no conflict of interest because CLDD, Viera-Blanco, and Carrasquero "all have the same collective objective — defeating Plaintiff's baseless claims against them in this case," so their interests are "are aligned with each other, not against each other." *See* ECF No. [66] at 2, 4–5. He argues there is no law prohibiting his multiple representation and notes that CLDD, Viera-Blanco, and Carrasquero "authorized their joint representation by Sardi Law in this litigation after consultation with" him. *See* ECF No. [66] at 5.

In their Reply, Plaintiffs argue they have standing because their "interests are directly impacted by Sardi Law's dual representation," as it "can use CLDD strategically to shield" Viera-Blanco and Carrasquero "from discovery, privilege disclosure, or accountability" just as those individual Defendants have misused CLDD to "conceal wrongdoing." *See* ECF No. [79] at 3–4. On the merits, they argue Sardi's representation of CLDD is "procedurally infirm" because it was not approved by a majority of CLDD's Board. *See* ECF No. [79] at 4. They argue there has been a "direct conflict of interest" between Plaintiff Freites and Sardi Law based on Sardi Law's refusal to reimburse service costs that Freites asserts he incurred because Sardi Law failed in its capacity

3

as CLDD's registered agent to update CLDD's address. *See* ECF No. [79] at 4–6. They argue Sardi's multiple roles violate Florida Rules of Professional Conduct 4-1.7 and 4-1.13. *See* ECF No. [79] at 6–7. And they argue that CLDD, Viera-Blanco, and Carrasquero's interests "currently align only because CLDD's separate rights are" being "ignored." *See* ECF No. [79] at 2.

The Court held a hearing on the Motion on April 29, 2025 (the "Hearing"). *See* ECF No. [76]; ECF No. [114]; ECF No. [129]. At the Hearing, the Court heard argument from Plaintiffs and from Sardi. *See* ECF No. [129]. Plaintiffs argued that Sardi's joint representation violates Rule 4-1.7(a)(1)–(2) and Rule 4-1.13(e) because Sardi may have interests that do not align with CLDD, Viera-Blanco, and Carrasquero, which could impact discovery if Sardi does not want to disclose something that the others do. Sardi argued that Plaintiffs' concern about a future conflict is speculative and, even if the joint representation did eventually create a conflict of interest, the conflict was remedied when Manuel Avendaño — a non-party who was one of CLDD's four directors (along with Viera-Blanco, Carrasquero, and Sardi himself) — authorized Sardi Law to represent CLDD after consultation. *See* ECF No. [89]; ECF No. [119]. The Motion is now ripe for review.

## II. LEGAL STANDARDS

### A. Standing in Motions to Disqualify

"As a general proposition, a party does not have standing to seek disqualification where" there "is no privity of contract between the attorney and the party claiming a conflict of interest." *See THI Holdings, LLC v. Shattuck*, 93 So. 3d 419, 424 (Fla. 2d DCA 2012) (alteration adopted, quotation marks omitted). But "[c]omments to the Rules of Professional Conduct indicate that under certain circumstances someone other than the client may request disqualification." *See State Farm Mut. Auto. Ins. Co. v. K.A.W.*, 575 So. 2d 630, 632 (Fla. 1991). Indeed, "where a conflict

4

'is such as clearly to call in question the fair or efficient administration of justice, opposing counsel may properly raise the question.'" *Id.* (quoting R. Reg. Fla. Bar 4-1.7 cmt.). This exception to the general standing rule applies because, in the language of Florida courts, the opposing party has an interest sufficient to allow him to "stand in the shoes" of the challenged attorney's client. *See id.*; *Shattuck*, 93 So. 3d at 424.

The Florida Supreme Court has held a lawyer's representation "call[ed] into question the fair administration of justice" when "confidential information" the lawyer learned "during the course of the attorney-client relationship" with a former client "could be used" against the former client in the new lawsuit. *See K.A.W.*, 575 So. 2d at 633 (disqualifying a lawyer because he had previously represented a client in a lawsuit against a driver who injured the client and his family, then sought to represent the former client's family in a later lawsuit against the client himself). In *K.A.W.*, the Court held the use of that information was "adverse to the" liability insurers who were "obligated to act in" the former client's defense, as it would be unfair for the lawyer to "have a potential informational advantage over those who must defend" the former client that the lawyer gained from his former representation. *See id.* The Court concluded that it defied "logic to suggest that the" insurers did "not have a legitimate interest in seeking to prevent the opposing parties from using confidential information obtained from their insured through a prior attorney-client relationship," so the insurers had "standing to request the law firm's disqualification." *See id.*

**B. Substantive Law on Motions to Disqualify**

"Although they implicate ethical concerns, motions to disqualify are substantive motions affecting the rights of the parties." *Kleiman v. Wright*, 662 F. Supp. 3d 1247, 1252 (S.D. Fla. 2023) (quotation marks omitted). "When ruling on a motion to disqualify counsel, a court must be conscious of its responsibility to preserve a reasonable balance between the need to ensure

ethical conduct on the part of lawyers appearing before it and other social interests, which include the litigant's right to freely chosen counsel." *Vital Pharms., Inc. v. Alfieri*, 585 F. Supp. 3d 1347, 1349–50 (S.D. Fla. 2022) (quotation marks omitted). "Disqualification of counsel should be resorted to sparingly and should be ordered only where there exists a reasonable possibility that the impropriety already has occurred." *Id.* at 1350 (alteration adopted, quotation marks omitted); *see also Norton v. Tallahassee Mem'l Hosp.*, 689 F.2d 938, 941 n.4 (11th Cir. 1982) (noting that "[d]isqualification is a harsh sanction"). "Because a party is presumptively entitled to the counsel of his choice, that right may be overridden only if compelling reasons exist." *In re BellSouth Corp.*, 334 F.3d 941, 961 (11th Cir. 2003) (quotation marks omitted).

Motions to disqualify "are governed by two sources of authority — federal common law and local rules of court." *Kleiman*, 662 F. Supp. 3d at 1252. In the Southern District of Florida, the Local Rules instruct that the Rules Regulating the Florida Bar govern the professional conduct of attorneys. *See* S.D. Fla. L.R. 11.1(c). To grant a motion to disqualify that is "based on an allegation of ethical violation, the court may not simply rely on a general inherent power to admit and suspend attorneys, without any limit on such power." *Schlumberger Techs., Inc. v. Wiley*, 113 F.3d 1553, 1561 (11th Cir. 1997). Instead, the "court must clearly identify a specific Rule of Professional Conduct which is applicable to the relevant jurisdiction and must conclude that the attorney violated that rule." *Id.* That is because "accusations of unethical conduct are among the most serious of allegations that a court must consider," *id.* at 1562 (alterations adopted, quotation marks omitted), as "disciplinary action and consequent disqualification may expose counsel to further sanctions by the bar and portends adverse effects upon counsel's careers and public image," *Kleiner v. First Nat'l Bank of Atlanta*, 751 F.2d 1193, 1200 n.14 (11th Cir. 1985).

Relevant here, Florida Bar Rules dictate that "a lawyer must not represent a client if either

"the representation of [one] client will be directly adverse to another client" or "there is a substantial risk that the representation of [one] or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer." *See* R. Reg. Fla. Bar 4-1.7(a) (providing the rule for dealing with "conflict[s] of interest" and "representing adverse interests"). There is an exception to Rule 4-1.7(a), however, if the affected clients give "informed consent." *See* R. Reg. Fla. Bar 4-1.7(a), (b); *Prudential Ins. Co. of Am. v. Anodyne, Inc.*, 365 F. Supp. 2d 1232, 1236 (S.D. Fla. 2005) (noting that the "conflict is waivable"). Informed consent exists "if: (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client; (2) the representation is not prohibited by law; (3) the representation does not involve the assertion of a position adverse to another client when the lawyer represents both clients in the same proceeding before a tribunal; and (4) each affected client gives informed consent, confirmed in writing or clearly stated on the record at a hearing." *See* R. Reg. Fla. Bar 4-1.7(b).

Florida Bar Rules also explain when a lawyer can act as counsel for an organization and its individual members: "A lawyer representing an organization may also represent any of its directors, officers, employees, members, shareholders, or other constituents, subject to the provisions of rule 4-1.7. If the organization's consent to the dual representation is required by rule 4-1.7, the consent shall be given by an appropriate official of the organization other than the individual who is to be represented, or by the shareholders." *See* R. Reg. Fla. Bar 4-1.13(e).

Where "a lawyer's conduct is allegedly unethical but does not threaten the orderly administration of justice" — by, for example, engaging in "in-court misconduct or deliberate challenges to the court's authority" — "violating an ethical rule is a necessary but not always sufficient condition for disqualification." *Kleiman*, 662 F. Supp. 3d at 1253 & n.2; *Anodyne*, 365

7

F. Supp. 2d at 1236 (noting that "disqualification is never automatic" (quotation marks omitted)). "[E]ven if an ethical rule has been violated, the Court must look to 'various factors, such as the nature of the ethical violation; the prejudice to the parties; the effectiveness of counsel in light of the violations; the public's perception of the profession; and whether or not the attempt to disqualify an attorney is used as a tactical device or a means of harassment.'" *Kleiman*, 662 F. Supp. 3d at 1253 (quoting *Anodyne*, 365 F. Supp. 2d at 1237); *see also Anodyne*, 365 F. Supp. 2d at 1237 ("Rather than reflexively requiring disqualification for an ethical infraction, the better approach is to employ a balancing test.").

"The party moving to disqualify counsel bears the burden of proving the grounds for disqualification." *In re BellSouth*, 334 F.3d at 961. Courts in this Circuit "will not deprive an attorney of the opportunity to practice his profession on the basis of a determination after the fact that conduct is unethical if responsible attorneys would differ in appraising the propriety of that conduct." *In re Finkelstein*, 901 F.2d 1560, 1565 (11th Cir. 1990) (quotation marks omitted). And the drafters of the Florida Bar Rules have noted that, while "opposing counsel may properly raise the question" of whether a lawyer's representation is proper if "the conflict is such as clearly to call in question the fair or efficient administration of justice," any such objection by an opposing party "should be viewed with caution" because "it can be misused as a technique of harassment." *See* R. Reg. Fla. Bar 4-1.7 cmt. (noting, in subsection titled "Conflict charged by an opposing party," also that "[r]esolving questions of conflict of interest is primarily the responsibility of the lawyer undertaking the representation" but that "[i]n litigation, a court may raise the question when there is reason to infer that the lawyer has neglected the responsibility").

**III.   DISCUSSION**

As noted above, Plaintiffs base the Motion on Sardi's "overlapping roles" as CLDD's

director, registered agent, and legal counsel. They argue that the triple role both gives him an unfair advantage in this litigation (because of his access to privileged corporate information and his ability to control what information is released to them in discovery) and creates a irremediable conflict of interest (because CLDD's interests may not be aligned with Viera-Blanco and Carrasquero's interests and because his personal stake in the corporation may compromise his ability to act independently as lawyer for CLDD). *See* ECF No. [51] at 2–5; ECF No. [79]. The Court disagrees.

### A. Standing

As an initial matter, the Court must address Sardi's argument that Plaintiffs do not have standing to assert that a conflict of interest exists in his representation of CLDD, Viera-Blanco, and Carrasquero. Because there is no privity of contract between Sardi and Plaintiffs, *see Shattuck*, 93 So. at 424, they have standing to seek disqualification only if they can show a conflict that calls into question the fair administration of justice and allows them to stand in CLDD's shoes, *see K.A.W.*, 575 So. 2d at 632–33; *Shattuck*, 93 So. 3d at 424; R. Reg. Fla. Bar 4-1.7 cmt.; *In re BellSouth*, 334 F.3d at 961. They have not done so.

Plaintiffs' standing argument rests on their belief that Sardi can use CLDD strategically to shield Viera-Blanco and Carrasquero from discovery, privilege disclosure, or accountability, similar to the way Plaintiffs allege Viera-Blanco and Carrasquero misused CLDD to conceal wrongdoing, *see* ECF No. [79] at 3–4, which the Court construes as a concern about Sardi's purported control of confidential information. The first problem with this argument is that it implicates Rule 4-1.6 and Rule 4-1.9,[2] which are not the Rules Plaintiffs raised as a basis for their

---

[2] Rule 4-1.6 deals with the confidentiality of information, including when a lawyer may, must, and cannot reveal "information relating to a client's representation." *See* R. Reg. Fla. Bar 4-1.6. Rule 4-1.9 deals with conflicts of interest involving a former client, including when a lawyer may, must, and cannot use or reveal information related to his representation of a former client. *See* R. Reg. Fla. Bar 4-1.9.

9

Motion. As the Eleventh Circuit has noted, to disqualify a lawyer based on a violation of a Rule of Professional Conduct, the Court must clearly identify the specific Rule the lawyer violated, *see Wiley*, 113 F.3d at 1561–62, and it is Plaintiffs' burden to prove the grounds for disqualification, *see In re BellSouth*, 334 F.3d at 961. The Court concludes that Plaintiffs' burden extends to the threshold issue of whether they have standing to bring the Motion.

Plaintiffs did not argue in the Motion, in their Reply, or at the Hearing that Sardi has violated Rule 4-1.6, *see generally* ECF No. [51]; ECF No. [79], despite the Court asking them repeatedly during the Hearing to identify the specific Rules they contend Sardi violated. Plaintiffs briefly mention Rule 4-1.9 in their Reply, *see* ECF No. [79] at 5, but that passing reference is both too late, *see In re Egidi*, 571 F.3d 1156, 1163 (11th Cir. 2009) ("Arguments not properly presented in a party's initial brief or raised for the first time in the reply brief are deemed waived."), and too cursory, *see Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) (noting the Eleventh Circuit has "long held" a party "abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority"), to merit discussion. And neither of the Rules Plaintiffs identified, Rule 4-1.7(a)–(b) and Rule 4-1.13(e), includes a limitation on the use or disclosure of confidential information. *See* R. Reg. Fla. Bar 4-1.7(a)–(b); R. Reg. Fla. Bar 4-1.13(e); *contra* R. Reg. Fla. Bar 4-1.13(b) (explaining when a lawyer representing an organization must minimize "the risk of revealing information relating to the representation to persons outside the organization"). As a result, the Court finds Plaintiffs have not properly presented their argument that they have standing based on Sardi's purported control of confidential information, which would have to proceed under Rule 4-1.6 or Rule 4-1.9.[3]

---

[3] Because Plaintiffs are proceeding *pro se*, the Court must of course read their filings liberally. *See, e.g.*, *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998) ("*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed."). But the Court cannot and will not "serve as *de facto* counsel for a party" or "rewrite an otherwise deficient

But even if Plaintiffs had properly identified and argued Rule 4-1.6 or Rule 4-1.9 as the basis for standing, however, there is a second problem with this argument: they have not shown that Sardi's representation of CLDD calls into question the fair administration of justice, which is what they — as someone other than Sardi's client — must show to request disqualification. *See K.A.W.*, 575 So. 2d at 632; R. Reg. Fla. Bar 4-1.7 cmt.  Although the Florida Supreme Court has disqualified a lawyer who had confidential information that could have given him an unfair informational advantage in a lawsuit, *see K.A.W.*, 575 So. 2d at 633, it did so under circumstances different than those presented here.

In *K.A.W.*, the Court disqualified a lawyer who learned confidential information while representing a former client from representing an opposing party who was suing *that same former client* because the information went to the heart of, and offered proof for, the opposing party's claim against the former client. *See id.* (noting that information the former client disclosed "to his attorneys during the course of the attorney-client relationship could be used to prove" the former client "was negligent").  Here, by contrast, Plaintiffs are not Sardi's former clients, and Sardi has not learned any confidential information from them that he could use to their disadvantage in this lawsuit.  To the extent Plaintiffs argue that Sardi has an unfair informational advantage as CLDD's lawyer because he obtained "privileged corporate information" as a director of CLDD, *see* ECF No. [51] at 4–6, that is an informational advantage Sardi would have even if he held no other role with CLDD.  Because Sardi is CLDD's lawyer, CLDD is free to share with him any corporate information it wishes, including privileged information, without worry that the shared information will become public.  The protections of the attorney-client privilege exist for exactly that purpose.

---

pleading." *See GJR Invs., Inc. v. Cnty. of Escambia*, 132 F.3d 1359, 1369 (11th Cir. 1998) (noting that the leniency due to *pro se* litigants "does not give a court license" to do those things). By mentioning Rule 4-1.9, Plaintiffs have shown they are aware of its possible relevance here, but they have not fleshed out their argument of that Rule.  The Court cannot do it for them. *See GJR Invs., Inc.*, 132 F.3d at 1369.

11

To the extent Plaintiffs argue that Sardi could "block discovery of documents" by asserting that they are "privileged corporate data," *see* ECF No. [51] at 4–6, there is nothing inherently prejudicial or against the fair administration of justice about that. In fact, it is part of a lawyer's job to determine whether documents sought in discovery are privileged and to withhold any such privileged documents (while producing a proper privilege log, of course). If Plaintiffs intended to argue that Sardi could withhold CLDD's documents based on a false or unsupportable assertion of privilege — which the use of the word "claiming" in the Motion suggests, *see* ECF No. [51] at 6 — that implication is nothing but speculation at this stage of the litigation. Plaintiffs offer no concrete examples in support of a conclusion that Sardi has used his role as CLDD's lawyer unethically to improperly "shield" CLDD, Viera-Blanco, or Carrasquero from their discovery obligations.[4] *See generally* ECF No. [51]; ECF No. [79]. And because accusations of unethical conduct are among the most serious allegations that can be made against a lawyer, *see Wiley*, 113 F.3d at 1562; *Kleiner*, 751 F.2d at 1200 n.14, speculation without evidence is not enough.

As a result, the Court finds Plaintiffs have not met their burden of proving they have standing to challenge Sardi's representation of CLDD. *See K.A.W.*, 575 So. 2d at 632–33; *Shattuck*, 93 So. 3d at 424; R. Reg. Fla. Bar 4-1.7 cmt.; *In re BellSouth*, 334 F.3d at 961. Accordingly, I respectfully **RECOMMEND** that the Motion, **ECF No. [51]**, be **DENIED** on that

---

[4] The one concrete example Plaintiffs offer involves a request for reimbursement of service costs due to an error in CLDD's address, which implicates Sardi's role as registered agent of CLDD. *See* ECF No. [79] at 4–6. Plaintiffs argue that example "demonstrates that Sardi Law's interests are directly adverse to Freites' financial interests, creating a conflict" under Rules 4-1.7 and 4-1.9, *see* ECF No. [79] at 5, but even assuming that is true, the Florida Bar Rules do not prohibit conflicts between counsel and opposing parties. Plaintiffs' other argument connected to the reimbursement issue is that Sardi Law has a "direct conflict" with CLDD because Sardi Law is to blame for the address mix up, so it has an interest in "avoiding financial liability for the breach of" its "statutory duties" as CLDD's registered agent. *See* ECF No. [79] at 5. But Plaintiffs' assertion that "Sardi Law's dual role as both advocate and potential defendant" will somehow "weaken[] its capacity to represent CLDD in this case," *see* ECF No. [79] at 5–6, is simply more speculation, not an example of an actual, current conflict.

basis.

### B. Merits

Even if Plaintiffs could convince the Court that they have standing to raise the disqualification issue, they cannot establish the legal requirements for disqualification. In this District, evaluating a motion to disqualify based on an allegation of an ethical violation is a two-step process: first, the "court must clearly identify a specific Rule of Professional Conduct which is applicable to the relevant jurisdiction and must conclude that the attorney violated that rule." *See Wiley*, 113 F.3d at 1561. If the attorney violated a specific professional rule but has not "threaten[ed] the orderly administration of justice," the court must then "look to 'various factors, such as the nature of the ethical violation; the prejudice to the parties; the effectiveness of counsel in light of the violations; the public's perception of the profession; and whether or not the attempt to disqualify an attorney is used as a tactical device or a means of harassment.'" *Kleiman*, 662 F. Supp. 3d at 1253 (quoting *Anodyne*, 365 F. Supp. 2d at 1237). The evaluation of the factors in the second step is "a balancing test." *See Anodyne*, 365 F. Supp. 2d at 1237.

Here, the Court need not reach the second step of the balancing test because Plaintiffs have not shown that Sardi violated a Florida Bar Rule in his representation of CLDD, Viera-Blanco, and Carrasquero. *See In re BellSouth*, 334 F.3d at 961 (noting that the "burden of proving the grounds for disqualification" falls on the moving party); *Kleiman*, 662 F. Supp. 3d at 1252 (noting that local court rules govern motions to disqualify); S.D. Fla. L.R. 11.1(c) (noting that the Rules Regulating the Florida Bar govern the professional conduct of attorneys in this District). Plaintiffs contend Sardi violated Rule 4-1.7(a)–(b) and Rule 4-1.13(e). *See* ECF No. [51]; ECF No. [79]. But based on the information presently before the Court, Sardi has violated neither Rule.

### 1. Rule 4-1.7(a)–(b)

The Court begins with Rule 4-1.7(a), which prohibits a lawyer from representing a client if that representation would "be directly adverse to another client" or if "there is a substantial risk that the representation of [one] or more clients will be materially limited by the lawyer's responsibilities to another client . . . or by a personal interest of the lawyer." *See* R. Reg. Fla. Bar 4-1.7(a). Plaintiffs argue Sardi has violated this Rule because his representation of CLDD, Viera-Blanco, and Carrasquero "creates direct adversity and divided loyalties," but they do not explain how or why that is so. *See* ECF No. [51] at 7. In their Reply, they further argue that "CLDD's corporate interests (winding up efficiently) inherently conflict with" Viera-Blanco and Carrasquero's "personal litigation interests (avoiding personal liability)," but they again do not explain how or why. *See* ECF No. [79] at 6.

Plaintiffs' Hearing arguments fair no better. At the Hearing, they argued Sardi may have interests that do not align with CLDD, Viera-Blanco, or Carrasquero, which could impact discovery because Sardi may not want to provide information when CLDD, Viera-Blanco, or Carrasquero do. But not only is that argument pure speculation, it also once again implies Sardi would disobey his clients' directives when there is no evidence to support such an implication. And as explained above, speculative accusations of unethical conduct are simply not enough to warrant disqualification. *See Wiley*, 113 F.3d at 1561–62; *Kleiner*, 751 F.2d at 1200 n.14.

Even assuming Sardi's representation of CLDD, Viera-Blanco, and Carrasquero would somehow be adverse to one or more of their interests, Rule 4-1.7(b) gives them the right to waive that conflict as long as they give "informed consent, confirmed in writing." *See* R. Reg. Fla. Bar 4-1.7(b); *Anodyne*, 365 F. Supp. 2d at 1236 (noting that the "conflict is waivable"). And as Sardi notes, CLDD, Viera-Blanco, or Carrasquero — through written declarations attached to the

Response — "authorized their joint representation by Sardi Law in this litigation after consultation." *See* ECF No. [66] at 5; ECF No. [66-1]; ECF No. [66-2]. That is precisely what was necessary to agree to the joint representation and waive any potential conflict that might arise. *Cf.* ECF No. [79] at 6 (implicitly recognizing that any conflicts could be resolved by "informed, independent consent").

Plaintiffs' final Rule 4-1.7 argument is that Sardi's "ability to act independently as a lawyer for CLDD" is "compromised by his personal stake in the company." *See* ECF No. [51] at 5. They argue that, despite being "administratively dissolved" in September 2023, CLDD "continues legal existence" to "wind up affairs and defend legal proceedings." *See* ECF No. [79] at 2. At the Hearing, Plaintiffs suggested Sardi might still have a personal stake in CLDD that compromises his ability to act as CLDD's lawyer because, if CLDD is found liable for damages in this lawsuit, Sardi may bear personal responsibility for those damages as one of CLDD's directors.

Plaintiffs are correct that, under Florida law, a "corporation administratively dissolved continues its corporate existence but may not conduct any affairs except that necessary to wind up and liquidate its affairs . . . and adopt a plan of distribution of assets." *See* Fla. Stat. § 617.1421(3). But Florida law also provides that a "director, officer, or agent of a" dissolved corporation "is personally liable for the debts, obligations, and liabilities of the corporation" only to the extent that: (1) those debts, obligations, and liabilities arise from the director's own action on behalf of the corporation; (2) the debts, obligations, and liabilities were "incurred subsequent to the corporation's administrative dissolution"; and (3) the director had "actual notice of the administrative dissolution at the time such action is taken." *See* Fla. Stat. § 617.1421(4). And even if a director meets the criteria to be liable for the dissolved corporation's debts, obligations, and liabilities, "such liability shall be terminated upon the ratification of such action by the

15

corporation's board of directors or members subsequent to the reinstatement of the corporation." *See* Fla. Stat. § 617.1421(4).

First, any action Sardi takes in his capacity as CLDD's legal counsel would not meet the requirements of § 617.1421(4) because that subsection defines when a director, officer, or agent of a dissolved corporation is personally liable for the debts, obligations, and liabilities of the corporation. *See* Fla. Stat. § 617.1421(4). It does not define when a dissolved corporation's legal counsel can be tagged with those debts, obligations, and liabilities. Second, given that all four members of CLDD's Board agreed to Sardi's representation of CLDD after being informed of the potential conflicts because they believe their "collective" interests and "mutual" goals are "aligned" and not adverse, *see* ECF No. [66] at 5; ECF No. [66-1]; ECF No. [66-2]; ECF No. [89]; ECF No. [119], it is logical to conclude the Board would ratify any action Sardi takes in his capacity as one of CLDD's directors. That ratification would terminate any personal liability to Sardi. *See* Fla. Stat. § 617.1421(4).

Accordingly, the Court finds that Plaintiffs have not met their burden of showing that Sardi has violated Rule 4-1.7(a). *See Wiley*, 113 F.3d at 1561–62; *Kleiner*, 751 F.2d at 1200 n.14; *In re BellSouth*, 334 F.3d at 961; R. Reg. Fla. Bar 4-1.7. As a result, the Court need not reach the second step of the *Anodyne* balancing test as to Rule 4-1.7(a). *See* 365 F. Supp. 2d at 1237; *Kleiman*, 662 F. Supp. 3d at 1253.

2.  **Rule 4-1.13(e)**

Moving to Rule 4-1.13(e), that provision allows a "lawyer representing an organization" to "also represent any of its directors, officers, employees, members, shareholders, or other constituents, subject to the provisions of rule 4-1.7." *See* R. Reg. Fla. Bar 4-1.13(e). And as just discussed above, Rule 4-1.7(b) gives the organization's directors the right to waive any conflict of

16

interest that may arise during that joint representation if they give "informed consent, confirmed in writing." *See* R. Reg. Fla. Bar 4-1.7(b); *Anodyne*, 365 F. Supp. 2d at 1236 (noting that the "conflict is waivable"). The only restriction on the right to give informed consent in the Rule 4-1.13(e) context is that, if "the organization's consent to the dual representation is required by rule 4-1.7, the consent shall be given by an appropriate official of the organization other than the individual who is to be represented, or by the shareholders." *See* R. Reg. Fla. Bar 4-1.13(e).

In this lawsuit, there are four people who could give that consent on CLDD's behalf: Sardi, Viera-Blanco, Carrasquero, and Manuel Avendaño. That is true because those four men were the directors of CLDD. *See* ECF No. [51] at 11; ECF No. [52] at 25–26; ECF No. [119] at 3. Though Rule 4-1.13(e) does not say so explicitly, because Sardi is the retained counsel at issue, he certainly cannot consent, in his role as director, to his representation of CLDD on the corporation's behalf. And because Viera-Blanco and Carrasquero are the individuals Sardi seeks to represent and his simultaneous representation of CLDD theoretically could adversely affect them, they also cannot consent to Sardi's representation of CLDD on the corporation's behalf. *See* R. Reg. Fla. Bar 4-1.13(e). That leaves Avendaño.

Avendaño is not a party to this lawsuit, but he is a director of CLDD. *See* ECF No. [51] at 11; ECF No. [52] at 21–30; ECF No. [119] at 3. And he has signed a declaration authorizing "CLDD, a now defunct entity," to "be represented by Sardi Law." *See* ECF No. [119] at 3. Although Avendaño appears to be personally represented by Sardi in some capacity, *see* ECF No. [119] at 3 (noting that his "attorney of choice" is "Carlos E. Sardi, Esq. of the law firm Sardi Law, PLLC"), that representation is not in connection with this lawsuit because Avendaño is not a Defendant. *See* ECF No. [52] at 21–30. As a result, the Court finds that Avendaño meets the criteria in Rule 4-1.13(e) to consent to Sardi's joint representation of CLDD, Viera-Blanco, and

17

Carrasquero on CLDD's behalf.  *See* R. Reg. Fla. Bar 4-1.13(e).

Avendaño gave that consent, in writing, after consultation informing him of the potential conflicts.  *See* ECF No. [119] at 3.  In fact, Avendaño averred that the "collective interest" of CLDD and all its directors "are aligned and not adverse" because their "mutual goal is to defeat" Plaintiffs' "baseless claims to smear" their "names to get a litigation tactical advantage in a parallel proceeding," *see* ECF No. [119] at 3, a position that comports with that of Viera-Blanco and Carrasquero, *see* ECF No. [66] at 5; ECF No. [66-1]; ECF No. [66-2].  Accordingly, Sardi has been properly authorized to represent both the organization (CLDD) and its individual directors (Viera-Blanco and Carrasquero) in this lawsuit.  *See* R. Reg. Fla. Bar 4-1.13(e); R. Reg. Fla. Bar 4-1.7(b); *Anodyne*, 365 F. Supp. 2d at 1236.

Because Avendaño properly authorized Sardi's joint representation of CLDD, Viera-Blanco, and Carrasquero in this lawsuit, the Court finds that Plaintiffs have not met their burden of showing that Sardi has violated Rule 4-1.13(e).  *See Wiley*, 113 F.3d at 1561–62; *Kleiner*, 751 F.2d at 1200 n.14; *In re BellSouth*, 334 F.3d at 961; R. Reg. Fla. Bar 4-1.13(e).  As a result, the Court need not reach the second step of the *Anodyne* balancing test as to Rule 4-1.13(e).  *See* 365 F. Supp. 2d at 1237; *Kleiman*, 662 F. Supp. 3d at 1253.  Plaintiffs have not met their burden of showing that Sardi has violated any Florida Bar Rule, so I respectfully **RECOMMEND** that the Motion, **ECF No. [51]**, be **DENIED** on that basis as well.

This recommendation comports with the approach taken generally in this Circuit, which has repeatedly noted that "[d]isqualification is a harsh sanction," *Norton*, 689 F.2d at 941 n.4, that "should be resorted to sparingly and should be ordered only where there exists a reasonable possibility that the impropriety already has occurred," *Alfieri*, 585 F. Supp. 3d at 1350 (alteration adopted, quotation marks omitted).  This is our Circuit's view both "[b]ecause a party is

presumptively entitled to the counsel of his choice [and] that right may be overridden only if compelling reasons exist," *see In re BellSouth Corp.*, 334 F.3d at 961 (quotation marks omitted), and because "accusations of unethical conduct are among the most serious of allegations that a court must consider," *see Wiley*, 113 F.3d at 1562 (alterations adopted, quotation marks omitted). *See also Kleiner*, 751 F.2d at 1200 n.14 (noting that "disciplinary action and consequent disqualification may expose counsel to further sanctions by the bar and portends adverse effects upon counsel's careers and public image").

In reaching this conclusion, the Court has been "conscious of its responsibility to preserve a reasonable balance between the need to ensure ethical conduct on the part of lawyers appearing before it and other social interests, which include the litigant's right to freely chosen counsel." *Alfieri*, 585 F. Supp. 3d at 1349–50 (quotation marks omitted). The Court has also followed the commentary from the Florida Bar, which has noted that when, as here, opposing parties have questioned whether a lawyer's representation is proper, the motion to disqualify "should be viewed with caution" because "it can be misused as a technique of harassment." *See* R. Reg. Fla. Bar 4-1.7 cmt. Balancing those interests, and in light of that necessary caution, the Court will not recommend depriving Sardi at this early stage of litigation "of the opportunity to practice his profession on the basis of a" premature allegation of possible future unethical conduct. *See In re Finkelstein*, 901 F.2d at 1565 (quotation marks omitted).

### IV. CONCLUSION

Because Plaintiffs do not have standing to challenge Sardi's representation of CLDD and, even if they did, they have not met the legal requirements for disqualifying him or his law firm, I respectfully **RECOMMEND** that the Motion, **ECF No. [51]**, be **DENIED**.

The Parties will have **fourteen (14) days** from the date of being served with a copy of this

Report and Recommendation within which to file written objections, if any, with the Honorable Beth Bloom, United States District Judge. Failure to timely file objections shall bar the Parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the Parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1.

        **RESPECTFULLY SUBMITTED** in Chambers in Miami, Florida on May 12, 2025.

_____
**MARTY FULGUEIRA ELFENBEIN**
**UNITED STATES MAGISTRATE JUDGE**

cc:    All Counsel of Record

Ivan R. Freites C.
c/o Villasana
4370 NW 107th Ave, Apt. 102
Doral, FL 33178
*PRO SE*

Miguel Enrique Otero C.
Plaintiff.v.Medina@proton.me
*PRO SE*

Jorge Alejandro Rodriguez M.
Plaintiff.2.v.Medina@proton.me
*PRO SE*