## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 25-cv-20465-BLOOM/Elfenbein

IVAN R. FREITES, et al.,

      Plaintiffs,

v.

HORACIO MEDINA, et al.,

      Defendants.

_____/

## ORDER GRANTING MOTION TO DISMISS

**THIS CAUSE** is before the Court upon Defendants Orlando Viera-Blanco, Jose Vicente Carrasquero, Jose Alexis Ortiz, Thaelman Urgelles, Lino Carrillo, Center for Liberal Democracy Development Inc., ASM Investing LLC, Tezcua Investments LLC, American Venezuelan Engagement Foundation Inc., Venezolanos y Americanos Inc., Altamira Cinema Corp., Venezuelan American Petroleum Association, and Latino Communications LLC's Motion to Dismiss, Plaintiffs' Amended Complaint, ECF No. [96]. Plaintiffs Ivan Freites, Miguel Enrique Otero, and Jorge Alejandro Rodriguez ("Plaintiffs") filed an untimely Response. *See* ECF No. [150]. Also before the Court is Defendant Horacio Medina's Motion to Dismiss Amended Complaint, ECF No. [100], to which Plaintiffs also filed an untimely Response. ECF No. [137].[1] Defendants did not file a reply. For the reasons that follow, Defendants' Motions are granted. The

---

[1] Hereinafter, the Court will refer to Defendants Orlando Viera-Blanco, Jose Vicente Carrasquero, Jose Alexis Ortiz, Thaelman Urgelles, Lino Carrillo, Center for Liberal Democracy Development Inc., ASM Investing LLC, Tezcua Investments LLC, American Venezuelan Engagement Foundation Inc., Venezolanos y Americanos Inc., Altamira Cinema Corp., Venezuelan American Petroleum Association, and Latino Communications LLC *and Horacio Medina* collectively as "Defendants."

federal claims contained in Plaintiffs' Amended Complaint are dismissed with prejudice, while the state law claims are dismissed without prejudice.

## I.   BACKGROUND

This action arises from the Defendants' alleged "coordinated and malicious campaign [of] defamation, intimidation, obstruction of justice, witness tampering, and racketeering against Plaintiffs" as a result of Plaintiffs' involvement in "legal proceedings related to the Venezuelan state-owned company, [Petróleos de Venezuela, S.A.] (PDVSA), and its U.S. subsidiary, CITGO [the "Delaware litigation"]."[2] ECF No. [52] at 15.

Plaintiffs are self-described dissidents "involved in exposing corruption and pursuing a legal action related to PDVSA and CITGO assets." *Id.* at 35-36. According to Plaintiffs, "[t]heir advocacy threatens the interests of individuals aligned with both the Nicolás Maduro regime in Venezuela and certain factions of the U.S.-recognized Venezuelan interim government." *Id.* at 36. Defendants oppose Plaintiffs' advocacy and legal action and thus sought to discredit Plaintiffs through "a coordinated defamatory campaign." *Id.* at 37.

In order to undermine Plaintiffs, "Defendants orchestrated a sophisticated, targeted, and sustained campaign of malicious communications, defamatory social media posts, and videos falsely labeling Plaintiffs as 'traitors,' 'false opposition,' and corrupt conspirators." *Id.* at 14-15. "In August and September 2023, Defendant Horacio Medina . . . recorded and circulated audio messages accusing Plaintiffs of betraying Venezuela," which Defendants Lino Carrillo and Jose Carrasquero later "amplified" by reposting on social media and forwarding the clips through WhatsApp groups. *Id.* at 37. Defendant Medina also "ordered subordinates in Gente del Petroleo

---

[2] The underlying case Plaintiffs are referring to is *Freites C., et al. v. The Bolivarian Republic of Venezuela, et al.*, 1:23-cv-00989. *See* ECF No. [52] at 19; *see also Ivan R. v. The Bolivar1an Republic of Venezuela*, No. CV 23-989 (JLH), 2024 WL 522635, at *1 (D. Del. Feb. 9, 2024) (renaming case).

and UNAPETROL to amplify said message[s] labeling Plaintiffs as "estafadores" (fraudsters) and other false and damaging statements[.]" *Id.* at 38.

In the months following, "Medina, Carrillo, Viera-Blanco, and the corporate entities they control[,] constantly and frequently disseminated damaging information against Plaintiffs in a coordinated manner[.]" *Id.* Around March or April 2024, Defendant Gustavo Lainette "produced a series of professionally edited video segments that were published on YouTube, Facebook, and Twitter" with the intended purpose to "sabotage [Plaintiffs'] ongoing litigation in Delaware against CITGO and PDVSA." *Id.* at 38-39. The videos "falsely labeled Plaintiffs as 'falso opositores' (false opposition) engaged in conspiracies to enrich themselves at the expense of Venezuela." *Id.* at 39. One video in particular accused Plaintiff Otero "of having colluded with the late President Hugo Chavez'[s] regime, and insinuat[ed] [that] Plaintiff Rodriguez received illicit funds from ex-PDVSA official Rafael Ramirez." *Id.* at 39. While there were numerous allegedly false claims made by Defendants, "Plaintiffs were consistently depicted by Defendants as traitors, frauds, and corrupt opportunists." *Id.* Defendants Alexis Ortiz, Federico Medina, and Orlando Viera-Blanco[3] also facilitated the defamation scheme by sharing defamatory videos and statements and revealing confidential information on their social media pages.[4] *Id.* at 40.

Plaintiffs allege the defamation campaign was "deliberately intended to intimidate Plaintiffs, retaliate against their participation in legal proceedings, destroy their reputations, silence their advocacy, and obstruct judicial processes[.]" *Id.* at 16. Defendants also made extortionate

---

[3] Plaintiffs specifically allege that "Viera-Blanco took to Twitter on May 24, 2024, to publicly expose the fact that Plaintiff Rodriguez was an anonymous litigant under court seal in a U.S. case." ECF No. [52] at 40. Plaintiffs do not offer specific details about Ortiz or Medina's conduct. *Id.*

[4] In addition to carrying out their smear campaign on social media, "Defendants also utilized email newsletters and blog posts." ECF No. [52] at 41.

threats to Plaintiffs, threatening both their safety and livelihoods in order "to influence the outcome of the court proceedings and silence Plaintiffs' opposition to corruption." *Id.* at 16.

To fund their campaign of defamation and extortion, Defendants improperly diverted money from foreign state-controlled entities, engaged in money laundering, financial fraud, and misrepresented their respective tax-exempt statuses, which allowed Defendants to obtain illicit funds to bankroll their defamatory and retaliatory operations. *See id.* at 16-17. According to Plaintiffs, Defendants' collective conduct constituted both a civil conspiracy and a pattern of racketeering.

As a result of Defendants' defamatory smear campaign and purported threats, the Amended Complaint asserts the following claims: (Count I) RICO claim—18 U.S.C. § 1962(c); (Count II) Florida Common Law Civil Conspiracy; (Count III) Defamation; (Count IV) Invasion of Privacy—Public Disclosure of Private Facts; (Count V) Intentional Infliction of Emotional Distress; (Count VI) Negligence; (Count VII) Conspiracy to Interfere with Civil Rights—42 U.S.C. §§ 1985(2)-(3); (Count VIII) Neglect to Prevent Civil Rights Violations—42 U.S.C. § 1986; (Count IX) Florida Aiding and Abetting claim; and (Count X) Alien Tort Statute claim—28 U.S.C. § 1350. *Id.* at 3-4.

Defendants now seek to dismiss Plaintiffs' Amended Complaint because: (1) the Court lacks subject matter jurisdiction as Plaintiffs have failed to allege any legally cognizable federal claims;[5] (2) the Amended Complaint constitutes an impermissible shotgun pleading; and (3) Plaintiffs fail to assert state law claims upon which relief may be granted. *See* ECF No. [96]; ECF No. [100]. Although Plaintiffs failed to timely respond to Defendants' Motions, *see* ECF No. [133],

---

[5] While Defendant Medina argues that Plaintiffs have not properly asserted any federal claims, he does not argue that Plaintiffs' failure to state a federal claim means the Court lacks subject matter jurisdiction over the case. *See generally* ECF No. [100].

[134], [137], [150],[6] and have failed to show good cause or excusable neglect to justify their delayed filings, [7] the Court will nevertheless consider Plaintiffs' Responses to address the merits of the claims asserted.

Plaintiffs respond that the Amended Complaint (1) is not a shotgun pleading as it "gives sufficient notice and detail to allow a meaningful response; and (2) plausibly states claims upon which relief may be granted. ECF No. [137], [150].

## II.  LEGAL STANDARD

### A.  Setting Forth a Claim for Relief

To state a claim for relief, a pleading must contain: "(1) a short and plain statement of the grounds for the court's jurisdiction . . .; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought[.]" Fed. R. Civ. P. 8(a). "A

---

[6] Defendants filed their Motions to Dismiss on April 17, 2025. *See* ECF No. [96]; ECF No. [100]. Accordingly, the deadline to file a Response to both Motions was May 1, 2025. *See* S.D. Fla. L.R. 7.1(c)(1) ("For all motions, except motions served with the summons and complaint, each party opposing a motion shall file and serve an opposing memorandum of law no later than fourteen (14) days after service of the motion"). Plaintiffs did not request an extension and did not file a response to either Motion until May 6, 2025. *See* ECF Nos. [133], [134], [137], [150]. Accordingly, Plaintiffs are in default, and their responses generally should not be considered. *See Clark v. Hager*, Case No.: 2:22-cv-46, 2022 WL 952732, at *1 (M.D. Fla. Mar. 30, 2022) ("If Plaintiffs expect lenient deadlines because they are pro se, federal courts offer no such treatment." (quoting *Wayne v. Jarvis*, 197 F.3d 1098, 1104 (11th Cir. 1999) ("Liberal construction does not mean liberal deadlines."), *overruled on other grounds by Manders v. Lee*, 338 F.3d 1304 (11th Cir. 2003)).

[7] On May 8, 2025, Plaintiffs filed a notice of "good cause for Leave to File Out of Time or, Alternatively, Response to Defendant's Notice of Non-Response." ECF No. [143]. In the Notice, Plaintiffs contend that their failure to file timely Responses was the result of "extraordinary circumstances beyond Plaintiffs' control." *Id.* Specifically, Plaintiffs allege that because of a nationwide power blackout in Spain on April 28, 2025, and International Workers' Day being held on May 1, 2025, Plaintiffs were not able to timely file their opposition to Defendants' Motions. *See id.* Notwithstanding Plaintiffs' explanation, the Court is not persuaded there is good cause for the entirety of the delay. While Plaintiffs allege the issues on April 28, 2025, and May 1, 2025, caused a delay, Plaintiffs do not explain why their Responses were not filed until May 6, 2025, and May 8, 2025. *See* ECF Nos. [137], [150]. Since Plaintiffs contend their Responses would have been timely but for the national holiday, then it stands to reason that the Responses should have been filed no later than May 2nd or May 3rd, not May 6th and May 8th. Because Plaintiffs offer no explanation for the additional delay, particularly the May 8, 2025 Response, the Court does not find good cause or excusable neglect to consider Plaintiffs' arguments in opposition.

party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). More importantly, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests[.]" *Twombly*, 550 U.S. at 555 (citation and quotation marks omitted).

### B. *Pro Se* Pleadings

Courts must "construe *pro se* pleadings liberally, holding them to a less stringent standard than those drafted by attorneys." *Arrington v. Green*, 757 F. App'x 796, 797 (11th Cir. 2018) (citing *Hughes v. Lott*, 350 F.3d 1157, 1160 (11th Cir. 2003)). Still, a *pro se* party must abide by "the relevant law and rules of court, including the Federal Rules of Civil Procedure." *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989).

## III.   DISCUSSION

### A.  Shotgun Pleading

The Federal Rules of Civil Procedure require a pleading to contain a "short and plain statement of the claim" showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). Complaints that violate either Rule 8(a)(2) or Rule 10(b), or both, are often disparagingly referred to as "shotgun pleadings." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015). In *Weiland*, the Eleventh Circuit identified four common shotgun pleading archetypes: (1) "a complaint containing multiple counts where each count adopts the allegations of all preceding counts," (2) a complaint guilty of "being replete with conclusory, vague, and immaterial facts[,]" (3) a complaint that commits the sin of "not separating into a different count each cause of action or claim for relief," and (4) a complaint that asserts "multiple claims against multiple defendants without identifying which of the defendants are responsible for which acts or

omissions, or which of the defendants the claim is brought against." *Id.* at 1321–23. The "unifying characteristic" of shotgun pleadings is that they fail "to give defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.*

The Eleventh Circuit has repeatedly and unequivocally condemned shotgun pleadings as a waste of judicial resources. "Shotgun pleadings, whether filed by plaintiffs or defendants, exact an intolerable toll on the trial court's docket, lead to unnecessary and unchanneled discovery, and impose unwarranted expense on the litigants, the court and the court's para-judicial personnel and resources. Moreover, justice is delayed for the litigants who are 'standing in line,' waiting for their cases to be heard." *Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1356-57 (11th Cir. 2018) (quoting *Cramer v. Fla.*, 117 F.3d 1258, 1263 (11th Cir. 1997)); *Finch v. Carnival Corp.*, 701 F. Supp. 3d 1272, 1279 (S.D. Fla. 2023).

Defendants argue that Plaintiffs' Complaint is the quintessential shotgun pleading given its "blatant violations." ECF No. [96] at 11. Defendants contend "the Amended Complaint fits into all four shotgun pleading archetypes" and therefore it "should be dismissed on that basis" alone. ECF No. [100] at 5. Defendants point out that the Amended Complaint violates the first *Weiland* archetype by not only incorporating preceding counts into subsequent counts, but also by stating that the Amended Complaint "fully incorporate[s] and realleg[es] all allegations, facts, claims, and causes of action set forth in the original Complaint" ECF No. [100] (quoting ECF No. [52] at 3); *see also* ECF No. [96] at 11. Defendant Medina further argues that "the Amended Complaint is 'replete with conclusory, vague, and immaterial facts.'" *Id.* at 6 (quoting *Weiland*, 792 F.3d at 1322).[8] According to Medina, Plaintiffs rely on "broad, vague allegations that Defendants made

---

[8] The other Defendants did not make this specific argument when arguing that Plaintiffs' Amended Complaint constituted a shotgun pleading. *See generally* ECF No. [96].

defamatory statements and unauthorized disclosures, supported only by conclusory statements that Plaintiffs have been harmed or threatened." *Id.*

Additionally, Defendants argue that Plaintiffs violate the third *Weiland* archetype by failing to separate each count. Defendants specifically point to Count VII, where Plaintiffs include "two distinct causes of action—violations of 42 U.S.C. §§ 1985(2) and 1985(3)—within a single count." ECF No. [100] (citing ECF No. [52] at ¶¶ 267-87); *see also* ECF No. [96] at 11. Lastly, Defendants note that the Amended Complaint fails to distinguish between different Defendants and fails to specify which statement or conduct is attributable to which defendant in each count. *See* ECF No. [10] at 7; ECF No. [96] at 11. Therefore, since Plaintiffs' allegations fit into all four shotgun pleading archetypes, Defendants insist the Amended Complaint should be dismissed accordingly.

Plaintiffs respond that the "Amended Complaint is well-organized, with numbered counts and clearly defined factual allegations[,]"[9] with "[e]ach count tied to specific conduct and defendants." ECF No. [137] at 2. According to Plaintiffs, "[t]he Complaint describes a targeted campaign of obstruction of justice, defamation, intimidation, and other tortious acts orchestrated by [Defendants] to punish and deter Plaintiffs for their involvement in litigation against Venezuela's state oil company." *Id.* Therefore, "[t]he Complaint gives sufficient notice and detail to allow a meaningful response." *Id.*

The Court agrees with Defendants that Plaintiffs' Amended Complaint constitutes a classic shotgun pleading as it suffers from all four mortal sins outlined by the Eleventh Circuit in *Weiland*. Plaintiffs commit the first sin of alleging multiple counts that improperly incorporate preceding

---

[9] Plaintiffs argue that despite Defendants' insistence to the contrary, "[i]ncorporating prior paragraphs by refence is standard practice and not prejudicial." ECF No. [137] at 2; ECF No. [150] at 2. Thus, their incorporation of prior paragraphs does not constitute a shotgun pleading.

counts. Plaintiffs not only reincorporate the prior complaint in its entirety,[10] they also incorporate previous paragraphs of the instant Complaint without specific reference,[11] making it virtually impossible to identify which portions of the prior allegations Plaintiffs are referencing and which facts support each count. *See Gross v. UPS*, No. 23-10808, 2024 WL 1299107, at *3 (11th Cir. Mar. 27, 2024) (finding that incorporating prior complaints whole cloth constituted an impermissible shotgun pleading) (citing *Cook v. Randolph County, Ga.*, 573 F.3d 1143, 1151 (11th Cir. 2009)); *see also Doe v. Norwegian Cruise Lines, LTD*, 744 F. Supp. 3d 1300, 1310 (S.D. Fla. 2024) (finding the complaint constituted a shotgun pleading as it re-alleged and incorporated by reference all of the allegations contained in the proceeding counts) (citing *Weiland*, 792 F.3d at 1321).

Furthermore, Plaintiffs committed the second mortal sin by making conclusory allegations throughout the Amended Complaint, failing to identify what statements amounted to wrongdoing or when the alleged conduct took place. *See Weiland*, 792 F.3d at 1323 (citing *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001) ("The complaint is replete with allegations that 'the defendants' engaged in certain conduct, making no distinction among the fourteen defendants charged, though geographic and temporal realities make plain that all of the defendants could not have participated in every act complained of.")). Defendants are also correct that Plaintiffs have committed the third and fourth sin by improperly merging distinct causes of action into single counts, as they did in Count VII, while also failing to clearly identify which defendant was responsible for the wrongful conduct in each count. *See Weiland*, 792 F.3d at 1322 (describing the

---

[10] The Amended Complaint states: "Plaintiffs fully incorporate and reallege all allegations, facts, claims, and causes of action set forth in the original Complaint, as if fully restated herein." ECF No. [52] at 3 ¶ 1.

[11] *See* ECF No. [52] at 55, ¶ 113 ("Each of the following counts realleges and incorporates by reference all preceding paragraphs of this Complaint, as though fully set forth in each count.").

third common type of shotgun pleading as one that does not separate into a different count each cause of action); *Gonsalves-Carvalhal v. Aurora Bank, FSP*, Civ. Act. No. 14-CV-151-SCJ-LTW, 2014 WL 12544828, at *1 (N.D. Ga. Jul. 21, 2014) (explaining that shotgun pleadings [ ] are often characterized by factually unsupported claims and frequently fail to specify which defendant is responsible for each act alleged.") (citing *Beckwith v. Bellsouth Telecommunications Inc.*, 146 F. App'x 368, 372 (11th Cir. 2005)). These numerous deficiencies are clear violations of the prohibition against shotgun pleadings and thus warrant dismissal. *See Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1357 (11th Cir. 2018) ("[A] District Court retains authority to dismiss a shotgun pleading on that basis alone.").

Although a finding that a complaint constitutes a shotgun pleading is sufficient to warrant dismissal, *see Jackson*, 898 F.3d at 1357, the Court will nevertheless proceed to analyze Plaintiffs' claims to determine whether Plaintiffs have plausibly alleged a claim upon which relief may be granted. *See Stone v. Shafran*, 641 F. Supp. 3d 1344, 1354 (S.D. Fla. 2022) (explaining that "withholding a ruling altogether to allow Plaintiff[] to cure [its] shotgun pleading would be highly inefficient.").

### B.  Single Publication/Single Action Rule

Defendants contend that all of Plaintiffs' federal claims are barred by the single action rule. *See* ECF No. [96] at 3. According to Defendants, Plaintiffs' federal claims are grounded in "allegations of defamation" since "all the federal counts expressly incorporate their entire 44-page recitation of alleged facts about Defendants' alleged defamatory 'spear campaign.'" *Id.* (quoting ECF No. [52] at ¶ 113) (emphasis removed). Furthermore, Plaintiffs' "individual counts explicitly speak about 'defaming,' 'smearing,' 'smear campaigns,' 'false accusations,' and damaging reputations.'" *Id.* (citing ECF [52] at ¶¶ 116, 124, 125, 127, 128, 270, 273, 275, 370, 291, 324, 330, 332). Given that Plaintiffs' federal claims are rooted in Defendants' alleged defamatory

conduct, Defendants maintain the federal claims must be dismissed under the single-action rule. Plaintiffs contends the single action rule does not apply here because Plaintiffs are asserting "parallel tort claims addressing distinct harms." ECF Nos. [150] at 6-7.

"In Florida, a single publication gives rise to a single cause of action." *Klayman v. Jud. Watch, Inc.*, 22 F. Supp. 3d 1240, 1256 (S.D. Fla. 2014), *aff'd* (Feb. 17, 2015) (*citing Callaway Land & Cattle Co. v. Banyon Lakes C. Corp.*, 831 So. 2d 204, 208 (Fla. 4th DCA 2002)). "This is what is known as the Single Publication/Single Action Rule, and it precludes a plaintiff from asserting multiple causes of action when they arise from the same publication [or publications] upon which plaintiff's defamation claim is based." *Happy Tax Franchising, LLC v. Hill*, Case No. 19-24539-CIV, 2021 WL 3811041, at *6 (S.D. Fla. June 7, 2021) (citations omitted). "The rule is designed to prevent plaintiffs from circumventing a valid defense to defamation by recasting essentially the same facts into several causes of action all meant to compensate for the same harm." *Gannett Co., Inc. v. Anderson*, 947 So. 2d 1, 13 (Fla. 1st DCA 2006) (internal quotation marks and citation omitted). Moreover, "[t]he underpinnings of the single-action rule make clear that it does not matter whether the defamation claim fails, succeeds, or is not brought at all." *Tymar Distribution LLC v. Mitchell Grp. USA, LLC*, 558 F. Supp. 3d 1275, 1287–88 (S.D. Fla. 2021). If the underlying facts are premised on false and defamatory publications, the plaintiff is bound by the single action rule and cannot avoid the limitation by engaging in semantic exercises or strategic gamesmanship by asserting various additional claims. *See Tymar Distribution LLC*, 558 F. Supp. 3d at 1288; *Diaz v. Miami-Dade Cnty.*, 424 F. Supp. 3d 1345, 1368 (S.D. Fla. 2019) (citing *Orlando Sports Stadium v. Sentinel Star Co.*, 316 So. 2d 607, 609 (Fla. 4th DCA 1975) ("We look for the reality, and the essence of the action, and not its mere name.") (internal citation and quotation omitted)).

The Court finds that Plaintiffs' federal claims are prohibited by the single action rule. In Count III, Plaintiffs assert a defamation claim which describes the defamation campaign Defendants conducted, wherein Defendants posted numerous allegedly false allegations in connection with Plaintiffs' involvement in the Delaware litigation against CITGO and PDVSA. *See* ECF No. [52] at 71-79. The federal claims in this case are all premised on the same publications and the same allegations of a coordinated defamatory scheme by Defendants.

The RICO claim alleges that Defendants' primary means of carrying out the conspiracy was through "defamation" which involved "Defendants repeatedly disseminat[ing] false statements about Plaintiffs via emails, social media postings, and online videos." *Id.* at 57, 60. Plaintiffs' § 1985 and § 1986 claims are also premised on the same facts and publications giving rise to Plaintiffs' defamation claim. Their § 1985 claim alleges that the wrongful conduct included a "coordinated campaign" of "smearing Plaintiffs to discredit their testimony," and "defamation designed to impede court proceedings[.]" *Id.* at 101, 103. Plaintiffs' § 1986 claim avers that Defendants failed to prevent the other defendants from carrying out their conspiracy to execute a "smear campaign" against Plaintiffs based on the fact that Defendants "had the power to call off the campaign" and "to halt further dissemination and delete prior posts[.]" ECF No. [52] at 108. Lastly, the Alien Tort Statute claim alleges that Defendants engaged in systematic "defamation" of Plaintiffs by "orchestrat[ing] a targeted international campaign labeling Plaintiffs as traitors and falsely accusing them of corruption[.]" ECF No. [52] at 116, 118.

As is evident from the allegations outlined herein, Plaintiffs have attempted to repackage their defamation allegations into additional federal causes of actions to drastically broaden the sweep of the instant suit and litigate their claims in federal court. However, such conduct is prohibited under the single action rule. Because Plaintiffs do not distinguish their defamation

allegations from those supporting their federal claims, the federal claims must be dismissed. *See Markle v. Markle*, Case No: 8:22-cv-511-CEH-TGW, 2023 WL 2711341, at *12 (M.D. Fla. Mar. 30, 2023) ("Under the single action rule, '[w]hen claims are based on analogous underlying facts and the causes of action are intended to compensate for the same alleged harm, a plaintiff may not proceed on multiple counts for what is essentially the same defamatory publication or event.'") (quoting *Klayman*, 22 F. Supp. at 1256). Moreover, even if Plaintiffs' federal claims relied on facts and publications beyond those outlined in Plaintiffs' defamation claim, Plaintiffs still fail to adequately state a federal claim upon which relief may be granted.

### C.  Failure to State a Federal Claim

#### i.  Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962(c)

Pursuant to 18 U.S.C. § 1962(c) (the "RICO Act"), it is "unlawful for any person employed by or associated with any enterprise in, or the activities of such affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). "To recover [under § 1962(c),] a civil plaintiff must establish that a defendant (1) operated or managed (2) an enterprise (3) through a pattern (4) of racketeering activity that included at least two racketeering acts." *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1348 (11th Cir. 2016) (quoting *Ray v. Spirit Airlines, Inc.*, 767 F.3d 1220, 1124 (11th Cir. 2014)); *see also Super vision Intern., Inc. v. Mega Intern. Commercial Bank Co., Ltd.*, 534 F. Supp. 2d 1326, 1337 (S.D. Fla. 2008). "A civil plaintiff must also show '(1) the requisite injury to 'business or property,' and (2) that such injury was 'by reason of' the substantive RICO violation.'" *Id.* (quoting *Williams v. Mohawk Indus., Inc.*, 465 F.3d 1277, 1282–83 (11th Cir. 2006), *abrogated on other grounds as recognized in Simpson v. Sanderson Farms, Inc.*, 744 F.3d 702, 714–15 (11th Cir. 2014)). Additionally, "[t]o

establish liability under 18 U.S.C. § 1962(c), a plaintiff must plead a defendant 'committed a pattern of RICO predicate acts'" amounting to "racketeering activity." *Viridis Corp. v. TCA Glob. Credit Master Fund, LP*, 155 F. Supp. 3d 1344, 1361 (S.D. Fla. 2015) (quoting *Simpson, v. Sanderson Farms, Inc.*, 744 F.3d 702, 705 (11th Cir. 2014)). "The phrase 'racketeering activity' is defined as including any act which is indictable under a lengthy list of criminal offenses, including the federal statutes prohibiting mail and wire fraud, obstruction of justice, and tampering with witnesses." *Fla. Evergreen Foliage v. E.I. Du Pont De Nemours, Co.*, 135 F. Supp. 2d 1271, 1284 (S.D. Fla. 2001) (citing 18 U.S.C. § 1961(1)), *aff'd sub nom. Green Leaf Nursery v. E.I. DuPont De Nemours & Co.*, 341 F.3d 1292 (11th Cir. 2003).

Defendants contend that "Plaintiffs' RICO claim fails at virtually every level. ECF No. [96] at 4. According to Defendants, Plaintiffs' enterprise allegations assert in a conclusory fashion that all 21 Defendants engaged in a coordinated strategy and acted in concert. *See* ECF No. [96] at 4. However, Plaintiffs fail to give any factual details in support of those allegations. *See id.* Additionally, Defendants argue that Plaintiffs improperly seek damages that are not available under the RICO statute. *Id.* Moreover, Defendants assert that Plaintiffs have failed to adequately allege predicate acts necessary to support their RICO claim. *See* ECF No. [96] at 4; ECF No. [100] at 8.

Plaintiffs contend they adequately alleged "a RICO enterprise composed of Medina and Co-Defendants who acted in concert to harm Plaintiffs through wire fraud, witness tampering, obstruction of justice, extortion, and money laundering." ECF No. [137] at 3.

The Court need not consider Defendants' other arguments because Plaintiffs have failed to sufficiently allege valid predicate acts as required to establish racketeering activity under § 1962(c). *See Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1068 (11th Cir. 2007) ("[A]bsent

any valid predicate acts, [the plaintiff] cannot state a claim for RICO violations."). Plaintiffs allege

the following predicate acts support their RICO claim: (1) Wire Fraud; (2) Witness Tampering;

(3) Obstruction of Justice; (4) Hobbs Act Extortion; (5) Money Laundering; (6) Tax Fraud; and

(7) violations of the Foreign Corrupt Practices Act. ECF No. [52] at 55-65. The Court addresses

the deficiencies of each alleged predicate act in turn.

### a. Wire Fraud (18 U.S.C. § 1343)

Plaintiffs contend that "Defendants devised a scheme to defraud the public (and various

donors and support[ers] by means of false pretenses and representations concerning Plaintiffs and

transmitted those falsehoods by wire." ECF No. [52] at 57. Plaintiffs allege in a conclusory fashion

that Defendants "falsely accused Plaintiff[s] of criminal misconduct and, critically, unlawfully

disclosed sealed identities [and other confidential information] of Plaintiffs from the Delaware

case." *Id.* (emphasis removed). However, "[c]ivil RICO claims, which are essentially a certain

breed of fraud claims, must be pled with an increased level of specificity." *Ambrosia Coal & Const.*

*Co. v. Pages Morales*, 482 F.3d 1309, 1316 (11th Cir. 2007) (citing Fed. R. Civ. P. 9(b); *Brooks*

*v. Blue Cross and Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1380–81 (11th Cir. 1997). Because

Plaintiffs offer nothing more than vague, threadbare recitals lacking in any specific detail, the wire

fraud allegations do not establish a predicate act. *See Trump v. Clinton*, 626 F. Supp. 3d 1264,

1304 (S.D. Fla. 2022) ("Plaintiff must satisfy the heightened pleading requirements of Rule 9(b);

that is, Plaintiff must specify with precision exactly why any allegedly fraudulent statements were

false and how they mislead him.").

The underlying premise of Plaintiffs' wire fraud allegations are deficient as well. Courts

routinely reject the contention that a defamation scheme can establish wire fraud. *See Trump*, 626

F. Supp. at 1304 (explaining that reputational damage is not considered an injury to business or

property for the purposes of wire fraud); *see also Black v. Ganieva*, 619 F. Supp. 3d 309, 344

(S.D.N.Y. 2022) ("a scheme to defame, standing alone, does not qualify as mail or wire fraud");

*Ctr. For Immigration Studies v. Cohen*, 410 F. Supp. 3d 183, 191 (D.D.C. 2019) (asserting that

"defamation is not a predicate act under RICO" and rejecting the notion that a party can "shoehorn

a defamation claim into the RICO framework") (collecting cases). The Court finds that Plaintiffs'

allegations of wire fraud fail to constitute a plausible predicate act.

> **b.   Witness Tampering (18 U.S.C. § 1512), Retaliation Against a Witness, Victim, or an Informant (18 U.S.C. § 1513), and Obstruction of Justice (18 U.S.C. § 1503)**

To support witness tampering, Plaintiffs allege that "Defendants knowingly engaged in

intimidation and threats to hinder Plaintiffs' participation in official proceedings"—i.e., the

Delaware case. ECF No. [52] at 58. In an attempt to prevent Plaintiffs Freites and Rodriguez from

testifying, Defendants purportedly engaged in a campaign of harassment by "labeling [Plaintiffs]

traitors." *Id.* Moreover, Defendants allegedly intensified their defamatory attacks after Plaintiffs

testified by publicizing Freites' "asylum status and branding him a fraud to intimidate him from

further participation" in the Delaware case. Defendants also "revealed the identity of Plaintiff

Rodriguez (Lead Plaintiff in the Delaware case,) whose name was protected (sealed) by specific

Court Order." *Id.* at 59.

Plaintiffs assert that Defendants also obstructed justice and interfered with their rights as

litigants by "disclosing confidential court-protected information (in violation of court orders) and

by spreading false accusations related to ongoing cases" to affect the outcome of the proceedings.

ECF No. [52] at 59. Additionally, Plaintiffs contend the underlying purpose of the Defendants'

defamatory campaign was to obstruct justice and undermine the integrity of the proceedings.

Defendants maintain that because the underlying Delaware case is ongoing, the Court is

"not in a position to entertain such assertions [of witness tampering and obstruction of justice]

because to do so would necessarily interfere with the Delaware court's authority to control its own

proceeding and litigants." ECF No. [96] at 6. Defendants also argue that if Plaintiffs elected to "shirk their obligations in the Delaware case, that is their own choice," as there are no allegations that Plaintiffs were "physically restrained or forced to lie." *Id.* Furthermore, Defendants contend that Plaintiffs' allegations do not support witness tampering because "[d]isclosing confidential information" is not conduct that falls under the witness tampering statute, and, in any event, Plaintiffs' identities were already in the public record. *See* ECF Nos. [100] at 9; [96] at 6.

Plaintiffs argue that they have established "clear predicate acts" of obstruction of justice and witness tampering by alleging that Defendants "intentionally leaked sealed court information[,] intimidated Plaintiffs to disrupt judicial proceedings," and retaliated against Plaintiffs after they testified "through the alleged [defamatory] campaign." ECF No. [150] at 11-12.

The Court finds that Plaintiffs have not plausibly established predicate acts of witness tampering or obstruction of justice necessary to support a RICO claim. The federal witness tampering statute criminalizes the conduct of a person who:

> [K]nowingly uses intimidation, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to (1) influence, delay, or prevent the testimony of any person in an official proceeding; [or] (2) cause or induce any person to [i] withhold testimony . . . from an official proceeding [or causes a person] to be absent from an official proceeding to which such person has been summoned by legal process.

18 U.S.C. § 1512(b).[12] The statute also criminalizes harassment of another person that, "thereby hinders, delays, prevents, or dissuades any person from attending or testifying in an official proceeding." *Id.*[13] The obstruction of justice statute, 18 U.S.C. § 1503, makes it "illegal for any

---

[12] 18 U.S.C. § 1513 criminalizes the same conduct as § 1512, the only difference being that § 1513 seeks to criminalize such conduct when done with the intent to retaliate against a witness or party rather than intimidate them.

[13] Under the federal witness tampering statute, "official proceedings" are any "federal judicial cases or

person to endeavor 'to influence, obstruct, or impede the due administration of justice.'" *Lockheed Martin Corp. v. Boeing Co.*, 357 F. Supp. 2d 1350, 1375 (M.D. Fla. 2005) (quoting 18 U.S.C. § 1503(a)).

Plaintiffs allege that, as witnesses, they were intimidated or retaliated against because Defendants made statements and posts on social media harassing them and labeling them as traitors. Plaintiffs assert that the the goal of Defendants' defamatory scheme was to tamper with Plaintiffs and ultimately stop them from testifying or punish them for testifying in the Delaware litigation. However, as previously stated, defamation is not a predicate act under RICO, and courts routinely reject a party's attempt to shoehorn defamation claims and other claims of reputational harm into a RICO framework. *See Trump*, 626 F. Supp. 3d at 1304 ("Damage to reputation is generally considered personal injury and thus is not an injury to 'business or property' within the meaning of 18 U.S.C. § 1964(c).") (quoting *Hamm v. Rhone-Poulenc Rorer Pharms., Inc.*, 187 F.3d 941, 954 (8th Cir. 1999) (collecting cases); *Rajaratnam v. Motley Rice, LLC*, 449 F. Supp. 3d 45, 73–74 (E.D.N.Y. 2020) (citing *Cohen*, 410 F. Supp. 3d at 191 (dismissing RICO claim where plaintiff has "clearly tried to shoehorn a defamation claim into the RICO framework"); *Kimberlin v. Nat'l Bloggers Club*, No. GJH-13-3059, 2015 WL 1242763, at *9 (D. Md. Mar. 17, 2015) (dismissing plaintiff's RICO claim for the additional reason that it "reflect[ed] more of an attempt to spin an alleged scheme to harm his reputation than it reflects a viable RICO claim"); *Ritchie v. Sempra Energy*, No. 10-cv-1513, 2013 WL 12171757, at *4 (S.D. Ca. Oct. 15, 2013) (finding that allegations of a smear campaign, through a website and press releases, containing false statements regarding market analysis, designed to injure the company's good will and lower

---

proceedings before Congress or a federal agency." *Trump v. Clinton*, 626 F. Supp. 3d 1264, 1300 (S.D. Fla. 2022) (citing 18 U.S.C. § 1512; 18 U.S.C. § 1515(a)).

its stock prices, did not state a predicate offense under RICO); *Manax v. McNamara*, 660 F. Supp. 657, 660 (W.D. Tex. 1987), *aff'd*, 842 F.2d 808 (5th Cir. 1988) (where defendant coordinated false and misleading press articles harmful to plaintiff, the scheme was not a fraud on tangible or intangible rights, but rather was an effort to damage his reputation, and thus, could not be a predicate act under RICO)).

Furthermore, Plaintiffs' allegations that Defendants improperly disclosed a limited amount of sealed materials in the Delaware case does not constitute racketeering activity but rather amounts to litigation activity involving bad faith litigation tactics, which should be properly handled by the judge presiding over the proceedings in Delaware. *See Special Purpose Accts. Receivable Co-op. Corp. v. Prime One Cap. Co.*, 202 F. Supp. 2d 1339, 1351 (S.D. Fla. 2002) (citing *Gunn v. Palmieri*, No. 98–1418–Civ, 1989 WL 119519 *1 (E.D.N.Y. Sept. 29, 1989) (rejecting attempt to base civil RICO claim on litigation misconduct)); *Rajaratnam*, 449 F. Supp. at 73–74 (courts are loath to permit litigation activities to be shoehorned into civil RICO predicates); *AZIMA et al, Plaintiffs, v. DECHERT LLP et al*, No. 22-CV-8728 (PGG) (JW), 2024 WL 4665106, at *19 (S.D.N.Y. Sept. 26, 2024) ("RICO claims for litigation activities raises 'serious questions of comity' since redress is sought from one federal court for litigation misconduct in a different federal, state, or international proceeding. Such redress ought to be sought from those courts directly."); *Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 524 (5th Cir. 2016) ("The criminal statutes require not merely delay but corrupt activity by the bad actor. [plaintiff] points to no cases supporting its contention that bad faith litigation tactics alone constitute witness tampering").

The Court notes that Plaintiffs do not allege that the Delaware court was corrupted by Defendants' allegedly wrongful actions, and there is no other obvious reason to litigate these

claims in a federal court in Florida. As such, principles of comity strongly favor the judge presiding over the Delaware litigation to address any alleged improper disclosure in connection to that litigation. As such, neither Plaintiffs' obstruction of justice nor witness tampering allegations establish predicate acts.[14]

### c. Hobbs Act Extortion (18 U.S.C. § 1951)

Plaintiffs allege that while Defendants primarily carried out their scheme to sabotage the Delaware proceedings by making defamatory statements, Defendants also made "extortionate threats" to Plaintiffs, including "threats like 'drop your lawsuit or face consequences' and menacing references to harm." ECF No. [52] at 60. Defendants argue those allegations do not establish Hobbs Act extortion because not only are they conclusory, "'extortion' requires 'the obtaining of property from another, with [the person's] consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right.'" ECF No. [100] at 10 (quoting 18 U.S.C. § 1951(b)(2)); *see also* ECF No. [96] at 6. Therefore, because there is no allegation that Defendants took Plaintiffs' property, there can be no basis for a claim of Hobbs Act extortion.

---

[14] The Court also notes that conduct intended to undermine a single case involving a limited number of adverse parties typically does not amount to racketeering activity that Congress sought to target in enacting the RICO statute, particularly where the alleged predicate acts were not designed to cover-up a larger illegal scheme. *See Trump*, 626 F. Supp. 3d at 1305 (citing *Ferrell v. Durbin*, 311 F. App'x 253, 257 (11th Cir. 2009) ("[S]ingle schemes with a specific objective and a natural ending point can almost never present a threat of continuing racketeering activity.")); *Stein v. N.Y. Stair Cushion Co., Inc.*, No. 04-CV-4741, 2006 WL 319300, at *8 (E.D.N.Y. Feb. 10, 2006) (finding that "the racketeering activity alleged here does not constitute the sort of 'long-term criminal conduct' that Congress sought to target in RICO," where plaintiffs alleged only "a single scheme of narrow scope, including one victim and a limited number of related participants"); *see also Chevron Corp. v. Donziger*, 974 F. Supp. 2d 362, 593 (S.D.N.Y. 2014) ("Obstruction of justice is a predicate act under RICO in cases where, as here, a defendant's efforts were 'designed to prevent detection and prosecution of the organization's illegal activities [and] were part of a consistent pattern that was likely to continue for the indefinite future, absent outside intervention.'"), *aff'd*, 833 F.3d 74 (2d Cir. 2016).

Moreover, Defendants maintain that a Hobbs Act claim requires an obstruction, delay or affect on commerce and that the "alleged interference with the Delaware Case does not meet this definition [because] 'a lawsuit is not an act or practice in the conduct of trade or commerce, regardless if the business involved is in the conduct of trade or commerce."' ECF No. [100] (quoting *Copans Motors, Inc. v. Porsche Cars N. Am., Inc.*, No. 14-60413-CV, 2014 WL 2612308, at *6 (S.D. Fla. June 11, 2014)).

Plaintiffs do not respond to Defendants arguments, but instead simply assert that because they "allege that Defendants sought to coerce them into dropping their claims," they have established Hobbs Act extortion. *See* ECF No. [137] at 3.

The Court agrees with Defendants that Plaintiffs' RICO allegations fail to plausibly establish a predicate act of Hobbs Act extortion. Indeed, a claim of extortion under § 1951(b)(2) of the Hobbs Act requires a showing that the defendant obtained property of another. *See* 18 U.S.C. § 1951 ("The term 'extortion' means the obtaining of property from another . . ."). Nowhere in Plaintiffs' Hobbs Act allegation do they, even in a conclusory fashion, assert that Defendants obtained property from them through threat, violence, fear, or under color of official right. *See* ECF No. [52] at 60. Furthermore, to establish a Hobbs Act claim, the defendant's conduct must affect interstate commerce. Plaintiffs fail to explain how Defendants threatening them to drop their lawsuit and abandon their claims in the Delaware case influences interstate commerce, particularly where there is no allegation that Defendants were seeking to obtain money from Plaintiffs. Consequently, Plaintiffs' extortion allegations do not constitute predicate acts necessary to establish racketeering activity.

### d.  Money Laundering (18 U.S.C. §§ 1956 and 1957)

Plaintiffs further allege that "Defendants knowingly engaged in financial transactions involving proceeds illicitly obtained from Venezuelan government-owned entities," which

Defendants then "strategically concealed and integrated into [their] organizational accounts and operations." ECF No. [52] at 64. Plaintiffs maintain that Defendants proceeded to use these illicit funds to "sustain their defamatory, retaliatory, and obstructive conduct against Plaintiffs." *Id.*

Defendant Medina argues that Plaintiffs' money laundering allegations do not establish predicate acts because money laundering under 18 U.S.C. §§ 1956 and 1957 "require the involvement of proceeds of 'specified unlawful activity'" specifically listed in 18 U.S.C. § 1956(c)(7). *See* ECF NO. [100] at 10. Since Plaintiffs do not allege that Defendants engaged in any transactions listed in 18 U.S.C. § 1956(c)(7), Plaintiffs' money laundering allegations necessarily fail. The other Defendants argue that Plaintiffs' amorphous money laundering allegations make little sense. ECF No. [96] at 6. According to the other Defendants, "it sounds as though the Venezuelan government, through PDVSA, engaged in the alleged money laundering, rather than Defendants." *Id.* Defendants maintain that even if that is not Plaintiffs' allegation, the money laundering allegations are still defective because they fail to provide any details about how the money laundering operation worked. *See id.* at 6-7. Without more details about the alleged wrongful transactions, Defendants contend that such allegations cannot be a predicate act for Plaintiffs' RICO claim. *See id.*

While Plaintiffs concede the money laundering allegations should "be explained in greater detail," they maintain they have plausibly established predicate acts of money laundering by asserting that Defendants illegally used government money it obtained from PDVSA for illegal acts. ECF No. [137] at 3-4.[15]

---

[15] Plaintiffs' Response filed at ECF No. [150] seeks to inject new, more specific allegations about the alleged money laundering scheme. However, those allegations were not included in the Amended Complaint, and thus may not be considered at the motion to dismiss stage. *See W. Surety Co. v. Steuerwald*, Case No. 16-61815-CV, 2017 WL 5248499, at *3 (S.D. Fla. Jan. 17, 2017) ("[A] Response to a Motion to Dismiss is not properly used as an attempt to add additional claims or allegations.").

The Court finds that Plaintiffs' money laundering allegations are too vague to constitute predicate acts necessary to establish their RICO claim. While Plaintiffs' money laundering allegations "need not be pleaded with the particularity required of Rule 9(b)," they still must articulate sufficient facts to satisfy the essential elements of § 1956 or § 1957. *Bryan v. Countrywide Home Loans*, No. 8:08–cv–794, 2008 WL 4790660, at *6 (M.D. Fla. Oct. 27, 2008). "[A] claim for money laundering under RICO requires allegations that a person conducted a financial transaction with money he knew to be the proceeds of unlawful activity, with the intent to promote the carrying on of specified unlawful activity." *Omnipol, a.S v. Worrell*, 421 F. Supp. 3d 1321, 1352 (M.D. Fla. 2019) (citing *United States v. Flynt*, 15 F.3d 1002, 1007 (11th Cir. 1994)). Here, Plaintiffs fail to offer any information about the alleged transaction or how they worked. Plaintiffs merely contend that the funds were "strategically concealed and integrated into Defendants' organization accounts and operations." ECF No. [52] at 64. That conclusory allegation is wholly insufficient to establish money laundering as a predicate act. *See Bryan*, 2008 WL 4790660, at *6 (citing *Zavala v. Wal–Mart Stores, Inc.*, 393 F. Supp. 2d 295, 315–16 (D.N.J. 2005) (finding allegations of money laundering were too vague and insufficient to support a RICO claim where they "largely recite[d] the elements of different money laundering provisions, but [did] not identify the relevant financial transactions or conduct"); *see also Omnipol, a.S.*, 421 F. Supp. 3d at 1352 (finding money laundering allegations insufficient to establish predicate act for purposes of a RICO claim where there were only "bald accusations that Defendants diverted the payments from SOCOM for their own benefit[.]"). Accordingly, Plaintiffs' money laundering allegations do not establish a predicate act to support their RICO claim.[16]

---

[16] While Plaintiffs' Response filed at ECF No. [150] contends that they alleged violations of the Travel Act (18 U.S.C. § 1952) as a part of their RICO claims, nowhere in the Amended Complaint are such allegations included. *See generally* ECF No. [52].

### e.  Fraud and Foreign Corrupt Practices Act

Plaintiffs also seek to establish predicate acts under 28 U.S.C. § 7206 (Fraud and False Statements statute) and 15 U.S.C. § 78dd-1 (the Foreign Corrupt Practices Act). However, as Defendants correctly point out, neither § 7206 nor § 78dd-1 is defined as a predicate act that constitutes racketeering activity under 18 U.S.C. § 1961(1).[17] *See* ECF No. [96] at 7; *see also Arroyo v. Oprona, Inc.*, No. CV H-16-852, 2017 WL 3866425, at *3 (S.D. Tex. Sept. 5, 2017) (noting that 28 U.S.C. § 7206 is not "a predicate act under RICO"); *Gov't of Dominican Republic v. AES Corp.*, 466 F. Supp. 2d 680, 691 (E.D. Va. 2006) (finding that violations of the "Foreign Corrupt Practices Act" "are not considered predicate acts under the RICO Statute."). Because the only predicate acts that may support a RICO claim must be found in § 18 U.S.C. § 1961(1), any allegations indicating that Defendants violated § 7206 or § 78dd-1 cannot be used to establish Plaintiffs' RICO claim.

Since Plaintiffs have failed to establish two or more predicate acts, they have failed to establish a pattern of racketeering activity necessary for their RICO claim to survive. *See Am. United Life Ins. Co.*, 480 F.3d at 1068. Accordingly, the RICO claim in Count I must be dismissed.

### ii.  42 U.S.C. § 1985(2) and (3) (Conspiracy to Interfere with Civil Rights)

Plaintiffs allege Defendants "conspired to intimidate and retaliate" against them for their participation in the Delaware PDVSA/CITGO cases. ECF No. [52] at 101. Specifically, Plaintiffs assert that the conduct that amounted to a conspiracy to obstruct justice was as follows: "publicizing sealed court info, smearing Plaintiffs to discredit their testimony, [and] issuing threats

---

[17] Plaintiffs do not explain why violations of the § 7206 constitute a predicate act. *See generally* ECF Nos. [137]; [150]. As for the Foreign Corrupt Practices Act allegations, Plaintiffs acknowledge that there is no independent cause of action under the statute, but insist allegations involving the FCPA alleged in tandem with other related criminal offenses may nevertheless support a RICO claim. *See* ECF No. [150] at 20-21.

should [Plaintiffs] 'show their face in court.'" *Id.* According to Plaintiffs, "Defendants took these actions jointly, as evidenced by their coordinated campaign," in violation of § 1985(2) *Id.*

Plaintiffs also assert a claim pursuant to 42 U.S.C. § 1985(3), alleging that "Defendants [ ] conspired for the purposes of depriving Plaintiffs of the equal protection of the laws, or of equal privileges and immunities under the laws." *Id.* at 102. Specifically, Plaintiffs assert that Defendants conspired to prevent them from freely exercising their rights and speaking freely against corruption. *See id.* Moreover, although Defendants did not target them because of a traditionally protected characteristic, such as race, Plaintiffs claim they were targeted for their "membership in a definable class: Venezuelan dissidents aligned with anti-corruption and opposition efforts." *Id.* at 102.

Defendants argue Plaintiffs' § 1985(2) and § 1985(3) claims should be dismissed because Plaintiffs fail to identify the individual Defendants or otherwise articulate the specific conduct of each Defendant to further the conspiracy. ECF No. [96] 7-8. Moreover, the claims are focused solely on conduct taking place in an ongoing federal proceeding. *See id.* Accordingly, principles of comity counsel against this Court issuing a ruling that could impinge upon the authority of another sister court. *See id.* Defendants further contend that Plaintiffs have failed to make the necessary showing that the alleged wrongful conduct was based on race or class-based discriminatory animus toward Plaintiffs. *See* ECF No [96] at 8; ECF No. [100] at 17-18. According to Defendants, Plaintiffs' contention that they were targeted by Defendants simply because they were "dissidents" does not qualify, because dissidents are not a federally protected class. *See id.*

Plaintiffs respond that they have established both a § 1985(2) claim and § 1985(3) claim. Regarding the § 1985(2) claim, Plaintiffs contend they are only asserting a claim under the first clause. Therefore, to establish their claim, Plaintiffs argue they "need only show a conspiracy to

threaten or intimidate a party/witness in a federal proceeding because of their participation or to deter their attendance/testimony." ECF No. [137] at 7. No showing of a "class-based, invidiously discriminatory animus" is required. *Id.* Because "Defendants agreed to and did use intimidation (threats of reputations and physical harm) to deter Plaintiffs (who are parties in a federal case) from continuing to prosecute that case, and to retaliate for their having filed it," and, in fact, "succeeded in at least causing delays and fear," Plaintiffs maintain they have adequately alleged a § 1985(2) claim. ECF No. [137] at 7; *see* EC No. [150] at 16.

Regarding their § 1985(3) claim, Plaintiffs contend they have plausibly established the elements of that claim and have satisfied the class-based animus requirement by alleging "political animus." ECF No. [137] at 8; *see* ECF No. [150] at 16. Plaintiffs maintain that by identifying themselves as "anti-corruption dissidents," they "constitute a politically targeted class experiencing animus analogous to historical political persecution addressed by the statute." ECF No. [150] at 16.

### a.   42 U.S.C. § 1985(2) (Conspiracy to Obstruct Justice)

"Section 1985(2) prohibits conspiracies to intimidate parties or witnesses to federal lawsuits." *Farese v. Scherer*, 342 F.3d 1223, 1229 (11th Cir. 2003); *see also Robins v. Sauls*, Civ. Act. File No. 1:18-cv-131-TCB, 2019 WL 13270432, at *7 (N.D. Ga. Mar. 13, 2019) ("Part one of § 1985(2) prohibits conspiracies regarding 'the administration of justice in federal courts[.]'") (quoting *Kush v. Rutledge*, 460 U.S. 719, 724 (1983)).[18]

---

[18] 42 U.S.C. § 1985(2) imposes liability if:

> [T]wo or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, . . . or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory,

"[A] § 1985(2) deterrence claim . . . requires that the plaintiff prove (1) a conspiracy; (2) to deter a witness by force, intimidation, or threat from attending or testifying before a United States court; and (3) injury to the plaintiff." *Chance v. Cook*, 50 F.4th 48, 51 (11th Cir. 2022) (citing *Morast v. Lance*, 807 F.2d 926, 930 (11th Cir. 1987)). A 1985(2) retaliatory claim, on the other hand, requires that the plaintiff "allege '(1) a conspiracy, (2) retaliation spawned by the attendance or testimony in federal court, (3) an act in furtherance of the conspiracy, and (4) injury to the plaintiff'" *Foster v. Pall Aeropower Corp.*, 111 F. Supp. 2d 1320, 1322 (M.D. Fla. 2000).

The Court agrees with Defendants that Plaintiffs have failed to allege a plausible § 1985(2) claim. First and foremost, the § 1985(2) allegations are deficient as Plaintiffs simply allege in a conclusory fashion that Defendants publicized sealed court information and threatened Plaintiffs "should they 'show their face in court.'" ECF No. [52] at 101. Plaintiffs fail to identify when the conduct occurred, which Defendant engaged in what conduct, or how it impacted the Delaware proceedings.[19] *See Griswold v. Ala. Dept. of Indus. Relations*, 903 F. Supp. 1492, 1500-01 (M.D. Ala. Oct. 10, 1995) ("Furthermore, the Eleventh Circuit requires a heightened pleading standard in conspiracy cases[, including § 1985(2) cases,] because a defendant must be informed of the nature of the conspiracy alleged. Thus, conclusory, vague, and general allegations of conspiracy may justify dismissal of a complaint.") (citing *Fullman v. Graddick*, 739 F.2d 553 (11th Cir. 1984); *Kearson v. Southern Bell Telephone & Telegraph Company*, 763 F.2d 405, 407 (11th Cir. 1985)).

---

with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws[.]

[19] Although Plaintiffs contend that the alleged § 1985(2) conspiracy caused a delay in the Delaware proceedings, the Amended Complaint fails to explain how or why Defendants' conduct delayed the proceedings. Plaintiffs offer no basis that would allow the Court to conclude that the alleged conduct directly caused a delay in the proceedings.

Accordingly, Plaintiffs have failed to sufficiently allege facts that would support the conspiracy element of their § 1985(2) claim.

Moreover, as Defendants point out, Plaintiffs do not establish an actual injury. As the district court in *Chance v. Cook* explained, to establish the third element of a § 1985(2) claim, "a claimant must show that the conspiracy hampered the claimant's ability to present an effective case in federal court." *Chance v. Cook*, No. 4:19CV335-MW/CAS, 2019 WL 13219834, at *4 (N.D. Fla. Nov. 15, 2019) (quoting *Rutledge v. Arizona Bd. of Regents*, 859 F.2d 732, 735 (9th Cir. 1988) (internal quotations omitted), *aff'd*, 50 F.4th 48 (11th Cir. 2022); *see also Arroyo-Torres v. Ponce Fed. Bank, F.B.S.*, 918 F.2d 276, 279 (1st Cir. 1990) (dismissing § 1985(2) claim because "[t]he complaint . . . does not allege that the appellant was prevented from testifying in federal court"). Despite the generalized allegations of threats, intimidation, and delay, Plaintiffs fail to adequately allege that their in-court testimony or their ability to present arguments in the Delaware case has been hindered in any way. Plaintiffs' assertion that they could not call unidentified potential witnesses to testify or that certain legal avenues were closed is too vague and conclusory to satisfy the actual injury element. Furthermore, Defendants point out that Plaintiffs have pursued the federal action in Delaware "uninterrupted to this very day." ECF No. [96].[20] Consequently, because Plaintiffs have not sufficiently established the underlying conspiracy and have failed to establish an actual injury, Plaintiffs cannot sustain their § 1985(2) claim.

Even if the Court were to find that Plaintiffs adequately alleged their § 1985(2) claim, principles of comity would still require the Court to dismiss the claim. "The federal courts long have recognized that the principle of comity requires federal district courts—courts of coordinate

---

[20] Plaintiffs contend their ability to avail themselves of the Delaware court was hampered by the conspiracy, yet Plaintiffs acknowledge they are still litigating the Delaware case and fail to show how they were prevented from attending court or otherwise testifying to any matter in that litigation as a result of the defamation campaign or the alleged wrongful disclosures.

jurisdiction and equal rank—to exercise care to avoid interference with each other's affairs." *State of Fla. v. Dep't of Health & Hum. Servs.*, 19 F.4th 1271, 1285 (11th Cir. 2021) (quoting *W. Gulf Mar. Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 728 (5th Cir. 1985)).

 As the parties acknowledge, the underlying Delaware litigation remains ongoing. As such, any decision by this Court as to whether Defendants intimidated Plaintiffs in that case or delayed the proceedings risks intervening and trenching on the lawful domain of its sister court in Delaware. Since there is no compelling reason to avoid delaying adjudication of such a claim until the conclusion of the Delaware proceedings, comity counsels against the Court adjudicating the § 1985(2) claim at this juncture.

### b.  42 U.S.C. § 1985(3)

"To bring a 42 U.S.C. § 1985(3) claim, a plaintiff must prove: '(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.'" *Cooksey v. Waters*, 435 F. App'x 881, 883 (11th Cir. 2011) (quoting *Park v. City of Atlanta*, 120 F.3d 1157, 1161 (11th Cir. 1997) (per curiam)). "[A] § 1985(3) conspiracy must [also] be motivated by racial or otherwise class-based, individually discriminatory animus." *Id.* (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)). Furthermore, "[w]hen the alleged § 1985(3) conspirators are private actors, the plaintiff must demonstrate that the conspiracy was aimed at rights constitutionally protected against private impairment." *Jimenez v. Wellstar Health Sys.*, 596 F.3d 1304, 1312 (11th Cir. 2010) *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 274 (1993)).

Plaintiffs' § 1985(3) claim is premised on the theory that Defendants conspired together to deprive Plaintiffs' First Amendment rights. However, the Supreme Court has expressly declared

that "the freedom of speech . . . [is] insufficient to form the basis of § 1985(3) actions against private conspirators." *Jimenez*, 596 F.3d at 1312 (citing *Bray*, 506 U.S. at 278). Because the alleged constitutional injury is not protected by § 1985(3), Plaintiffs fail to state a claim under the statute.

Furthermore, to the extent Plaintiffs allege that the defamation campaign undermined or infringed on rights that are protected under § 1985, the claim still fails. To sustain a claim under § 1985(3), Plaintiffs must demonstrate Defendants' actions were made with some racial or class-based discriminatory animus. *Dean v. Warren*, 12 F.4th 1248, 1255 (11th Cir. 2021). To make such a showing, Plaintiffs are required to demonstrate that Defendants "selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group" to which the plaintiff belongs. *Bray*, 506 U.S. at 272. Only "[t]wo types of classes come within § 1985(3)'s protection: (1) classes having common characteristics of an inherent nature—i.e., those kinds of classes offered special protection under the equal protection clause, and (2) classes that Congress was trying to protect when it enacted the Ku Klux Klan Act." *Childree v. UAP/GA AG Chem., Inc.*, 92 F.3d 1140, 1147 (11th Cir. 1996). Plaintiffs allege they are a protected class because they are political dissidents.[21] *See* ECF No. [52] at 102; ECF No. [137] at 8; ECF No. [150] at 16. However, the Court has identified no case law which suggests that political dissidents are protected under the equal protection clause or that Congress otherwise contemplated that such a class would be protected by § 1985(3). *See Chavis v. Clayton County School Dist.*, 300 F.3d 1288, 1292 (11th Cir. 2002); *Alford v. Consol. Gov't of Columbus, Ga.*, 438 F. App'x 837, 839 (11th Cir. 2011) (noting that the traditionally recognized protected classes

---

[21] While Plaintiffs technically describe themselves as members of the class: "Venezuelan dissidents," Plaintiffs make clear in the Amended Complaint that the inclusion of the descriptor "Venezuelan" is merely intended to describe the type of political dissidents Plaintiffs purport to be. Plaintiffs do not suggest Defendants intended to discriminate against them because they are Venezuelan. As such, there is no basis for Plaintiffs to contend that Defendants' alleged wrongdoing was rooted in class-based animus.

are "race, religion, sex, or national origin"); *Cf. Kimberlin v. Hunton & Williams LLP*, No. GJH-15-723, 2016 WL 1270982, at *6 (D. Md. Mar. 29, 2016) (rejecting "the idea that one's political affiliation is a protected class"), *aff'd*, 671 F. App'x 127 (4th Cir. 2016).[22] Accordingly, Plaintiffs have failed to allege a claim under § 1985(3).[23]

### iii. 42 U.S.C. § 1986 (Neglect to Prevent Civil Rights Violations).

Plaintiffs allege that all the Defendants became aware of the unlawful conspiracy to obstruct justice and deny Plaintiffs equal protection under the laws at some point prior to Plaintiffs filing their instant claims yet did nothing to stop or aid in preventing the wrong from occurring. ECF No. [52] at 107. Accordingly, because Defendants neglected to prevent Plaintiffs' civil rights from being violated, Plaintiffs now seek relief against all Defendants pursuant to 42 U.S.C. § 1986. *Id.* at 111.

Defendants contend that § 1986 claims are derivative of § 1985 claims. Therefore, because Plaintiffs have failed to plausibly establish either of their § 1985 claims, they necessarily cannot establish a § 1986 claim. *See* ECF No. [96] at 8; ECF No. [100] at 18. Plaintiffs agree that § 1986

---

[22] As the Eleventh Circuit explained in *Chavis v. Clayton County School Dist.*, "[t]he legislative history behind the Act reflects that, at the time the Ku Klux Klan Act of 1871 was enacted, the 42nd Congress was concerned about the insecurity of life and property in the South following the Civil War. 409 U.S. at 425, 93 S. Ct. at 607 (citing Cong. Globe, 42d Cong., 1st Sess., 116–117). Discrimination on the basis of race was at the heart of this concern. A principal concern of the 42nd Congress was to protect newly-emancipated blacks, and those who championed them, against conspiracies to violate their civil rights[.]" 300 F. 3d at 1293. Given the concerns of Congress at the time, the Court does not believe the Congress who enacted § 1985(3) intended to protect political dissidents challenging the conduct of international governments and corporations.

[23] While Plaintiffs maintain that part two of 42 U.S.C. § 1985(2) is not at issue here, *See* ECF No. [137] at 6, to the extent it is, the claim fails as Plaintiffs allegations do not establish that the alleged conduct was done with a discriminatory animus based on race or some other federally protected classed-based characteristic. *See Chavis*, 300 F.3d at 1292 ("The "equal protection" language included in the second clause of section 1985(2), requires an allegation of class-based animus for the statement of a claim.") (citing *Griffin v. Breckenridge*, 403 U.S. 88, 101 (1971)).

Case No. 25-cv-20465-BLOOM/Elfenbein

claims are derivative of § 1985 claims. However, Plaintiffs assert that their § 1985 claims are valid and, as such, their § 1986 claim is valid as well. *See* ECF No. [137] at 8; ECF No. [150] at 17.

"Section 1986 provides a cause of action against anyone who has 'knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having the power to prevent or aid in preventing the commission of the same, neglects or refuses so to do.'" *Park*, 120 F.3d at 1159 (quoting 42 U.S.C. § 1986)). "Section 1986 claims are therefore derivative of § 1985 violations." *Id.* A plaintiff cannot assert a § 1986 claim if the plaintiff has failed to establish an underlying § 1985 conspiracy. *See id.* ("The text of § 1986 requires the existence of a § 1985 conspiracy."). Therefore, Defendants are correct. Because Plaintiffs have failed to adequately allege an underlying § 1985 conspiracy, Plaintiffs cannot prevail on their § 1986 claim. *See Khullar v. Goldstein*, Case No. 0:24-cv-62170, 2025 WL 984623, at *5 (S.D. Fla. Feb. 26, 2025) ("Without a Section 1985 claim though, there is no Section 1986 claim."). Accordingly, the § 1986 claim must be dismissed.

### iv.  Count X—28 U.S.C. § 1350 (Alien Tort Statute)

Plaintiffs' final federal claim is brought pursuant to the Alien Tort Statute (ATS). *See* 28 U.S.C. § 1350. While Plaintiffs seem to acknowledge § 1350 is a jurisdictional statute, *see* ECF No. [52] at 155, Plaintiffs nevertheless assert that Defendants' conduct was in violation of the statute, given that their conduct violated "universally recognized norms of international law, particularly the prohibition against systematic persecution based on political grounds." *Id.* at 116.

Defendants argue that Plaintiffs' claim under the ATS should be dismissed because the statute does not provide for a cause of action and, instead, is simply a jurisdictional statute. ECF No. 8-9. Plaintiffs disagree that the ATS is solely jurisdictional and argue that they have established a valid claim. According to Plaintiffs, although the ATS does not directly regulate conduct or afford relief, it permits "foreign plaintiffs to sue in U.S. courts for severe international

law violations specifically recognized under universal and defined norms (e.g., torture, genocide, war crimes)." *See* ECF No. [150] at 18. Plaintiffs insist that Defendants' "conduct implicates universal norms under international law," and although "ATS jurisprudence has [not] explicitly recognized 'harassment of dissidents abroad,' coordinated widespread [transnational] persecution against civilians (like political dissidents) may constitute a crime against humanity." ECF No. [137] at 9; ECF No. 150 at 18. Plaintiffs also point to other potential international norms they contend Defendants violated, namely: (1) systemic political prosecution; (2) corruption and obstruction; and (3) leaking confidential information. ECF No. [150] at 18. Given that these international norms have been arguably violated, Plaintiffs maintain that dismissal of this claim would be premature. ECF No. [137] at 9.

The Alien Tort Statute provides that "[t]he district courts shall have original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States." 28 U.S.C. § 1350. "[T]he statute on its own does not empower aliens to sue. [The Supreme Court has] been clear that 'the ATS is a jurisdictional statute creating no new causes of action.'" *Nestlé USA, Inc., v. Doe*, 593 U.S. 628, 635 (2021) (quoting *Sosa v. Alvarez-Machain*, 542 U.S. 692, 724 (2004)). However, the ATS does allow a plaintiff to assert a claim under the statute "for a modest number of international law violations. *Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108, 115 (2013) (quoting *Sosa*, 542, U.S. at 724). "[T]o obtain relief under the ATS, the plaintiff must be (1) an alien, (2) suing for a tort, which was (3) committed in violation of international law." *Baloco ex rel. Tapia v. Drummond Co., Inc.*, 640 F.3d 1338, 1345 (11th Cir. 2011) (alterations adopted) (citing *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1246 (11th Cir. 2005)). There is no real dispute here that Plaintiffs are aliens or that they are suing

in tort. Accordingly, the only question is whether they have plausibly alleged violations of international norms that are actionable under the ATS.

Plaintiffs contend they have satisfied the third element because they allege that Defendants engaged in transnational political repression which arguably constitutes a crime against humanity. While "[b]roadly speaking, [the Eleventh Circuit] has decided that 'crimes against humanity,' and 'extrajudicial killings' may give rise to a cause of action under the ATS . . . general proposition do not take us far in particular ATS cases." *Mamani v. Berzain*, 654 F.3d 1148, 1152 (11th Cir. 2011) (citing *Romero v. Drummond Co.*, 552 F.3d 1303, 1316 (11th Cir. 2008); *Cabello v. Fernandez-Larios*, 402 F.3d 1148, 1151-52 (11th Cir. 2005)). Moreover, "[a]llegations amounting to labels are different from well-pleaded facts" and as such, Plaintiffs must allege that what Defendants "did—in non-conclusory factual allegations—amounts to a violation of already clearly established and specifically defined international law. *Id.*

Here, Plaintiffs fail to plausibly allege that Defendants' conduct of defamation, harassment, and intimidation remotely approaches a crime against humanity. "First, such crimes were not expressly plead in the [Amended C]omplaint. [*see generally* ECF No. [52]]. Second, to the extent that crimes against humanity are recognized as violations of international law, they occur as a result of 'widespread or systematic attack' against civilian populations." *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1247 (11th Cir. 2005) (quoting *Cabello*, 402 F.3d as 1161). Plaintiffs' allegations only identify themselves as targets of Defendants' scheme. There is no indication in the Amended Complaint that any other similarly situated political dissidents were repressed or otherwise suffered similar harms. Accordingly, there is no basis to infer that such conduct amounted to crimes against humanity and therefore Plaintiffs may not pursue a ATS claim based on alleged crimes against humanity.

Because the Court does not find that Plaintiffs' allegations constitute a crime against humanity or another judicially recognized cause of action,[24] and because Plaintiffs are not asserting a statutorily created cause of action,[25] Plaintiffs are effectively seeking to have the Court recognize a new cause of action under the ATS.

To establish a new cause of action under the ATS, Plaintiffs' claim must satisfy a two-step test. *See Nestlé USA, Inc.*, 593 U.S. at 636. "First, the plaintiff must establish that the defendant violated 'a norm that is specific, universal, and obligatory' under international law." *Id.* (quoting *Sosa*, 524 U.S. at 732). To satisfy this first requirement, the plaintiff must define the norm "'with a specificity comparable to' the three international torts known in 1789." *Id.* (quoting *Sosa*, 524 U.S. at 725). The three torts are "violations of safe conducts, infringement of the rights of ambassadors, and piracy." *Id.* (quoting *Sosa*, 524 U.S. at 724).

In addition to establishing that a norm has been violated, "the plaintiff must [also] show that courts should exercise 'jurisdictional discretion' to create a cause of action rather than defer to Congress." *Id.* This second requirement places an exceptionally high burden on the Plaintiffs given "that judicial creation of a cause of action is an extraordinary act that places great stress on the separation of powers." *Id.* Indeed, a "court must not create a private right of action if it can identify even one 'sound reason to think Congress might doubt the efficacy or necessity of the new remedy'" *Id.* (quoting *Jesner v. Arab Bank, PLC*, 584 U.S. 241, 264 (2018) (additional level of citations and quotations omitted)); *see also Mamani v. Berzain*, 654 F.3d 1148, 1152 (11th Cir. 2011) ("The ATS is no license for judicial intervention. Just the opposite, the federal courts must

---

[24] Indeed, Plaintiffs fail to point the Court to any other judicially recognized cause of action available under the ATS that would support their claim.

[25] The only statutorily recognized causes of action available under the ATS are those provided under the Torture Victim Protection Act of 1991 for victims of torture and extrajudicial killings in violation of international law. *See Nestlé USA, Inc.*, 593 U.S. at 635.

act as vigilant doorkeepers and exercise great caution when deciding either to recognize new causes of action under the ATS or to broaden existing causes of action.").

Here, Plaintiff contends that the potential international norm violations that would support a new cause of action under the ATS are: (1) systematic political persecution; (2) corruption and obstruction; and (3) leaking confidential information. *See* ECF No. [150] at 18. However, neither the Amended Complaint nor Plaintiffs' briefs point the Court to any to references or sources that support the contention that these three norms are universal or well-recognized internationally. *See generally* ECF Nos. [52], [150].[26] *See Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 120–21 (2d Cir. 2010), *aff'd*, 569 U.S. 108, 133 S. Ct. 1659, 185 L. Ed. 2d 671 (2013) (As a result, the responsibility of establishing a norm of customary international law lies with those wishing to invoke it, and in the absence of sources of international law endorsing (or refuting) a norm, the norm simply cannot be applied in a suit grounded on customary international law under the ATS."). Moreover, Plaintiffs cite no case law to suggest that any court has recognized a violation of these norms or an analogous norm as a basis for a claim under the ATS. This is reason enough to reject Plaintiffs' request to recognize a new cause of action. *See Nestlé USA, Inc.*, 593 U.S. at 638 (Because '[t]he political branches, not the Judiciary, have the responsibility and institutional capacity to weigh foreign-policy concerns,' there will always be a sound reason for courts not to create a cause of action for violations of international law—other than perhaps for those three torts that were well established in 1789.") (quoting *Jesner*, 584 U.S. at 265).[27]

---

[26] While Plaintiffs cite the United Nation Convention Against Corruption (UNCAC) to support that corruption violates international anti-corruption norms, Plaintiffs did not actually allege in their ATS claim that Defendants engaged in corruption. *See* ECF No. [52] at 116-18. Plaintiffs merely allege that they were systematically persecuted and intimidated based on their political beliefs. However, even assuming Plaintiffs established a universal international norm, the proposed new cause of action would still fail on step two of the *Nestlé* test.

[27] Plaintiffs do not allege violations of the three well established torts of safe conducts, infringement of the

Therefore, because Plaintiffs have not asserted a valid underlying cause of action, they cannot establish a jurisdictional basis to assert an ATS claim. Consequently, Plaintiffs' ATS claim must be dismissed.

### D.  Supplemental Jurisdiction

Plaintiffs' remaining claims are state law claims. *See* generally ECF No. [52]. Because the Court had original subject matter jurisdiction over Plaintiffs' federal claims, the Court is permitted, pursuant to 28 U.S.C. § 1367, to exercise jurisdiction over the remaining state law claims if they are "so related to the claims within the Court's original jurisdiction as to form part of the same case or controversy." However, in circumstances where the district court has dismissed all claims over which it has original jurisdiction, the Court, in its discretion, may decline to exercise jurisdiction over the remaining state law claims. 28 U.S.C. § 1367(c)(3); *see also Parker v. Scrap Metal Processors*, *Inc.*, 468 F.3d 733, 743 (11th Cir. 2006) ("Any one of the section 1367(c) factors is sufficient to give the district court discretion to dismiss a case's supplemental state law claims."). The Eleventh Circuit has repeatedly "encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial." *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004) (citing *L.A. Draper & Son v. Wheelabrator–Frye, Inc.*, 735 F.2d 414, 428 (11th Cir. 1984)). The Court finds that the interest of judicial economy, convenience, fairness, and comity warrants dismissal of the remaining state law claims. *See Oldaker v. Giles*, 724 F. Supp. 3d 1315, 1353 (M.D. Ga. 2024) ("Both comity and judicial economy are served when state courts are given the opportunity to resolve issues of state law.").

---

rights of ambassadors, or piracy or an analog to those torts.

### E.  Dismissal of Federal Claims with Prejudice

Defendants request that the Court dismiss all the claims in the Amended Complaint with prejudice. Defendants argue the instant Amended Complaint "is Plaintiffs *fourth* attempt to present a compliant pleading in their effort to leverage Florida litigation to strengthen the Delaware Case." ECF No. [100] at 19. Plaintiffs initially filed a complaint based on the underlying facts in this case in *Frietes et al. v. Orlando Viero-Blanco*, et al., 24-cv-24176 (S.D. Fla. Oct. 30, 2024) (ECF No. [5]). However, Judge Altonaga dismissed the complaint as an impermissible shotgun pleading. *See* ECF No. [100-4]. Plaintiffs then proceeded to file an amended complaint in 24-cv-24176, which was dismissed again because Plaintiffs not only failed to follow court rules but committed fraud upon the court. *See* ECF No. [100-2]. After twice failing to plead their claims before Judge Altonaga, Plaintiffs decided to file a new case before this Court. According to Defendants, the Original Complaint before this Court was "only superficially different" than those filed in 24-cv-24176. ECF No. [100] at 19. Defendants, proceeded to file a motion to dismiss in this case, *see* ECF No. [16] but rather than opposing Defendants' Motion, Plaintiffs elected to file the instant Amended Complaint as a matter of course. *See* ECF No. [52]. Although the instant Amended Complaint is now the fourth iteration of Plaintiffs' pleadings, Defendants point out that the operative Complaint still fails to cure "the defects previously identified by the Court in the first Florida case, or by Defendants in this case." ECF No. [100] at 20. Accordingly, since Plaintiffs' have repeatedly filed shotgun pleadings with deficient claims based on the same facts, Defendants argue Plaintiffs' Amended Complaint should be dismissed with prejudice.

Plaintiffs contend that to the extent their pleadings amount to a shotgun pleading, the defects are minor and leave to amend should be granted accordingly. *See* ECF No. [137] at 2. Plaintiffs do not address the other portions of Defendants' arguments.

Case No. 25-cv-20465-BLOOM/Elfenbein

The Court finds the federal claims should be dismissed with prejudice. The Eleventh Circuit has made clear that so long as a "plaintiff ha[s] fair notice of the defects and a meaningful chance to fix them . . . the district court does not abuse its discretion in dismissing the case with prejudice[.]" *Jackson*, 898 F.3d at 1358. Here, Plaintiffs have had multiple opportunities to cure the deficiencies in their pleadings yet continue to file claims that are both substantially deficient and amount to shotgun pleadings. Not only did Judge Altonaga inform Plaintiffs that their pleadings constituted impermissible shotgun pleadings, *see* ECF No. [100-4], Defendants informed them of such prior to filing the instant Amended Complaint. *See* ECF No. [16] at 7. Additionally, Defendants' previous Motion to Dismiss also identified the deficiencies in Plaintiffs' federal claims that the Court has identified herein. *See generally* ECF No. [16]. Therefore, given the opportunities to cure, the Court does not find it appropriate to give Plaintiffs an additional opportunity to try and fix both the procedural and substantive deficiencies in their Amended Complaint. Consequently, the federal claims are dismissed with prejudice. *See Johnson v. Georgia*, 661 F. App'x 578, 581 (11th Cir. 2016) ("In the light of [the *pro se* p]laintiff's continued failure to comply with federal pleading requirements, the district court committed no error in dismissing with prejudice Plaintiff's first amended complaint."); *Kelly v. Water Works*, No. 2:24-CV-348-RAH-JTA, 2025 WL 1271298, at *4 (M.D. Ala. May 1, 2025) ("Repeatedly filing documents that make the same errors after the court has previously explained those errors to Kelly is 'frivolous, waste[s] the court's limited resources, and unnecessarily delay[s] the resolution of the case on the merits.'") (quoting *Kelly v. Montgomery Hous. Auth.*, No. 2:24-CV-166-MHT-JTA, 2024 WL 3240637, at *1 (M.D. Ala. June 28, 2024)).[28]

---

[28] Furthermore, the Court also notes that considering its analysis of Plaintiffs' federal claims, future amendment of those claims would be futile. *See Joseph v. Bernstein*, 612 F. App'x 551, 558 (11th Cir. 2015) ("[W]here a more carefully drafted complaint could not state a claim and amendment would be futile, dismissal with prejudice is proper.").

However, since the Court has declined to exercise supplemental jurisdiction over the state-law claims, the dismissal of those claims is without prejudice to allow Plaintiffs to assert any valid claims in state court. *Ingram v. School Bd. of Miami-Dade County*, 167 F. App'x 107, 109 (11th Cir. 2006) ("When a court decides not to exercise supplemental jurisdiction under § 1367(c)(3) because only state claims remain, the proper action is a dismissal without prejudice so that the complaining party may pursue the claim in state court.") (citing *Crosby v. Paulk*, 187 F.3d 1339, 1352 (11th Cir. 1999)).

## IV.   CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED as follows:**

1. Defendants Orlando Viera-Blanco, Jose Vicente Carrasquero, Jose Alexis Ortiz, Thaelman Urgelles, Lino Carrillo, Center for Liberal Democracy Development Inc., ASM Investing LLC, Tezcua Investments LLC, American Venezuelan Engagement Foundation Inc., Venezolanos y Americanos Inc., Altamira Cinema Corp., Venezuelan American Petroleum Association, and Latino Communications LLC's Motion to Dismiss Plaintiffs' Amended Complaint, **ECF No. [96]**, is **GRANTED**.

2. Defendant Horacio Medina's Motion to Dismiss, **ECF No. [100]**, is **GRANTED**.

3.  Plaintiffs' federal law claims **(Count I, Count VII, Count VIII, and Count X)** are **DISMISSED with prejudice**.

4. Plaintiffs' state law claims **(Count II, Count III, Count IV, Count V, Count VI, and Count IX**) are **DISMISSED without prejudice**.

5. The Clerk of Court is directed to **CLOSE** this case.

6. To the extent not otherwise disposed of, any scheduled hearings are **CANCELED**, all pending motions are **DENIED as MOOT**, and all deadlines are **TERMINATED**.

7.

Case No. 25-cv-20465-BLOOM/Elfenbein

**DONE AND ORDERED** in Chambers at Miami, Florida, on May 15, 2025.

_____

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

cc:
Counsel of Record

Ivan Freites, *Pro se*
4370 NW 107 Ave Apt 102
Doral, FL 33178

Miguel Enrique Otero, *Pro Se*
Eichholzstrasse 2,
63l2-steinhausen, CH

Jorge Alejandro Rodriguez, *Pro Se*
Eichholzstrasse 2,
63l2-steinhausen, CH