# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF FLORIDA

FILED BY _____ D.C.

MAY 23 2025

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

Case No. 1:25-cv-20465-BB

IVAN R. FREITES C., MIGUEL ENRIQUE OTERO, and JORGE ALEJANDRO
RODRIGUEZ,

*Plaintiffs,*

v.

HORACIO MEDINA, et al.,

*Defendants.*

_____/

**PLAINTIFFS' EXPEDITED POST-JUDGMENT MOTION FOR SANCTIONS
POST-JUDGMENT MOTION FOR GRIEVANCE COMMITTEE REFERRAL,
SANCTIONS,  FORMAL RULING ON DISQUALIFICATION AND REQUEST
FOR EVIDENTIARY HEARING.**

Plaintiffs **Ivan R. Freites C., Miguel Enrique Otero, and Jorge Alejandro Rodríguez (collectively, "Plaintiffs")**, appearing *pro se*, respectfully move this Court pursuant to its inherent authority and S.D. Fla. L.R. 11.1(c) for an order:

**(1)** Referring counsel for **Defendant Horacio Medina, the law firm Diaz, Reus & Targ LLP ("DRT")** and its attorneys to the Court's Grievance Committee for investigation of serious ethical violations; **(2)** Imposing sanctions against DRT and its attorneys for conflict-of-interest misconduct and related litigation abuse; and **(3)** Issuing a post-judgment ruling on Plaintiffs' Motion to Disqualify Counsel (DE 30) and Supplemental Motion to Disqualify (DE 144), recognizing that DRT was subject to disqualification and should not have appeared in this matter. Pursuant to this Court's inherent authority, 28 U.S.C. § 1927, Rule 11 of the Federal Rules of Civil Procedure, and Southern District of Florida Local Rule 7.1(d), Plaintiffs respectfully file this Expedited Motion and Request for Evidentiary Hearing. Expedited consideration is warranted because the post-judgment misconduct alleged—including continued participation of conflicted counsel, use of privileged and potentially improperly obtained communications, and obstruction of judicial proceedings—poses ongoing and irreparable harm to the administration of justice. Plaintiffs further request that the Court set an evidentiary hearing to adjudicate these contested issues of fact, which cannot be resolved solely on the written record. The relief sought is necessary to protect the integrity of this Court's orders, ensure compliance with ethical obligations, and preserve the Plaintiffs' rights under the judgment and applicable law.

### Introduction and Background

This motion arises from an *ab initio* **flagrant conflict of interest and breach of ethical duties by DRT LLP**, with the accessory involvement of its attorney Gábor Gazsó von Klingspor (Gazso or Gazsó). **DRT previously engaged in privileged attorney-client conversations with**

1

**Plaintiff Jorge A. Rodriguez in substantially related matters and thereby acquired confidential and privileged information from Plaintiff on a critical subject of this litigation, including the wrongful actions in obstruction of justice and other wrongs of Defendant Medina with respect to Plaintiff Rodriguez and the associates of Plaintiff Rodriguez as described in DE 30.** Despite this pre-existing duty of confidentiality, DRT later accepted representation directly adverse to Mr. Rodriguez – representing Defendant Horacio Medina (and, upon evidence and belief, providing counsel the PDVSA Ad Hoc Board and others aligned with Mr. Medina) against Mr. Rodriguez in this case and other related cases in this Court and in the District of Delaware without Mr. Rodriguez's consent. This conduct violated DRT's fiduciary and ethical obligations to its former client and is expressly prohibited by Florida's Rules of Professional Conduct. **During late 2023 and early 2024, Mr. Rodriguez consulted with DRT regarding a closely related dispute that clearly included the matter of this litigation.** During those consultations, Mr. Rodriguez shared privileged, sensitive information about the facts and legal strategy – information which DRT acknowledged in writing that was confidential and within the scope of an attorney-client relationship. DRT's attorneys were fully aware of the privileged nature and subject matter of these communications. No waiver or informed consent was ever given by Mr. Rodriguez for DRT to use this information or to represent any party adverse to him. Under Florida Bar Rule **4-1.6** (Confidentiality) and **4-1.9** (Conflict of Interest: Former Client), DRT had a continuing duty not to reveal or misuse Mr. Rodriguez's confidences and not to represent a new client in a matter adverse to Mr. Rodriguez that is the same or substantially related to the prior matter **without Mr. Rodriguez's informed consent**. DRT nonetheless **appeared in this case on behalf of defendants directly adverse to Mr. Rodriguez**, thereby breaching its duty of loyalty and confidentiality and creating an unwaivable conflict of

interest and furthermore apparently advised other individuals adverse to Rodriguez in a related case previously heard by Hon. Judge Cecilia Altonaga in this District. Moreover, DRT **worsened this conflict by assigning attorney Gábor Gazsó von Klingspor (Gazsó) to its litigation team,** despite his own ties to the matter. Mr. Gazsó is the son of attorney Andrés Gazsó Hazsos, who had a professional relationship with Mr. Rodriguez and received privileged information from him on the matter at hand. In fact, Mr. Gábor Gazsó joined DRT in 2024 after those 2023–2024 confidential discussions with Mr. Rodriguez had taken place. Before joining DRT, Mr. Gazsó (through his previous firm and association with his father) had access to Plaintiff Rodriguez's confidential information. Notwithstanding this obvious conflict, DRT assigned Mr. Gazsó to work on this and other cases against Mr. Rodriguez, directly opposing the very individual whose secrets he (and his family firm) had obtained. This reckless assignment demonstrates a clear disregard for conflict screening practices and a willful violation of ethics rules, further tainting the entire defense team. Under Florida Bar Rule **4-1.10** (Imputed Disqualification), Mr. Gazsó's conflict is imputed to all DRT attorneys, exacerbating the firm's ethical breach. Crucially, **DRT never disclosed these conflicts or its prior relationships** to the Court or to Plaintiffs, **on the contrary as evidenced in DE 144, DRT jointly with Sardi Law intended to conceal the identity of attorney Gazso and the association of DRT and Sardi Law against Mr. Rodriguez, as DRT was jointly through at least attorney Gazso, participating in the case presented to judge Altonaga.** It was only through Plaintiffs' own diligence that the conflict came to light. DRT's strategic concealment of its access to Mr. Rodriguez's confidential information compounded with the untruthful affirmations (or straight lies) presented to the court in their response to DE 30 – and of Mr. Gazsó's personal connections – allowed the firm to maintain its role in the case through summary judgment, to Plaintiffs'

severe prejudice. By failing to come forward with this information, presenting false statements with respect to the previous professional relationship with Plaintiff and the violation of privileged consultations, DRT violated its duty of candor and fairness to the tribunal. By intending to conceal factual issues on these conflicts it worsened its situation. The firm's silence and obfuscation were not innocent oversights, but a **calculated effort to mislead the Court and gain an unfair advantage** in the litigation as evidenced in DE 30 and DE 144. Additional layers of undisclosed influence further underscore the severity of DRT's misconduct. Throughout this case, DRT and co-counsel **Sardi Law PLLC** appeared to be coordinating their representation of the defendants with the interests of the **PDVSA Ad Hoc Board and its related entity, CITGO Petroleum Corporation**, even though those entities were not formally named as parties. For example, in April 2025, Defendants (through Sardi Law) filed a Rule 7.1 Corporate Disclosure and Certificate of Interested Persons (ECF No. 88) that **omitted any reference to PDVSA Ad Hoc or CITGO**, despite evidence that one or both were funding, coordinating, or directing the defense. Indeed, Plaintiffs discovered that **DRT was using an internal email account "pdvsaadhoc@diazreus.com"** in connection with litigation communications – including communications regarding a forthcoming contemplated Rule 11 sanctions motion. The use of an email address plainly referencing **PDVSA Ad Hoc** (hosted on DRT's own domain) is a *smoking gun* indicating that PDVSA Ad Hoc personnel were actively involved in the defense's strategy and communications. Several of the Defendants (e.g., Defendant Horacio Medina) are known to have held leadership roles in the PDVSA Ad Hoc Board (president), further blurring the line between the named Defendants and the non-party entities in the background. Yet, none of this was disclosed to the Court as required. Plaintiffs promptly raised these transparency issues upon

4

discovery. On April 15, 2025, Plaintiff Freites filed a **Notice of Disclosure Deficiency** (DE 95)[1] formally alerting the Court that Defendants' disclosure statement failed to mention PDVSA Ad Hoc or CITGO despite their apparent involvement, which DRT attempted to strike from the litigation. Plaintiffs also reached out to defense counsel to confer on this issue, requesting confirmation or clarification of PDVSA Ad Hoc and CITGO's role. **Counsel Carlos Sardi's response was a dismissive "File your own."** No supplemental disclosure was ever filed, and Defendants persisted in concealing the extent of PDVSA Ad Hoc's participation. In light of the **pdvsaadhoc@diazreus.com** emails, Plaintiffs were justifiably concerned that a sovereign instrumentalities' involvement was being hidden from the Court, in violation of current interpretations of Fed. R. Civ. P. 7.1 and the Court's Local Rules requiring full disclosure of interested entities. Plaintiffs therefore served a **formal litigation-hold letter** to DRT on April 18, 2025, demanding preservation of all communications and documents related to the **pdvsaadhoc@diazreus.com** account. This preservation demand explicitly noted that the inclusion of the PDVSA Ad Hoc email account in Rule 11 sanction communications was "potentially material to: conflict of interest analysis, [and] unauthorized participation of sovereign instrumentalities" among other issues. DRT's knowledge of this demand, and of the underlying issue, makes its continued silence even more indefensible. Despite the glaring conflicts and ethical red flags, DRT continued to represent the Defendants through the conclusion of the case. Plaintiffs filed a timely **Motion to Disqualify DRT** (DE 30) early in the case, detailing the prior confidential relationship and conflict of interest, and attaching a sworn declaration from Mr. Rodriguez and correspondence proving DRT's knowledge of the privileged information. That motion persuasively argued that DRT's conflict was **unwaivable absent Mr.**

---

[1] DE 95:Plaintiff Ivan Freites' Notice of Disclosure Deficiency and Certificate of Unresolved Conferral Pursuant to Local Rule 3.03 and Rule 7.1(a)(3)

Rodriguez's informed consent (which was never given or even asked for) and that disqualification was required to preserve the fairness and integrity of the proceedings. While that motion was pending, on May 8, 2025, Plaintiffs filed a further **Expedited Motion to Disqualify attorney Gábor Gazsó von Klingspor and for Combined Evidentiary Hearing** (DE 144), supplementing the earlier motion. Said motion detailed Mr. Gazsó's improper involvement and emphasized that, pursuant to Rule 4-1.10, the **Gazso conflict additionally extended to the entire DRT firm**, warranting disqualification of the *complete* defense team on top of the March DE 30 motion that also warranted complete disqualification of DRT.  Ultimately, before the Court ruled on the disqualification motions, this case proceeded to a resolution on the merits. On May 16, 2025, the Court entered Final Judgment. In its Final Judgment, the Court **denied all pending motions as moot**, including Plaintiffs' Motion to Disqualify DRT (DE 30) and the Expedited Motion to Disqualify Gábor Gazsó (DE 144), **without reaching the merits** of those motions. As a result, the serious ethical issues raised therein were left formally unresolved, even though the conflict had permeated the proceedings. Plaintiffs now bring this post-judgment motion to ensure that **DRT's misconduct does not escape review** merely because judgment was entered before the conflict was adjudicated. The Court's inherent supervisory powers and Local Rule 11.1 provide ample authority to address **attorney misconduct after judgment**, especially misconduct that may have tainted the judicial process itself. Plaintiffs seek appropriate relief to **vindicate the integrity of the Court's processes**.  Plaintiffs reserve all rights with respect to any additional misconduct by co-counsel **Sardi Law PLLC**, PDVSA ad hoc, or any other persons, individuals or corporations, which are not the focus of this motion. The emphasis here is on DRT and Mr. Gazsó's egregious conflict of interest and ethical breaches, which merit the Court's immediate attention and remedial action.

**Argument and Memorandum of Law**

**I. Applicable Ethical Standards and the Court's Authority**

**Attorneys practicing before this Court are bound by the Florida Rules of Professional Conduct**, which are explicitly incorporated as the standards of professional conduct under S.D. Fla. Local Rule 11.1(c). An attorney's **duty of loyalty and confidentiality** to a former client is a bedrock principle of those standards. Florida Bar Rule **4-1.9(a)** provides that a lawyer who has formerly represented a client **shall not** thereafter represent another client in "**the same or a substantially related matter**" if that client's interests are "**materially adverse**" to the former client, **unless** the former client gives informed consent. Rule **4-1.9(b)** further prohibits the lawyer from using any information relating to the former representation to the disadvantage of the former client. Rule **4-1.6** likewise mandates that a lawyer must not reveal or use a client's confidences without consent. These rules collectively ensure that a client's trust – in sharing sensitive information with counsel – will not later become a weapon used against them. Importantly, under Florida law and professional norms, when a former-client conflict is shown (i.e. the matters are substantially related and interests adverse), there is a "**virtually unrebuttable**" **presumption that confidences were disclosed** to the attorney during the prior representation. This presumption reflects the reality that clients typically share all pertinent information with their lawyers; it exists to prevent any inquiry into the actual contents of privileged communications (which would itself undermine confidentiality). Thus, once a substantial relationship between the current and former matter is demonstrated, **disqualification is ordinarily mandatory** – the attorney is assumed to possess the former client's confidential information, and any doubt is resolved in favor of protecting client confidences and the integrity of the judicial process. Florida Bar Rule **4-1.10(a)** extends the former-client conflict to the

7

attorney's entire firm: attorneys associated in a firm **"shall not knowingly represent a client when any one of them practicing alone would be prohibited from doing so"** by the conflict rules, **unless** the personal disqualification is based on certain limited exceptions not applicable here. In other words, **an attorney's conflict is imputed to their firm**. The rule's purpose is to prevent a firm from circumventing the conflict rules by assigning a tainted matter to another lawyer in the same firm. All DRT attorneys were therefore **collectively disqualified** from opposing Mr. Rodriguez once any one attorney (here, multiple attorneys) in the firm had received Mr. Rodriguez's confidential information. The only potential escape from imputation – a timely and effective **screening** of the disqualified lawyer coupled with notice to the former client – was not even attempted by DRT. To the contrary, DRT **intentionally placed an additionally disqualified lawyer (Mr. Gazsó) on the team**, defeating any notion that the conflict could have been "cured" by a screen.  Beyond the Rules of Professional Conduct, this Court has **inherent authority** to supervise the attorneys who practice before it and to ensure the fairness of proceedings. This includes the power to **disqualify counsel** for conflicts of interest, to **sanction attorneys** for misconduct, and to **refer ethical violations** for disciplinary review. The Court's inherent power to protect the integrity of its proceedings was famously recognized in *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991), which upheld a district court's authority to impose sanctions for bad-faith litigation conduct even after the case had concluded. The Southern District of Florida's Local Rules also establish a mechanism for attorney discipline: Local Rule 11.1(c) provides that an attorney who violates the Florida Bar Rules in connection with a case **"may be subjected to appropriate disciplinary action"**. Such action can include referral to the Court's **Ad Hoc Committee on Attorney Grievance** (the Grievance Committee) for investigation and recommendation of discipline. In short, this Court not only *can* address DRT's misconduct

post-judgment – it should do so to uphold the standards of professional conduct and public trust in the judicial process. Finally, Federal Rule of Civil Procedure **11** and **37**, as well as S.D. Fla. Local Rule 3.3, reinforce the Court's authority to sanction abuses and non-compliance with disclosure obligations. It is to highlighted that conferal correspondence sent from DRT to Plaintiffs **in April 2025 revealed the PDVSA Ad Hoc involvement**, implicating ethical and Rule 11 concerns. Likewise, Rule 37 empowers the Court to remedy failure to preserve evidence – hence Plaintiffs' preservation letter regarding the **pdvsaadhoc@diazreus.com** communications[2]. In evaluating the sanctions here, the Court has a broad palette of authority, ranging from its inherent power and local rules to the sanctions provisions of the Federal Rules.

## II. DRT Owed Plaintiff Rodriguez a Duty of Confidentiality and Loyalty, Which It Breached by Accepting an Adverse Representation

It is **undisputed that DRT had an attorney-client relationship with Plaintiff Rodriguez (in addition to a clear privileged prospective-client relationship in the matters of this case)** prior to undertaking the defense of Medina. Mr. Rodriguez's unrebutted declaration and the correspondence attached to DE 30 confirm that in **2023–24** he consulted DRT attorneys regarding a matter that is *substantially related* to the claims and defenses in this lawsuit. In those communications, Mr. Rodriguez divulged sensitive factual information, legal theories, and strategic considerations to DRT with the reasonable expectation that the firm was acting (or would act) as his counsel. DRT's own communications acknowledged the privileged and confidential nature of the discussion. This gave rise to a **former-client relationship** for conflict of interest purposes – meaning DRT was thereafter **barred by Rule 4-1.9** from representing a different client against Mr. Rodriguez in any matter that is the "same or substantially related" to

---

[2] See EXHIBIT: Plaintiffs' preservation letter dated April 18th, 2025 addressed to Diaz Reus & Targ LLP (DRT) regarding the **pdvsaadhoc@diazreus.com** communications

what Mr. Rodriguez consulted them about.  There can be no doubt that the present case is **substantially related** to the subject of DRT's prior representation of Mr. Rodriguez. Although the full details of Mr. Rodriguez's confidential communications with DRT are (appropriately) not divulged in public filings, the broad contours of the overlap are clear from the record. The prior consultation concerned disputes involving the **obstructive and defamatory actions by Defendant Horacio Medina ongoing at the moment of consultation between Rodriguez and DRT,** the assets and governance of  PDVSA Ad Hoc Board, its officials, and actions taken with respect to PDVSA/CITGO, – essentially the same subject matter in controversy here. In this lawsuit, Plaintiffs (including Mr. Rodriguez) challenged actions and statements by Defendants (including Mr. Medina, the Ad Hoc Board President). The alignment of parties and interests is such that **DRT switched sides**: it went from advising or hearing confidences from Mr. Rodriguez about how he might pursue legal action against those involved in the Medina and/or PDVSA Ad Hoc Board's maneuvers, to **representing the very individuals and interests opposed to Mr. Rodriguez** in that arena. The epitome of a "substantially related" matter, if not the same matter. Florida courts apply a **strict standard** in such circumstances, recognizing that even a *possibility* of misuse of confidences is intolerable. Once the former client shows the relationship and a similarity between the matters, the law **presumes that confidential information was conveyed** to the attorney in the first matter. Here, that presumption is not only unrebutted – it is affirmatively supported by evidence (Mr. Rodriguez actually provided confidences to DRT). DRT's continued representation of Defendants against Mr. Rodriguez is thus flatly prohibited by Rule 4-1.9. No **informed consent** was sought or obtained from Mr. Rodriguez to waive this conflict, and given the direct adversity and overlapping subject matter, it is hard to imagine how such a conflict could ever be consented to after-the-fact. **The conflict was unwaivable** absent

Mr. Rodriguez's explicit agreement, which he never gave. By proceeding in these circumstances, DRT betrayed Mr. Rodriguez' trust, and placed him at a grave disadvantage. DRT attorneys had insight into Mr. Rodriguez's knowledge, thought processes, and his legal strategies or weaknesses, all acquired under the guise of helping him. Now, in the employ of his opponents, DRT could (intentionally or not) leverage that insight to shape the defense's tactics. **Florida Rule 4-1.9(b) expressly forbids using a former client's information to their disadvantage, yet DRT put itself in a position where that was inevitable**. Even if one charitably assumes that DRT *tried* to compartmentalize the information (which undisputably did not even attempt to do), **the risk of subconscious use or disclosure is inherent and inescapable**. That is why disqualification rules exist – to **prevent the attorney from being in such an impossible position in the first place**, and to assure the former client and the public that the process is untainted. In short, DRT's representation of Defendant Medina (and others aligned with him) against Mr. Rodriguez was a **clear violation of Rule 4-1.9** and an ethical breach of the first magnitude. It **required disqualification** from the outset of this case. Plaintiffs' Motion to Disqualify (DE 30) set forth these facts and law in detail, and it should have been granted on the merits had the Court reached it. By ignoring DRT's conflict until the case concluded, Defendants effectively got the benefit of conflicted counsel throughout the litigation – a situation this Court is prayed to correct through post-judgment remedies.

**III. DRT's Assignment of Gábor Gazsó to this Matter Demonstrates Willful Disregard for Ethical Walls and Imputed Conflicts**

Even beyond DRT's firm-wide former-client conflict, the ethical breach was compounded by the assignment of Attorney Gábor Gazsó von Klingspor to this case. As detailed in Plaintiffs' supplemental disqualification motion (DE 144), Mr. Gazsó was not a neutral late addition—he

11

arrived at DRT already in possession of Plaintiff Rodriguez's confidential information. His father, Andrés Gazsó Hazsos, previously advised Mr. Rodriguez in matters directly tied to this litigation, and Mr. Gazsó, through family and professional association, had access to privileged details. His prior firm had a known relationship with Mr. Rodriguez, making him a "walking conflict."

Under Florida Bar Rule 4-1.10(b), a firm may not represent a party in a substantially related matter adverse to a former client of a newly hired attorney who has material confidential knowledge—unless that attorney is screened and notice is given. Here, assuming arguendo DRT considered this a prior-firm conflict, it nonetheless failed to implement any screen. On the contrary, it affirmatively placed Mr. Gazsó on the litigation team adverse to Mr. Rodriguez, ensuring use of his inside knowledge. No notice or consent was sought, and Mr. Gazsó directly participated in motions and case strategy.

This was not mere oversight—it was a deliberate ethical violation. As courts have made clear, firms must erect "timely and effective screens" to prevent precisely this situation. DRT did the opposite. Mr. Gazsó's involvement imputed his conflict to the entire firm under Rule 4-1.10(a), compounding DRT's independent disqualification from prior representation of Mr. Rodriguez. Either ground alone mandates disqualification; together, they underscore DRT's willful disregard for its ethical obligations. DE 144 emphasized that Mr. Gazsó's presence introduced additional, disqualifying elements. DRT's conduct reflects a conscious choice to prioritize tactical advantage over professional duty.

**IV. DRT (and Co-Counsel) Concealed Their Access to Confidential Information and Third-Party Control, Undermining the Fairness of the Proceedings**

Not only did DRT violate the conflict-of-interest rules, but it also **failed to disclose material information and relationships** that should have been brought to the Court's attention. This lack of candor compounded the ethical breach and prevented timely remediation. First, DRT **never informed the Court or Plaintiffs of its prior interactions with Mr. Rodriguez**. The proper course, when DRT was approached to represent Defendants against Mr. Rodriguez, would have been to **decline the representation outright**. Failing that, at a minimum, DRT should have immediately **notified all parties and the Court of the conflict** and withdrawn. Instead, DRT secretly took on the representation and **hoped the conflict would remain hidden**. It did not list Mr. Rodriguez as a former client in any initial disclosures to the Court (such as in any Rule 7.1 disclosures or notices of conflict, if any). It signed pleadings and papers as if no conflict existed. This lack of disclosure is a **serious ethical lapse** in itself – it shows conscious avoidance of the issue. The firm's silence was finally broken only when Plaintiffs discovered the truth and filed their disqualification motion. Even then, DRT opposed disqualification, effectively denying that any real conflict existed. In doing so, DRT forced Plaintiffs and the Court to engage in a protracted dispute that should never have been necessary, further abusing the judicial process. Critically, at the moment of filing DE 30, Plaintiffs were not aware of the "real identity" of attorney Gazsó, as apparently **said attorney has changed his family name (from Gazsó Bello to Gazsó von Klingspor) which was concealed until visually identified and even initially denied and then evaded when directly questioned by Plaintiffs** in late April as explained in DE 144. Second, and relatedly, **DRT and Sardi Law concealed the involvement of PDVSA Ad Hoc and CITGO in this litigation,** in violation of the transparency requirements of Rule 7.1 and the Court's local rules. When corporate or organizational interests (especially a non-party that is funding or directing litigation) are in the background, those interests typically must be

disclosed in a Certificate of Interested Persons so that the Court can assess any potential conflicts and the public is aware of who the real parties in interest are. Here, given that many Defendants were members or agents of the PDVSA Ad Hoc Board, and given the email evidence of PDVSA Ad Hoc oversight, there should have been **full disclosure that PDVSA Ad Hoc and/or CITGO have a stake in the outcome**. Instead, Defendants' Certificate of Interested Persons (ECF No. 88) **filed by Sardi Law and which DRT moved to strike** omitted **any mention** of PDVSA Ad Hoc or CITGO. This omission and attempt to strike appears to be a deliberate strategy to keep the true puppet-masters behind the curtain. By doing so, defense counsel avoided potential questions from the Court about those entities' role, and possibly avoided the need for those entities to officially appear (and be subject to discovery or jurisdiction).   Plaintiffs' **Notice of Disclosure Deficiency** (DE 95) lays out the concern clearly: Plaintiffs cited the *"defense electronic correspondence referencing 'pdvsaadhoc@diazreus.com', a clear indication that PDVSA Ad Hoc is functionally involved in the conduct or oversight of the litigation."*. The Notice warned that the omission of PDVSA Ad Hoc and CITGO "raises a significant compliance issue" under the disclosure rules. In response, rather than come clean, defense counsel (Mr. Sardi) tersely replied, "File your own", refusing to clarify or correct the disclosures. Such a response falls far short of the **good faith** expected in conferral under Local Rule 7.1, and it **signals an unwillingness to engage on a matter that goes to the integrity of the process**. In other words, defense counsel had no rebuttal – **they simply stonewalled, effectively admitting that something was afoul but daring Plaintiffs to chase it**.   DRT's role in this concealment cannot be overstated. The **pdvsaadhoc@diazreus.com** email suggests that DRT itself was **hosting or facilitating communications for the Ad Hoc Board** in relation to this case. DRT was not a passive bystander to Sardi Law's nondisclosure; DRT was actively in league with the

14

undisclosed third party. This raises additional ethical questions: If DRT was effectively taking direction from PDVSA Ad Hoc or CITGO (entities which it did not formally disclose as clients), then DRT may have been violating duties of candor to the tribunal (Rule 4-3.3) and fairness to opposing party (Rule 4-3.4) by masking the true interests at play. **There is also a hint of *champerty/maintenance* concerns if a non-party (CITGO) was controlling litigation without accountability. At the very least, DRT and Sardi had a duty to inform the Court of any financial or strategic support by a non-party organization.** Their failure to do so deprived the Court of the opportunity to inquire into potential conflicts (for example, if the Court or any party had any affiliation with CITGO or the Ad Hoc Board) and deprived Plaintiffs of transparency about who was calling the shots for Defendants. In sum, DRT's misconduct was not limited to *substantive* conflicts of interest; it extended to **procedural gamesmanship** that undermined the integrity of these proceedings. By concealing crucial information – their own prior relationship with a party, and the involvement of powerful third-party entities – DRT and its co-counsel **obstructed the Court's oversight** of ethical and procedural compliance. This pattern of concealment is further evidence of **bad faith**. It demonstrates that DRT knew its conduct could not withstand scrutiny, so it sought to avoid that scrutiny altogether. Such behavior is sanctionable in its own right. Courts have inherent power to sanction attorneys who **"willfully abuse the judicial process"** or act in bad faith (Chambers, 501 U.S. at 45–46), and concealing conflicts or interested parties is undeniably an abuse of the process.

## V. Prejudice to Plaintiffs and the Integrity of the Court

The ethical violations described above are not mere technicalities – they go to the heart of fairness in this litigation. **Plaintiffs have suffered actual prejudice** as a result of DRT's misconduct, and the integrity of the Court's proceedings has been called into question.

**Informational Disadvantage:** By using an attorney (or multiple attorneys) who possessed Mr. Rodriguez's confidential information, Defendants enjoyed an **inequitable informational advantage**. Litigation is supposed to be a fair fight on a level playing field. Here, DRT armed the defense with the equivalent of the playbook from Plaintiffs' side. Mr. Rodriguez and the other Plaintiffs could only speculate how their confidences might be used against them – perhaps to anticipate their legal arguments, undermine their credibility, or exploit factual weaknesses that only an insider would know. Even if DRT never overtly introduced a piece of confidential information into the record, the **strategic benefit of having that knowledge inherently skewed the process**. Courts routinely hold that the *appearance* of possible misuse of confidences is enough to warrant disqualification, because the former client should not have to reveal what was actually disclosed in order to prove a breach. That rationale underscores how **significant the prejudice is**: Mr. Rodriguez was effectively litigating against his *former attorneys*, who knew the contours of his case strategy, etc. **Undermined Trust in the Judicial Process:** DRT's participation despite the conflict cast a long shadow over these proceedings. Plaintiffs (and the public) are left to wonder whether the outcome of the case was a product of the merits or of behind-the-scenes unethical advantages. The fact that final judgment was entered **without ever resolving the disqualification motions on their merits** means there is a lingering question of *fundamental fairness*. When serious ethical breaches go unaddressed, it diminishes confidence in the court system. Plaintiffs here justifiably feel that they were denied an impartial forum, because the opposing counsel should never have been allowed in the courtroom in the first place. The integrity of the judicial process demands that such issues be confronted head-on, not swept under the rug as moot. **Wasted Resources and Procedural Prejudice:** Plaintiffs had to divert significant time and resources to raise the conflict issue (via multiple motions, expedited

16

proceedings, evidence gathering) in the midst of litigating the merits. DRT's intransigence forced Plaintiffs to fight a two-front war: one against the Defendants on the merits, and one against Defendants' counsel on the issue of counsel's very eligibility to participate. This is inherently prejudicial. It strained Plaintiffs' limited resources and likely affected their ability to fully focus on the merits. Moreover, had DRT been disqualified early on (as it should have been), Defendants may have had to retain new counsel, possibly delaying the case or altering their litigation strategy. By **plowing forward under a cloud of conflict**, DRT arguably hurried the case to a resolution (Final Judgment) that mooted the conflict issue – a result that itself smacks of tactical maneuver. Essentially, DRT's gamble paid off in that they avoided a ruling on disqualification by reaching the finish line quickly. But the **prejudice to Plaintiffs is manifest**: they lost without ever having the court formally address whether the proceeding was improperly influenced by counsel's misconduct. **Impact on Outcome (Potentially):** While Plaintiffs are not herein seeking to overturn the judgment in this motion (that would be a matter for appeal or separate Rule 60 relief if warranted), it is notable that the conflict could have had material impact. For instance, if DRT's knowledge influenced how Defendants structured their defense or what evidence they focused on, it could have affected the Court's fact-finding or legal conclusions. The point is, we cannot know for sure – and that uncertainty is itself a harm. The Eleventh Circuit and Florida courts have emphasized that doubts about the propriety of attorney conduct should be resolved in favor of protecting the litigants and the public's perception of justice. Here, the doubt cuts in favor of recognizing that something went deeply wrong in this case, procedurally. **Administration of Justice:** Beyond the parties, the administration of justice in the Southern District of Florida suffers if attorneys are seen to violate rules without consequence. The Rules of Professional Conduct and Local Rules exist to assure that cases are

adjudicated on the merits, not skewed by conflicts or clandestine influences. When those rules are breached, the Court's obligation is to respond firmly. Otherwise, it sends a signal to other attorneys that such sharp practice will be tolerated. Plaintiffs urge the Court to make clear that it will not countenance such behavior. Indeed, failing to address DRT's conduct could encourage others to hide conflicts or back-room influences, which would be a perverse outcome. By contrast, a strong post-judgment intervention here will reinforce that the **ethical norms are taken seriously in this District**.

## VI. Request for Expedited Consideration

Plaintiffs respectfully request that this Court hear and resolve this Motion on an expedited basis pursuant to Local Rule 7.1(d) and the Court's inherent authority. The relief requested pertains to post-judgment misconduct that has ongoing consequences, including potential ethical breaches, interference with further proceedings, and the integrity of the Court's docket. Prompt resolution will promote judicial economy, mitigate continued harm, and ensure that necessary sanctions and referrals are not undermined by delay. Plaintiffs are prepared to comply with any briefing or hearing schedule the Court may direct, in advance, Plaintiffs respectfully pray to the Court for online participation of Plaintiffs Otero and Rodriguez due to their current location in Europe.

## VII. Sanctions and Disciplinary Referral Are Warranted

In light of the above, Plaintiffs respectfully request that the Court **take remedial action** and invoke its inherent powers and Local Rule 11.1 to impose appropriate **sanctions** and order a **disciplinary referral**. The relief requested is as follows:

1. **Referral to Grievance Committee:**   Plaintiffs respectfully request that the Court refer the conduct of DRT & Targ LLP—including attorneys Diaz, Jr., Coronado, Colomar, and Gazsó—to the Ad Hoc Committee on Attorney Admissions, Peer Review, and Attorney Grievance of the

Southern District of Florida for investigation and appropriate disciplinary action. The conduct at issue demonstrates prima facie violations of Florida Bar Rules 4-1.6, 4-1.9, and 4-1.10, as well as apparent bad-faith concealment of those violations. A formal review is necessary to uphold the integrity of this Court's Bar.

2. **Monetary and Litigation Sanctions:**  Pursuant to the Court's inherent authority, and to the extent applicable, 28 U.S.C. § 1927 and Fed. R. Civ. P. 37, Plaintiffs request the imposition of monetary sanctions sufficient to deter future misconduct and partially compensate for the costs incurred in litigating the conflict of interest and related discovery issues. Plaintiffs also request a fine payable to the Court or alternative non-monetary sanctions—such as mandated ethics training or certification of DRT's conflicts procedures—to underscore the seriousness of the abuse. (See Chambers v. NASCO, Inc., 501 U.S. 32, 43–46 (1991).)

3. **Post-Judgment Ruling on Disqualification:**  Plaintiffs ask that the Court formally rule—nunc pro tunc or post-judgment—on DE 30 and DE 144, holding that DRT had a disqualifying conflict and should have been barred from representing Defendants. The Court retains inherent authority to supplement the record to address collateral ethical violations. A formal finding will clarify the impropriety, support appellate review, and mitigate prejudice by affirming that DRT's violation of Rules 4-1.9 and 4-1.10 warranted disqualification.

4. **Accounting of Improper Communications:**  Plaintiffs pray that the Court order DRT to provide a full accounting of all communications involving the email address pdvsaadhoc@diazreus.com, and any involvement by PDVSA Ad Hoc and/or CITGO in this litigation, to ensure transparency and assess undisclosed influence or coordination.

5. **Referral of Sardi Law (Optional):**  Although this motion focuses on DRT, Plaintiffs note that Sardi Law's role in the nondisclosure may independently warrant referral to the Grievance

Committee. Plaintiffs defer to the Court's discretion on that matter.

6. **Additional Relief and ruling on Plaintiffs' DE 110 on Defendant's DE 107 due to Certificate of Conferral containing false statements:** Plaintiffs request such other relief as the Court deems just and proper, including vacatur of orders tainted by conflicted representation where appropriate. The Court should also rule on DRT's false representation of conferral as detailed in Plaintiffs' DE 110, as it compounds the ethical violations detailed herein. Sanctions should reflect the gravity of the misconduct and its impact on this proceeding.

**WHEREFORE,** Plaintiffs respectfully request that the Court grant this motion and enter an order: (1) referring DRT & Targ LLP to the Court's Grievance Committee for investigation of ethical violations; (2) imposing appropriate sanctions to deter further misconduct and redress the harm caused; and (3) issuing a post-judgment finding that DRT's conflict of interest violated the Rules of Professional Conduct and warranted disqualification, thereby resolving DE 30 and DE 144 on the merits. Plaintiffs further request such additional relief as the Court deems just and proper to uphold the integrity of these proceedings. A proposed order is attached hereto for the Court's convenience.

Respectfully submitted on  May, 2025

**Ivan R. Freites C.**

 4370 NW 107 Ave., Apt. 102

 Doral, FL 33178

**/s/ Miguel Enrique Otero**

 Miguel Enrique Otero, Pro Se

**/s/ Jorge Alejandro Rodríguez**

 Jorge Alejandro Rodríguez, Pro Se

Attachments:

**EXHIBIT:**


Plaintiffs' preservation letter regarding the **pdvsaadhoc@diazreus.com** communications

**EXHIBIT:**

Plaintiffs' preservation letter regarding the **pdvsaadhoc@diazreus.com** communications

---

Gmail

## Conferral Request re: Plaintiffs' Forthcoming Motion for Injunctive Relief – Case No. 1:25-cv-20465-BB (S.D. Fla.)

1 message

**O.B.O Plaintiffs Freites Otero Rodriguez** <freites.usdcsf.1.25.cv.20465.bb@gmail.com>                    Fri, Apr 18, 2025 at 8:07 PM
To: Javier Coronado <jcoronado@diazreus.com>
Cc: Aylin Hovispo <ahovispo@diazreus.com>, Marta Colomar Garcia <mcolomar@diazreus.com>, Michael Diaz <MDiaz@diazreus.com>,
Mitchell Jagodinski <mjagodinski@diazreus.com>, pdvsaadhoc@diazreus.com, GGazyo@diazreus.com

**TO:** Diaz Reus & Targ LLP
Attn: Javier Coronado, Esq.
100 SE 2nd Street, Suite 3400
Miami, Florida 33131
**Email:** jcoronado@diazreus.com and others

**RE: Data Preservation Demand – Email Account:** pdvsaadhoc@diazreus.com
**Freites C., et al. v. Medina, et al.**

Case No. 1:25-cv-20465-BB (S.D. Fla.)

Dear Mr. Coronado,

Pursuant to your firm's involvement as counsel of record in the above-captioned matter, we hereby formally demand the **immediate preservation** of all documents, emails, attachments, and internal records relating to or transmitted through the email address pdvsaadhoc@diazreus.com.

This includes but is not limited to:

    1. **All correspondence** (internal and external) involving this address;

    2. **Attachments or exhibits** exchanged in any litigation communication;

    3. **All server logs and message headers** reflecting IP addresses, timestamps, and routing data;

    4. **Access logs and mailbox activity** for the account;

    5. Any retention or deletion policies affecting this address.

The inclusion of this account in communications concerning the Rule 11 Motion for Sanctions in this matter is potentially material to:

- Conflict of interest analysis;

- Unauthorized participation of sovereign instrumentalities,

- Federal Rules of Civil Procedure 11, 26, and 37 implications.

This letter serves as a litigation hold notice. Any failure to preserve relevant ESI or metadata may be raised with the Court under Fed. R. Civ. P. 37 and may be subject to appropriate sanctions.

Sincerely,

Jorge Alejandro Rodriguez

Miguel Enrique Otero

Ivan R. Freites C.

[Quoted text hidden]

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF FLORIDA

Case No. 1:25-cv-20465-BB

IVAN R. FREITES C., MIGUEL ENRIQUE OTERO, and JORGE ALEJANDRO
RODRIGUEZ,

    *Plaintiffs,*

v.

 HORACIO MEDINA, et al.,

    *Defendants.*

_____/

**[PROPOSED] ORDER** GRANTING PLAINTIFFS' EXPEDITED POST-JUDGMENT
MOTION FOR SANCTIONS, REFERRAL TO GRIEVANCE COMMITTEE, AND
POST-JUDGMENT DISQUALIFICATION FINDING

**THIS MATTER** is before the Court on Plaintiffs' Expedited Post-Judgment Motion for
Sanctions, Referral to Grievance Committee, and Request for Evidentiary Hearing. Upon careful
review of the Motion, the record in this case, the applicable rules of professional conduct, and
the Court's inherent authority to enforce ethical compliance and protect the integrity of its
proceedings, it is hereby:

**ORDERED AND ADJUDGED** that Plaintiffs' Motion is  GRANTED IN PART  as follows:

**1.  Referral to Grievance Committee :**

    The Court refers the conduct of the law firm  Diaz Reus & Targ, LLP , including attorneys
Michael Diaz Jr., Javier Coronado, Beatriz Colomar, and Gábor Gazsó von Klingspor, to the  Ad
Hoc Committee on Attorney Admissions, Peer Review, and Attorney Grievance of the Southern

District of Florida  for investigation of potential violations of the Florida Rules of Professional Conduct, including but not limited to Rules  4-1.6 ,  4-1.9 , and  4-1.10 .

## 2.  Monetary and Non-Monetary Sanctions :

As a partial remedy for the prejudicial and improper conduct outlined in the Motion, and pursuant to the Court's inherent authority and 28 U.S.C. § 1927, the Court imposes the following sanctions:

- Diaz Reus & Targ, LLP shall pay  $_____  to Plaintiffs as partial reimbursement for costs incurred in connection with conflict-related litigation and discovery efforts, with final amount to be determined after submission of a verified cost statement for the litigation expenses incurred within 14 days of this Order.

- Additionally, DRT attorneys shall complete, within 60 days, a Court-approved  CLE ethics course  addressing conflicts of interest and firm-wide imputation under the Florida Bar Rules and submit certification of completion.

## 3.  Post-Judgment Disqualification Finding :

The Court hereby enters a  post-judgment finding  that DRT was subject to disqualification under Florida Rules of Professional Conduct  4-1.9(a)  and  4-1.10(a)  based on its prior representation of Plaintiff Jorge Alejandro Rodríguez and the imputed conflict introduced through attorney Gábor Gazsó. Accordingly, the Court  rules nunc pro tunc  that DRT's continued participation in this matter was in violation of ethical obligations, and that Plaintiffs' motions at DE 30 and DE 144 were well-founded.

## 4.  Accounting of Improper Communications :

DRT shall file, within 21 days of this Order, a sworn accounting of all communications—including        metadata—exchanged        using        the        address

pdvsaadhoc@diazreus.com , or otherwise involving PDVSA Ad Hoc or CITGO in relation to this case. This accounting shall include any instructions, coordination, or disclosures by or on behalf of those entities relevant to litigation strategy or representation.

**5. Referral of Sardi Law (Optional) :**

The Court reserves discretion to consider the referral of Sardi Law and any associated counsel for separate disciplinary review upon further motion or showing.

**6. Additional Relief :**

The Court further finds that the Certificate of Conferral accompanying Defendants' filing at DE 107 contains statements that are inconsistent with the record and misrepresent Plaintiffs' position. Accordingly, Plaintiffs' objections at DE 110 are SUSTAINED , and the Court VACATES any prior orders entered based upon that misrepresented conferral to the extent necessary to prevent prejudice.

**7. Retention of Jurisdiction :**

The Court retains jurisdiction to supervise compliance with this Order, including enforcement of sanctions, adjudication of the final cost amount, and any further remedial measures warranted by the findings of the Grievance Committee.

**DONE AND ORDERED** in Chambers at Miami, Florida, this _22_ day of _May_ , 2025.

_____

The Hon. BETH BLOOM

UNITED STATES DISTRICT JUDGE

Copies to: All counsel and parties of record

25

## CERTIFICATE OF CONFERRAL PURSUANT TO LOCAL RULE 7.1(a)(3)

Plaintiffs hereby certify that, pursuant to Local Rule 7.1(a)(3) of the Local Rules of the United

States District Court for the Southern District of Florida, no conferral is required for the instant

motion because it is a post-judgment motion.  Nonetheless, **in an abundance of caution and in**

**the interest of judicial economy, on or about May 16th, Plaintiffs reached out to counsel for**

**Defendants via electronic communication** to confer on all issues related to the Court's Final

Order and Judgment (ECF No. 165), including the relief sought herein.  While Defendants did

not answer in the expected time of several days, a belated reply was received where Defendants

opposed any post-judgement relief.


Respectfully submitted,


**Ivan R. Freites C.**

4370 NW 107 Ave., Apt. 102

Doral, FL 33178

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on May 18, 2025, a true and correct copy of the foregoing Motion
was filed with the Clerk of Court.


**Ivan R. Freites C.**

4370 NW 107 Ave., Apt. 102

Doral, FL 33178