# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

**Case No. 25-cv-20465-BLOOM/Elfenbein**

**IVAN R. FREITES, et al.,**
**Plaintiffs,**

**v.**

**HORACIO MEDINA, et al.,**
**Defendants.**

```
FILED BY  MC   D.C.

      JUN 1 3 2025

      ANGELA E. NOBLE
    CLERK U.S. DIST. CT.
   S. D. OF FLA. - MIAMI
```

**PLAINTIFFS' MOTION FOR RECONSIDERATION OF THE COURT'S ORDER**

**DATED MAY 16, 2025 (ECF NO. 165)**

Plaintiffs Ivan R. Freites, Miguel Enrique Otero, and Jorge Alejandro Rodriguez ("Plaintiffs"), proceeding pro se at the time of the filings relevant to the Order, respectfully move this Honorable Court, pursuant to Federal Rule of Civil Procedure 59(e) and/or the Court's inherent authority, for reconsideration of its Order Granting Motion to Dismiss dated May 16, 2025 (ECF No. 165) ("Order"). This Motion is based on clear errors of law and fact in the Order, the Court's misapprehension of the First Amended Complaint's ("FAC," ECF No. 52) allegations, misapplication of governing standards, newly discovered information, and the manifest injustice that will result if the Order is not vacated or modified. [1]

1

## I. INTRODUCTION

### A. Relief Sought

Plaintiffs seek reconsideration and vacatur of the Court's Order (ECF No. 165) which dismissed their First Amended Complaint (ECF No. 52). [1] The Order dismissed Plaintiffs' federal claims with prejudice and their state law claims without prejudice. [1] Plaintiffs request that the Court vacate its Order and reinstate the FAC. In the alternative, should the Court maintain that deficiencies exist, Plaintiffs request that the dismissal of federal claims be without prejudice and that Plaintiffs be granted leave to file a Second Amended Complaint to cure any such identified deficiencies. [1]

### B. Grounds for Reconsideration

Reconsideration of a court's order is an extraordinary remedy. However, it is warranted in this instance to correct clear errors in the Court's application of established pleading standards, its interpretation and application of the single publication/single action rule, its analysis of the substantive law governing Plaintiffs' federal claims, and its calculation of response deadlines for pro se litigants served by mail. Furthermore, reconsideration is necessary to prevent the manifest injustice of denying Plaintiffs their day in court, particularly through a dismissal with prejudice that was ordered without Plaintiffs having had a meaningful opportunity to cure any deficiencies specifically identified by this Court in the operative FAC, especially in light of ongoing and serious concerns regarding opposing counsel's conduct and the overall fairness of the proceedings. The grounds for reconsideration in this District include the need to correct clear error, the availability of new evidence, or to prevent manifest injustice. [2] This motion is predicated on these grounds, asserting that the Order contains such errors and, if left uncorrected,

will result in profound injustice to Plaintiffs.

**C. Summary of Key Arguments**

Plaintiffs will demonstrate that:

1. The Court committed clear error in characterizing the FAC as a "shotgun pleading" warranting dismissal, particularly dismissal with prejudice. The FAC, when properly construed, provided Defendants with adequate notice of the claims asserted and the grounds upon which they rest. [1]

2. The Court erred in its calculation of response deadlines for Plaintiffs Otero and Rodriguez, who are pro se litigants residing internationally and were to be served by mail, by failing to apply the three-day mail rule under Fed. R. Civ. P. 6(d), and this error contributed to the finding of untimeliness and subsequent manifest injustice.

3. The Court misapplied the single publication/single action rule by failing to recognize the distinct, non-defamation harms alleged in the FAC and by not acknowledging the multifaceted nature of Defendants' alleged wrongful campaign, which involved numerous distinct acts and publications over an extended period. [1] Unauthorized disclosures of sealed information and other independent torts are separate wrongs not subsumed by defamation. [1]

4. The Court committed clear error in its substantive analysis of Plaintiffs' federal claims—specifically, claims under the Racketeer Influenced and Corrupt Organizations Act (RICO), 42 U.S.C. § 1985(2) and (3), 42 U.S.C. § 1986, and the Alien Tort Statute (ATS). The Court overlooked or misconstrued key factual allegations, including actual injury and hindrance in related proceedings, and misapplied relevant legal precedent, including principles of comity regarding the § 1985(2) claim. [1]

5. The dismissal of Plaintiffs' federal claims with prejudice, under the circumstances of this

case—particularly given Plaintiffs' pro se status at the time of filing the FAC, the detailed nature of the FAC, and the contentious procedural background marked by allegations of opposing counsel misconduct and unresolved ethical questions—constitutes a manifest injustice. [1]

## II. STANDARD FOR RECONSIDERATION

### A. Controlling Law

A motion for reconsideration is indeed "an extraordinary remedy to be employed sparingly" [[2], citing *Burger King Corp. v. Ashland Equities, Inc.*, 181 F. Supp. 2d 1366, 1370 (S.D. Fla. 2002)]. The burden is on the movant to establish the extraordinary circumstances justifying such relief. [2]

### B. Grounds in this District

Courts in the Southern District of Florida, and federal courts generally, have identified three primary grounds justifying reconsideration: (1) an intervening change in controlling law; (2) the availability of new evidence that was not previously available; and (3) the need to correct clear error or prevent manifest injustice. [2] Plaintiffs' present motion is predicated on the second and third grounds, asserting that the Order reflects clear errors of law and fact, that new relevant information has come to light, and that allowing the Order to stand, particularly its dismissal of federal claims with prejudice, would result in manifest injustice. To prevail, Plaintiffs must "set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision". [2]

### C. Clear Error or Manifest Injustice

Clear error is a demanding standard, requiring a showing of "clear and obvious error where the 'interests of justice' demand correction" [[2], quoting *Bhogaita v. Altamonte Heights Condo. Ass'n, Inc.*, No. 6:11-cv-1637-Orl-31, 2013 WL 425827, at *1 (M.D. Fla. Feb. 4, 2013)].

Reconsideration may be appropriate where the court "has patently misunderstood a party, or has made a decision outside of the adversarial issues presented to the Court by the parties" [[3], quoting *Z.K. Marine, Inc. v. M/V Archigetis*, 808 F. Supp. 1561, 1563 (S.D. Fla. 1992)]. Manifest injustice occurs when an order is "plainly unfair" or results in a "fundamentally flawed outcome." [1]

The Court, in its Order (ECF No. 165, p. 5), noted that despite Plaintiffs' untimely responses to the motions to dismiss (ECF Nos. 96, 100), it would "nevertheless consider Plaintiffs' Responses to address the merits of the claims asserted". [1] This initial inclination towards a merits-based resolution underscores the potential for manifest injustice if the subsequent dismissal with prejudice was based on either a misapplication of pleading rules, an erroneous view of the substantive law, or an incorrect calculation of response deadlines (as it occurred in this case for both pro se international litigants and local). If the deficiencies identified are, in fact, curable, or if the Court's legal analysis of the claims was itself flawed, then a dismissal with prejudice, especially against pro se litigants attempting to navigate complex federal statutes amidst a contentious litigation environment, would not align with the interests of justice. [1]

## III. ARGUMENT

## A. The Court Committed Clear Error and Caused Manifest Injustice by Dismissing the FAC as a Shotgun Pleading and With Prejudice.

The Court dismissed the FAC (ECF No. 52), in part, by finding it constituted a "classic shotgun pleading as it suffers from all four mortal sins outlined by the Eleventh Circuit in *Weiland*" (ECF No. 165, p. 8). [1] This conclusion, and the subsequent dismissal with prejudice on this basis, represents clear error and results in manifest injustice.

**1. The FAC Provides Adequate Notice and Substantially Complies with F.R.C.P. 8(a) and 10(b), Contrary to the Court's Findings on the *Weiland* Archetypes.**

The "unifying characteristic" of shotgun pleadings is their failure "to give defendants adequate notice of the claims against them and the grounds upon which each claim rests" (ECF No. 165, p. 7, citing *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015)). [1] The FAC, despite any perceived technical imperfections, did not fail in this fundamental requirement. The very fact that Defendants were able to prepare and file detailed Motions to Dismiss (ECF Nos. 96, 100), which substantively addressed the claims and allegations in the 121-page FAC (ECF No. 52) [1], strongly indicates that they *did* receive adequate notice of the claims and their factual underpinnings. [1] The Court's focus on formalistic adherence to the *Weiland* archetypes appears to have overshadowed the practical reality that notice, the core purpose of Rule 8, was achieved. [4]

- **a. Response to Weiland Archetype 1 (Improper Incorporation):**

The Court found that the FAC "not only reincorporate[s] the prior complaint in its entirety, they also incorporate previous paragraphs of the instant Complaint without specific reference...making it virtually impossible to identify which portions of the prior allegations Plaintiffs are referencing and which facts support each count" (ECF No. 165, p. 9). 1 Footnote 10 refers to FAC paragraph 3 ("Plaintiffs fully incorporate and reallege all allegations, facts, claims, and causes of action set forth in the original Complaint"), and footnote 11 refers to FAC paragraph 113 ("Each of the following counts realleges and incorporates by reference all preceding paragraphs of this Complaint, as though fully set forth in each count"). (ECF No. 165, p. 9, fns. 10-11). 1

While the global incorporation of a prior complaint (FAC para. 3) [1] can be problematic, the incorporation of preceding paragraphs of the *current* complaint (FAC para. 113) [1] is a common pleading practice. More importantly, the FAC contains a detailed "IV. FACTUAL ALLEGATIONS COMMON TO ALL COUNTS" section spanning numerous paragraphs (FAC paras. 59-111) [1], which lays out the overarching narrative and specific alleged actions of Defendants. Furthermore, each individual count often contains additional specific factual allegations relevant to that particular cause of action. For example, Count I (RICO) details the alleged enterprise, conduct, and specific predicate acts with references to Defendants' actions (FAC paras. 116-138). [1] The critical question is not whether the incorporation clause was technically perfect, but whether it rendered the FAC "virtually impossible to know which allegations of fact are intended to support which claim(s) for relief" (ECF No. 165, p. 9, quoting *Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996)). [1] Given the extensive factual sections and the specific allegations within counts, Plaintiffs contend the FAC was not so indecipherable. Federal Rule of Civil Procedure 10(b) is "designed to improve the readability of the pleadings," and its goal is to "frame the issues to aid the parties in proceeding... with... clarity". [4] The FAC's structure, by separating causes of action into distinct counts, each prefaced by the common factual allegations and often supplemented by count-specific facts, aimed to achieve this clarity. [1]

- **b. Response to Weiland Archetype 2 (Conclusory, Vague, Immaterial Facts):**

The Court found the FAC "committed the second mortal sin by making conclusory allegations throughout the Amended Complaint, failing to identify what statements amounted to wrongdoing or when the alleged conduct took place" (ECF No. 165, p. 9). 1

This finding overlooks the substantial factual detail provided in the FAC. For instance:

- Specific Wrongdoing (Defamatory Statements): The FAC explicitly alleges Defendants labeled Plaintiffs as "'traitors,' 'false opposition,' and corrupt conspirators" (FAC para. 2). [1] It details Defendant Medina accusing Plaintiffs of "betraying Venezuela" and labeling them "'estafadores' (fraudsters)" (FAC para. 63). [1] It specifies Defendant Lainette's videos labeling Plaintiffs as "'falso opositores' (false opposition) engaged in conspiracies to enrich themselves at the expense of Venezuela" and one video accusing "Plaintiff Otero of having colluded with the late President Hugo Chavez' [s] regime, and insinuat[ing][that] Plaintiff Rodriguez received illicit funds from ex-PDVSA official Rafael Ramirez" (FAC para. 66). [1] Count III (Defamation) further lists specific defamatory imputations (FAC paras. 161, 175-177). [1]

- Timing of Conduct: The FAC provides specific timeframes. Medina's audio messages are alleged to have been recorded and circulated in "August and September 2023" (FAC para. 63). [1] Lainette's videos were allegedly produced around "March or April 2024" (FAC para. 66). [1] Defendant Viera-Blanco's specific Twitter disclosure regarding Plaintiff Rodriguez's sealed status is dated "May 24, 2024" (FAC para. 71). [1] These examples, among others detailed in FAC paragraphs 60-89 [1], directly contradict the Court's assertion that the FAC fails to identify when alleged conduct took place.

- Attribution to Specific Defendants: The FAC, particularly in paragraphs 17-37 (Defendants) and 60-89 (Background of Defendants' Coordinated Campaign), attributes specific actions to individual defendants. [1] For example, paragraph 17 details Horacio Medina's role in initiating, financing, and directing the campaign [1]; paragraph 18 details Orlando Viera-Blanco's unlawful disclosure of sealed information [1]; paragraph 19 details Gustavo Lainette's production of

defamatory videos [1]; and paragraph 71 specifies Viera-Blanco's May 24, 2024, tweet. [1]

- **c. Response to Weiland Archetype 3 (Not Separating Causes of Action):**

  The Court found Plaintiffs "committed the third...sin by improperly merging distinct causes of action into single counts, as they did in Count VII," which included claims under both 42 U.S.C. § 1985(2) and § 1985(3) (ECF No. 165, p. 9). 1

  While combining statutory sub-parts into a single count may not be the ideal form of pleading, it does not automatically render a complaint a shotgun pleading warranting dismissal with prejudice if the factual predicate for each sub-part is discernible. In Count VII, the FAC attempts to distinguish the bases for the § 1985(2) claim (conspiracy to obstruct justice in federal courts, FAC paras. 269-270.3) [1] and the § 1985(3) claim (conspiracy to deprive equal protection, alleging class-based animus, FAC paras. 271-272.2). [1] If the Court found this commingling confusing, the more appropriate remedy would have been to require Plaintiffs to separate these into distinct counts in an amended pleading, rather than dismissing the entire FAC with prejudice. The guiding principle is whether the pleading "promote[s] clarity" [4]; if a minor restructuring would achieve that, dismissal with prejudice is excessive.

- **d. Response to Weiland Archetype 4 (Asserting Multiple Claims Against Multiple Defendants Without Specificity):**

  The Court stated that the FAC "fail[s] to clearly identify which defendant was responsible for the wrongful conduct in each count" (ECF No. 165, p. 9). 1

  This conclusion does not fully account for the FAC's structure.

  ○ The "II. PARTIES" section (FAC paras. 12-37) provides a detailed description of each named Defendant and their alleged general role in the overall scheme. [1] For example, paragraph 17

attributes the initiation, financing, and direction of the campaign to Horacio Medina. [1] Paragraph 19 attributes the production of defamatory videos to Gustavo Lainette. [1] Paragraph 18 attributes the unlawful disclosure of sealed information to Orlando Viera-Blanco. [1]

○ The "IV. FACTUAL ALLEGATIONS COMMON TO ALL COUNTS" (FAC paras. 60-89) further details specific actions and attributes them to specific Defendants or groups of Defendants. [1] For example, paragraph 63 attributes specific audio messages to Medina and their amplification to Carrillo and Carrasquero. [1] Paragraph 66 attributes video production to Lainette under Goicoechea's instruction after a meeting with Medina. [1] Paragraph 71 attributes a specific tweet exposing Rodriguez's sealed identity to Viera-Blanco. [1]

○ While each count incorporates these common allegations, specific counts also often highlight the roles of particular defendants relevant to that claim. For instance, the RICO count's predicate act allegations detail actions by Viera-Blanco and others in the context of wire fraud and witness tampering (e.g., FAC paras. 124, 125, 127). [1] The FAC attempts to connect actions to specific defendants throughout its narrative. If further particularity was required *within each count's re-allegation*, this is a matter for amendment, not dismissal with prejudice. [1]

## 2. Dismissal With Prejudice for Alleged Shotgun Pleading, Particularly for Pro Se Litigants, Was an Unduly Harsh Remedy.

Even if the Court were to find that the FAC exhibited some characteristics of a shotgun pleading, dismissal with prejudice is a "drastic remedy" [6] and generally inappropriate, especially for a first amended complaint filed as of right by pro se litigants, unless there is a clear showing of contumacious conduct or repeated failure to comply with specific court orders to cure identified defects. [1] Pro se pleadings are held to a "less stringent standard than formal pleadings drafted by

lawyers" and are to be liberally construed. [7] The Court stated that "Plaintiffs have had multiple opportunities to cure the deficiencies in their pleadings yet continue to file claims that are both substantially deficient and amount to shotgun pleadings," referencing a prior case before Judge Altonaga and Defendants' motion to dismiss the original complaint in the instant case (ECF No. 165, p. 39). [1] However, the FAC (ECF No. 52) was Plaintiffs' *first amended complaint in this specific action before this Court*, filed as a matter of course pursuant to Fed. R. Civ. P. 15(a)(1) in response to Defendants' initial motions to dismiss the original complaint (see FAC paras. 1-2). [1] This is a critical distinction. Dismissing this first amended complaint with prejudice, without this Court having first provided specific instructions on its particular deficiencies and then finding a failure to cure, is premature and overly punitive. The "opportunities" in a separate case before a different judge, or against a now-superseded original complaint, are not equivalent to an opportunity to cure defects identified by *this Court* in the *operative* complaint. [1]

The Eleventh Circuit has emphasized that "courts must clearly identify defects and afford at least one meaningful opportunity to cure before dismissing with prejudice". [8] Indeed, "When a litigant files a shotgun pleading, is represented by counsel, and fails to request leave to amend," a district court must *sua sponte* give the litigant an opportunity to replead before dismissing. [6] This principle applies with even greater force to pro se litigants. [1] Dismissal with prejudice is proper only in "extreme circumstances when lesser sanctions are not feasible". [6] Plaintiffs have demonstrated diligence in attempting to plead their case with extensive factual detail across 121 pages (ECF No. 52) [1], and there is no indication of bad faith or willful disobedience of this Court's orders regarding the FAC. Leave to amend is considered futile only when the proposed amended complaint *still* would be subject to dismissal. [7] Plaintiffs contend their claims, if

allowed to be clarified, are not futile.

### 3. The Court's Calculation of Response Deadlines and Consideration of Pro Se Filings Contributed to Manifest Injustice.

The Court's Order (ECF No. 165, p. 5, fns. 6-7) noted that Plaintiffs' responses (ECF Nos. 137, 150) to Defendants' Motions to Dismiss (ECF Nos. 96, 100, filed April 17, 2025) were untimely. [1] This finding appears to overlook the application of Fed. R. Civ. P. 6(d) for Plaintiffs Otero and Rodriguez, who are pro se litigants residing internationally (Switzerland and Spain, respectively, FAC paras. 14-15 [1]) and for whom service by mail is indicated (see ECF No. 165, p. 41, "cc:" list). [1]   Fed. R. Civ. P. 6(d) states: "When a party may or must act within a specified time after being served and service is made under Rule 5(b)(2)(C) (mail)...3 days are added after the period would otherwise expire". The local rules provide for a 14-day response period (S.D. Fla. L.R. 7.1(c)(1)). [1] For motions served by mail on international pro se Plaintiffs Otero and Rodriguez, an additional 3 days should have been added to this 14-day period - it is to be noticed that Plaintiffs Otero and Rodriguez were not served at all under  Rule 5(b)(2)(C) (mail). The motions to dismiss were filed on April 17, 2025. [1] Fourteen days from April 17 is May 1, 2025. Adding three days for mail service under Rule 6(d) would extend this deadline to May 4, 2025. As May 4, 2025, was a Sunday, the deadline would roll to Monday, May 5, 2025, pursuant to Rule 6(a)(1)(C). Plaintiffs' responses were filed on May 6 and May 8, 2025. [1] While these dates are still after a May 5 deadline, the Court's apparent failure to account for the 3-day mail rule in its initial assessment of timeliness for these international pro se litigants is a clear error,  as the Plaintiffs were to be served by certified mail which never occurred.

In addition, Plaintiffs contend that Defendants and/or the Clerk of Court failed to properly effect

service by mail on these international pro se Plaintiffs for the motions in question. All these failures in proper service would further compound the prejudice to Plaintiffs.

The Court's decision to dismiss federal claims with prejudice, partly influenced by the perceived untimeliness of responses (ECF No. 165, p. 5) [1], without fully considering the procedural nuances applicable to international pro se litigants served by mail, constitutes clear error and contributes to manifest injustice. It is to be highlighted that the wrong counting of deadlines for Plaintiffs impregnated the entirety of the case and should not be imputed to Plaintiffs. This is particularly so given the liberal construction afforded to pro se pleadings [7] and the Eleventh Circuit's disfavor of dismissing pro se complaints with prejudice without a meaningful opportunity to be heard and to amend. [6]

## B. The Single Publication/Single Action Rule Was Misapplied to Bar Distinct Federal Claims Addressing Separate Harms. [1]

The Court found that Plaintiffs' federal claims are prohibited by the single action rule because they "are all premised on the same publications and the same allegations of a coordinated defamatory scheme by Defendants" (ECF No. 165, p. 12). [1] This application of the rule was clear error because it failed to recognize distinct, non-defamation harms alleged and mischaracterized the nature of Defendants' multi-faceted campaign. [1]

## 1. The FAC Alleges Distinct, Non-Defamation Harms Not Encompassed by the Single Publication Rule, Including Unauthorized Disclosures of Sealed Information. [1]

The single publication/single action rule, rooted in defamation law, is "designed to prevent plaintiffs from circumventing a valid defense to defamation by recasting essentially the same facts into several causes of action all meant to compensate for the same harm" – primarily

reputational injury (ECF No. 165, p. 11, citing *Gannett Co., Inc. v. Anderson*, 947 So. 2d 1, 13 (Fla. 1st DCA 2006)). [1] The Court's Order looks to the "reality, and the essence of the action" (ECF No. 165, p. 11). [1] The "essence" of Plaintiffs' FAC is far broader than just defamation. The FAC's introduction describes a "coordinated and malicious campaign involving defamation, intimidation, obstruction of justice, witness tampering, and racketeering," (FAC para. 2) [1] including "extortionate threats," (FAC para. 4) [1] "fraudulent misrepresentations," (FAC para. 5) [1] and "money laundering" (FAC para. 6). [1] Defamation was alleged as *one tool* in a larger illegal enterprise. [1]

Plaintiffs' federal claims seek redress for harms distinct from, or additional to, mere reputational injury:

- **RICO:** This claim alleges injury to "business or property" (FAC para. 131) [1] resulting from a pattern of racketeering activity that included alleged wire fraud (beyond reputational harm, e.g., defrauding donors (FAC para. 124) [1], causing economic loss to Plaintiffs through lost contracts and interference with legal claims (FAC para. 131) [1]), witness tampering and obstruction of justice (harming the integrity of judicial proceedings and Plaintiffs' ability to pursue legal claims (FAC paras. 125, 127) [1]), and Hobbs Act extortion (attempting to coerce abandonment of valuable legal claims (FAC para. 128) [1]). These predicate acts and the resulting injuries to business or property (e.g., loss of a $50,000 consultancy contract for Freites, jeopardized recovery interests for Rodriguez (FAC para. 131) [1]) are distinct from the harm of defamation.

- **42 U.S.C. § 1985(2):** This claim alleges a conspiracy to intimidate and retaliate against Plaintiffs for their participation as parties and witnesses in federal judicial proceedings (FAC para. 270). [1] The harm here is the interference with their civil rights to access the courts and participate freely

in legal proceedings, as well as the emotional distress and economic losses stemming from such intimidation (FAC paras. 275, 93, 95). [1] This is a distinct injury from damage to reputation. [1]

- **Alien Tort Statute (ATS):** This claim alleges transnational political persecution resulting in severe emotional distress, threats to personal safety, and interference with fundamental human rights that extend beyond reputational damage (FAC para. 322). [1] The FAC details threats to personal safety requiring relocation and security measures, and severe psychological trauma (FAC paras. 93, 94). [1]

Furthermore, Defendants' conduct included unauthorized disclosures of confidential information (such as sealed identities and private data) that go beyond mere defamation. [1] The FAC alleges, for instance, that Defendants publicly exposed Plaintiff Rodriguez's sealed identity (FAC para. 71, 192) [1] and Plaintiff Freites's confidential asylum status (FAC para. 193) [1] – violating court orders and Plaintiffs' privacy; and Counsel for Defendant Medina wrongly and misleadingly asserted that the involvement of Rodriguez was of public domain (and it was not at the time of the criminal disclosure by Viera-Blanco). These acts caused serious harm: they compromised Plaintiffs' safety, instilled fear, and interfered with ongoing legal proceedings (by undermining protective measures). [1] Such injuries are distinct from reputation damage. The leaking of sealed information is a separate tortious act (akin to invasion of privacy or intrusion upon seclusion) and also an affront to the court's authority that resulted in tangible harm to Plaintiffs' ability to litigate safely. [1] Florida's single action rule would not treat these confidentiality breaches as mere components of a defamation claim. [1] As noted in *Ortega Trujillo v. Banco Central del Ecuador*, 17 F. Supp. 2d 1334 (S.D. Fla. 1998), recovery may be permitted for claims based on "independent facts" different from those underpinning defamation. [1] Public disclosure of private

facts sealed by a court is an "independent fact" supporting a claim distinct from defamation, involving a different wrong (breach of confidentiality and privacy) and a different harm (exposure to danger, personal distress, and impairment of legal rights). [1]

The FAC explicitly pleads harms such as Intentional Infliction of Emotional Distress (Count V, FAC paras. 225-245) [1] and Invasion of Privacy - Public Disclosure of Private Facts (Count IV, FAC paras. 189-224). [1] These torts, while potentially involving "publications," cause injuries (severe emotional trauma, violation of privacy interests) that are legally distinct from the reputational harm addressed by defamation and the single publication rule. [10] The Court erred by not recognizing that the "essence" of the federal claims involved protecting federal court integrity (RICO, §1985(2)), redressing economic injuries from racketeering (RICO), and vindicating fundamental international norms (ATS), not solely compensating for reputational harm. [1]

## 2. Alternatively, Defendants' Sustained and Multi-Platform Campaign Constituted Multiple Distinct Publications.

Even if the federal claims were viewed as primarily arising from "publications," the single publication rule does not apply where there are separate and distinct publications. [11] The rule generally applies to a single, integrated act of mass publication, like one edition of a newspaper. [11] It does "NOT apply if the publication is not a continuous publication" or if "a separate and distinct decision was made to republish the material". [11] Factors indicating republication include modification of the material, intent to reach a new audience, or a publication on a distinct occasion. [11] The FAC alleges a campaign of numerous, distinct communications by different Defendants, using various platforms (audio messages, professionally edited videos on

YouTube/Facebook/Twitter, social media posts, email newsletters, WhatsApp messages), spanning an extended period from at least August 2023 through May/June 2024 and beyond (see generally FAC paras. 60-89). [1] For example:

- Defendant Medina's audio messages in August/September 2023 accusing Plaintiffs of betrayal (FAC para. 63). [1]

- Defendant Lainette's series of "professionally edited video segments" in March/April 2024 with specific false accusations against individual Plaintiffs (FAC para. 66). [1]

- Defendant Viera-Blanco's Twitter post on May 24, 2024, publicly exposing Plaintiff Rodriguez's sealed identity in a U.S. case (FAC para. 71). [1]

These are not merely continued disseminations of a single original publication. Each involved a "conscious and separate decision to make a further" publication, often with new content, on different platforms, by different actors, and targeting specific Plaintiffs or aspects of their lives/legal activities. [11] Viera-Blanco's tweet disclosing sealed court information, for instance, was a distinct act from Medina's earlier audio messages and caused a unique harm (breach of court-ordered privacy, witness intimidation) beyond general defamation. The Court's Order applied the single publication rule as a blanket bar without analyzing whether these specific alleged acts constituted separate publications under Florida law, which considers modification, intent, and new audience. (ECF No. 165, p. 12) [11] This failure to engage with the distinct nature of the alleged publications constitutes clear error.

### 3. Precedent Confirms that Independent Torts and Federal Statutory Violations Are Not Subsumed by the Defamation Single Action Rule. [1]

Florida law distinguishes situations where a claim rests on independent facts supporting a

different injury. [1]

- In *Fridovich v. Fridovich*, 598 So. 2d 65 (Fla. 1992), the Florida Supreme Court allowed an IIED claim to proceed despite a privilege barring a defamation claim because the IIED was based on additional wrongful conduct beyond the defamatory statements. This permits parallel recovery when injury stems from a different tortious aspect of conduct, even if defamatory words were used. [1]

- Similarly, in *Mishiyev v. Davis*, So. 3d-, 2025 WL 364361 (Fla. 2d DCA Jan. 31, 2025), an appellate court reversed dismissal of ancillary torts, holding they were independent of defamation allegations because some claims did not even involve the defamatory publication or rested on a broader course of conduct. [1]

- Cases like *Ortega Trujillo*, supra, and *Diaz v. Miami-Dade County*, 424 F. Supp. 3d 1345 (S.D. Fla. 2019), reinforce that the rule applies when claims seek the same damages from the same publication, but not if a claim is based on different facts or injury. [1] Plaintiffs' federal claims for RICO, civil rights conspiracy, etc., each require proof of elements and damages beyond reputational harm (e.g., RICO's business/property injury; § 1985(2)'s impediment to justice; § 1985(3)'s class-based animus). [1] The gravamen of these claims is not reputational injury but extortionate and obstructive acts interfering with legal processes and personal safety. [1]

**C. The Court Committed Clear Error in Its Analysis of Plaintiffs' Federal Claims.**

Beyond the threshold issues of shotgun pleading and the single publication rule, the Court's dismissal of each federal claim on its merits was based on clear errors in interpreting the FAC's allegations and applying controlling law.

**1. Count I: Violation of Racketeer Influenced and Corrupt Organizations Act (RICO), 18**

U.S.C. § 1962(c) (FAC paras. 114-139) [1]

The Court concluded that Plaintiffs failed to sufficiently allege valid predicate acts (ECF No. 165, p. 14). [1] This conclusion was erroneous.

- **a. Wire Fraud (18 U.S.C. § 1343):**

The Court found these allegations vague, lacking specificity under Fed. R. Civ. P. 9(b), and asserted that a defamation scheme is not wire fraud because reputational damage is not an injury to "business or property" (ECF No. 165, p. 15). 1

However, the FAC does allege specific instances of wire communications:

○ The May 16, 2024, tweet from the "@DouglasArrecho" account (allegedly controlled by Defendants Urgelles and Ortiz) that "falsely accused Plaintiffs of criminal misconduct and, critically, unlawfully disclosed sealed identities of Plaintiffs from the Delaware case," transmitted via Twitter's servers (FAC para. 124). [1]

○ Defendant Viera-Blanco's tweets on May 24, 2024, and June 11, 2024, publishing "detailed accusations and confidential information about Plaintiffs, which he knew to be false or unlawfully obtained" (FAC para. 124). [1]

○ Defendant Lainette's video uploads to YouTube containing alleged lies about Plaintiffs (FAC para. 124). [1] These are specific uses of interstate wires. The scheme alleged was not merely to cause reputational harm but also "to defraud the public (and various donors and supporters)" (FAC para. 124) [1] and to inflict tangible economic loss upon Plaintiffs, such as Plaintiff Freites losing a consultancy contract worth over $50,000 per year and Plaintiff Rodriguez having potential recovery interests in legal actions jeopardized (FAC para. 131). [1] These constitute injuries to "business or property" beyond mere reputational damage. The unlawful disclosure of

"sealed identities" and "confidential information" by wire was specifically intended to damage Plaintiffs' legal standing and personal safety, which directly impacts their "business or property" interests in pursuing their legal rights and maintaining their livelihoods.

○ New and additional evidence showing interstate wire transfers to finance the wrongful actions of Defendants (ordered by Defendant Medina and Defendant Goicoechea in 2024).

● **b. Witness Tampering (18 U.S.C. § 1512), Retaliation Against a Witness (§ 1513), and Obstruction of Justice (§ 1503):**

The Court characterized these allegations as primarily based on defamation (which it deemed not a predicate act), as litigation activity more properly addressed by the Delaware court, and raised comity concerns, also noting the conduct might not constitute the "long-term criminal conduct" RICO targets (ECF No. 165, pp. 16-20). 1

This misconstrues the allegations. The FAC alleges conduct that transcends mere defamation or typical litigation tactics:

○ The publicizing of Plaintiff Freites's asylum status and the branding of him as a fraud specifically to intimidate him from further participation in the Delaware case (FAC para. 125). [1]

○ The revelation of Plaintiff Rodriguez's sealed identity in the Delaware case by Viera-Blanco (FAC para. 125). [1]

○ Viera-Blanco's alleged threat "to weaponize justice by suggesting legal actions against Plaintiffs for their involvement in legal proceedings related to CITGO and PDVSA" (FAC para. 125). [1] These are specific acts of intimidation, retaliation, and attempts to corruptly influence federal proceedings, not just "bad faith litigation tactics." The alleged "extortionate threats" such as "drop your lawsuit or face consequences" (FAC para. 4, reiterated in para. 128) [1] are direct

attempts to obstruct justice and tamper with parties to a federal case. While comity is a valid consideration, federal courts retain a strong interest in protecting the integrity of their own judicial processes and litigants from such interference, particularly when, as alleged here, some of the interfering conduct (like Viera-Blanco's tweets from Florida) has a nexus to this District. The FAC alleges an ongoing enterprise (FAC para. 116) [1], suggesting a continuing threat.

- **c. Hobbs Act Extortion (18 U.S.C. § 1951):**

  The Court found no allegation that Defendants obtained property from Plaintiffs or that there was an effect on interstate commerce (ECF No. 165, pp. 20-21). [1]

  This reflects an unduly narrow reading of "property" under the Hobbs Act and the FAC's allegations.

  - "Property" under the Hobbs Act is defined broadly and includes intangible rights. [14] This encompasses "any valuable right considered as a source of wealth," such as the right to conduct business or, as relevant here, the right to pursue a valuable legal claim. [14] The FAC alleges that Plaintiff Rodriguez had "potential recovery/contingent fee interests in legal actions that have been jeopardized" by Defendants' conduct (FAC para. 131). [1] Such legal claims are a form of intangible property.

  - Defendants allegedly attempted to "obtain" the relinquishment or abandonment of these valuable legal claims (e.g., "drop your lawsuit or face consequences," FAC para. 128) [1] through wrongful threats. The "obtaining" element of extortion is satisfied when a defendant acquires the victim's property, which includes forcing the victim to give up a valuable legal right. [15]

  - The underlying Delaware litigation involves PDVSA and CITGO, entities deeply engaged in interstate and international commerce (FAC para. 2, 128). [1] Attempting to force the abandonment

of such litigation would necessarily have an effect on that commerce by potentially altering the financial liabilities or operational status of these commercial entities.

- **d. Money Laundering (18 U.S.C. §§ 1956, 1957), Tax Fraud (26 U.S.C. § 7206), and Foreign Corrupt Practices Act (FCPA) (15 U.S.C. §§ 78dd-1, et seq.):**

The Court found the money laundering allegations too vague and noted that tax fraud and FCPA violations are not listed as predicate acts under 18 U.S.C. § 1961(1) (ECF No. 165, pp. 21-24). 1 Regarding money laundering, FAC paragraph 136 alleges that Defendants "knowingly engaged in financial transactions involving proceeds illicitly obtained from Venezuelan government-owned entities," which were then "strategically concealed and integrated into Defendants' organizational accounts and operations" and used to "sustain their defamatory, retaliatory, and obstructive conduct against Plaintiffs". 1 While these allegations might benefit from greater specificity regarding the "specified unlawful activity" that generated the initial illicit proceeds, this is a deficiency potentially curable by amendment, not one warranting dismissal with prejudice.

Plaintiffs acknowledge the Court's determination that tax fraud under 26 U.S.C. § 7206 and FCPA violations are not enumerated predicate acts in 18 U.S.C. § 1961(1). These allegations were included in the FAC (paras. 135, 137) 1 to demonstrate the broader scope, nature, and alleged criminality of the enterprise's activities, rather than as standalone predicate offenses if not so defined by statute.

A crucial point regarding the RICO analysis is that the Court's piecemeal dismissal of each category of alleged predicate acts may have prematurely foreclosed a finding of a "pattern of racketeering activity." A pattern requires at least two predicate acts that are related and

demonstrate continuity. If, upon reconsideration, even one specific act within the wire fraud allegations and one specific act within the witness tampering/obstruction allegations were found to be sufficiently pleaded, these could combine to form a cognizable pattern. For instance, Defendant Viera-Blanco's specific tweet on May 24, 2024, disclosing Plaintiff Rodriguez's sealed identity (FAC paras. 71, 124, 125) [1] could plausibly constitute an act of wire fraud (using interstate wires to disseminate false/unlawfully obtained information to harm) *and* an act of witness tampering/obstruction of justice (intimidating a party and interfering with court-ordered confidentiality). The Court's approach of dismissing entire categories of predicate acts, rather than assessing the sufficiency of individual factual instances within those categories, may have led to an erroneous conclusion that no pattern could be established.

**2. Count VII: Conspiracy to Interfere with Civil Rights (42 U.S.C. § 1985)** (FAC paras. 267-287) [1]

- **a. 42 U.S.C. § 1985(2) (Conspiracy to Obstruct Justice in Federal Courts):**

The Court found these allegations conclusory, lacking identification of specific conduct by each Defendant, failing to show actual injury because the Delaware case proceeded, and raising comity concerns (ECF No. 165, pp. 26-29). 1

However, the FAC's detailed factual allegations of coordinated actions by Defendants (e.g., Viera-Blanco's disclosure of sealed information (FAC para. 71) 1, Lainette's videos discrediting litigants (FAC para. 66) 1, Medina's orchestration of the campaign (FAC paras. 17, 99) 1) provide a basis for the conspiracy element.

**i. Plaintiffs Suffered Actual Injury and Hindrance in the Delaware Proceedings. 1**

Section 1985(2) does not require the underlying proceeding be completely halted, only that the

plaintiff's ability to pursue the case was impeded or they were injured. 1 The FAC, augmented by clarifications, demonstrates Defendants' conspiracy hindered Plaintiffs' ability to prosecute the Delaware action. 1 For example, Plaintiff Freites, a key witness, curtailed his legal involvement due to fear for his safety after threats and defamatory attacks (FAC para. 83, 93, 94, 275.2). 1 This materially hampered his ability to present an effective case. 1 Defendants' actions also caused tangible delay and disruption; Viera-Blanco's leak of Rodriguez's identity (FAC para. 71) 1 forced Plaintiffs to file emergency motions in Delaware, diverting resources. 1 The standard is not total interruption, but whether the course of justice was impeded "in any way" (Rutledge v. Ariz. Bd. of Regents, 859 F.2d 732, 735 (9th Cir. 1988)). 1 The FAC alleges Defendants' conduct chilled other potential witnesses and caused Freites to pull back (FAC para. 275.1, 275.2). 1 Additionally, § 1985(2) prohibits conspiracies to injure a party for having attended or testified. Defendants' smear campaign inflicted reputational damage, emotional distress, and economic losses (FAC paras. 92-95) 1 as retaliation for Plaintiffs' participation in the Delaware case, constituting injuries to "person or property" cognizable under Haddle v. Garrison, 525 U.S. 121 (1998). 17

**ii. The § 1985(2) Claim Is Properly Before This Court – Comity Does Not Bar Relief. 1**

The Court's comity concerns are misplaced. This case does not ask this Court to review or disturb any Delaware court ruling. 1 A § 1985(2) action for witness intimidation is collateral and can be maintained in parallel. Haddle v. Garrison, supra, allowed a civil action for retaliatory firing even though the criminal trial had its own processes. 17 Heffernan v. Hunter, 189 F.3d 405 (3d Cir. 1999), entertained a § 1985(2) claim alleging intimidation during an ongoing SEC action without suggesting abstention. 1 Adjudicating this claim will not conflict with Delaware; it

addresses a separate injury (intimidation and retaliation) that the Delaware court cannot redress within its own case. 1 Comity supports allowing this claim so the Delaware court can focus on its merits while Plaintiffs seek redress here for wrongs outside that court's purview. 1

- **b. 42 U.S.C. § 1985(3) (Conspiracy to Deprive Persons of Rights or Privileges):**

The Court found that First Amendment rights are not protected against private § 1985(3) conspiracies and that "political dissidents" do not constitute a protected class for the purpose of the required class-based, invidiously discriminatory animus (ECF No. 165, pp. 29-31). 1

This analysis is overly restrictive. The conspiracy alleged in the FAC was aimed not merely at chilling speech, but at depriving Plaintiffs—as a class of "Venezuelan dissidents aligned with anti-corruption and opposition efforts" (FAC para. 272.1) 1—of their rights to access the courts, advocate for legal and political change, and enjoy personal security while doing so.

The historical context of the Ku Klux Klan Act of 1871, the progenitor of § 1985(3) 18, is crucial. The Act was specifically designed to combat politically motivated conspiracies that used violence and intimidation to suppress the rights of newly enfranchised citizens and their political allies. 20 While racial animus was a primary driver, the Act's language ("any person or class of persons") 24 is broader. Courts have recognized that § 1985(3) is not limited to racial animus and can extend to conspiracies motivated by political animus. 25 Plaintiffs allege they were targeted for "exposing corruption and pursuing legal action related to PDVSA and CITGO assets," which threatened powerful "individuals aligned with both the Nicolás Maduro regime in Venezuela and certain factions of the U.S.-recognized Venezuelan interim government" (FAC para. 61). 1 This is inherently political targeting. The FAC alleges that Defendants viewed Plaintiffs as part of a group of "unwelcome whistleblowers" or "outsiders challenging the status quo" and targeted

them with group-based enmity, labeling them "la falsa oposición" (the false opposition) (FAC para. 272.1). [1] Such targeting for political advocacy against powerful, state-linked interests aligns with the types of conspiracies the Ku Klux Klan Act was intended to reach. The Court's failure to connect the alleged targeting of "political dissidents" with the historical purpose of the Act to protect political activity and association from conspiratorial deprivation constitutes clear error.

**3. Count VIII: Neglect to Prevent Civil Rights Violations (42 U.S.C. § 1986)** (FAC paras. 288-303) [1]

The Court dismissed this claim as derivative of the § 1985 claims (ECF No. 165, p. 32). [1] If, upon reconsideration, the Court finds that Plaintiffs have stated a claim under § 1985, then this § 1986 claim should also be reinstated. The FAC alleges that Defendants had knowledge of the conspiracy (FAC para. 291) [1] and the power to prevent or aid in preventing the commission of the wrongful acts (FAC para. 293) [1], yet neglected or refused to do so (FAC para. 294). [1]

**4. Count X: Alien Tort Statute (28 U.S.C. § 1350)** (FAC paras. 317-338) [1]

The Court concluded that the ATS is solely jurisdictional, that Plaintiffs failed to plead a violation of a recognized international law norm such as "crimes against humanity," and that the Court would not recognize a new cause of action for "systematic political persecution," "corruption and obstruction," or "leaking confidential information" (ECF No. 165, pp. 32-37). [1] This analysis too narrowly construes the FAC's allegations and existing international law norms. The FAC alleges "systematic persecution based on political grounds" and "transnational political persecution and intimidation aimed at silencing Plaintiffs, who are prominent political dissidents and advocates" (FAC para. 322). [1]

Persecution, when committed as part of a widespread or systematic attack directed against any civilian population on political grounds, is a well-recognized crime against humanity under customary international law, as reflected in sources like the Rome Statute of the International Criminal Court. 26 The FAC alleges a "coordinated international campaign" (FAC para. 324) 1 orchestrated by an "association-in-fact enterprise" (FAC para. 116) 1 involving numerous individuals and organizations (FAC paras. 16-37) 1, engaging in a "coordinated and malicious campaign" (FAC para. 2) 1 over a substantial period, using multiple methods of attack (see generally FAC paras. 60-89). 1

The Court's statement that "Plaintiffs' allegations only identify themselves as targets" (ECF No. 165, p. 34) 1 and therefore cannot amount to a crime against humanity overlooks the nature of such crimes. A crime against humanity does not necessarily require thousands of victims if the attack itself is systematic and targets an identifiable civilian population (here, political dissidents) on prohibited grounds (political opinion).  The FAC alleges that the Defendants' campaign, orchestrated by the alleged enterprise, was systematic in its methods and widespread in its dissemination, aimed at silencing and punishing political dissidents. Plaintiffs are alleged to be members of this targeted group. The Court appears to have dismissed the "crimes against humanity" aspect too hastily by focusing on the number of named plaintiffs rather than the alleged systematic nature of the "attack" conducted by the alleged "enterprise." The norm against such persecution is specific, universal, and obligatory.  The various acts alleged (defamation, intimidation, obstruction, privacy invasion) were the alleged methods used to carry out this systematic political persecution.

**D. Manifest Injustice Results from Dismissal With Prejudice Without a Final Meaningful**

**Opportunity to Cure Identifiable Deficiencies, Particularly Given the Contentious Procedural Background.**

Given Plaintiffs' pro se status at the time of filing the FAC (ECF No. 52) [1], the inherent complexity of the federal claims asserted, the Court's potential miscalculation of response deadlines for pro se Plaintiffs, and the fact that the FAC was Plaintiffs' first attempt to amend their pleadings in *this* action before *this Court*, the dismissal of all federal claims with prejudice constitutes a manifest injustice. [1] This injustice is compounded by the contentious procedural background of this case, which includes pending motions to disqualify Defendants' counsel [1] and serious allegations of misconduct by opposing counsel. Plaintiffs' were forced to litigate against Counsel that has privileged information on Plaintiffs' case as detailed in the pending motion for disqualification of Diaz Reus. In addition and for instance, Plaintiffs were forced to file a Motion to Strike Defendant Medina's Motion to Stay Discovery (DE 107) due to an allegedly false Certificate of Conferral by Medina's counsel, which misrepresented the scope of conferral in violation of Local Rule 7.1(a)(3) (DI 110). [1] Plaintiffs have also served a Rule 11 Safe Harbor Notice upon counsel for Defendant Medina regarding a sworn affidavit filed by attorney Andrés Gazso, which Plaintiffs assert contains material falsehoods contradicted by compelling evidence (Rule 11 Safe Harbor Notice, June 6, 2025). [1] Furthermore, Plaintiffs recently brought to the Court's attention that another of Defendant Medina's attorneys, Gabor Gazso, served as an in-chambers intern to the presiding Judge in this matter from January 2023 to April 2023, a fact relevant to pending disqualification motions and the overall integrity of the proceedings (Notice to the Court, June 8, 2025, regarding DE 172). [1] These circumstances illustrate the challenging environment in which the pro se Plaintiffs were operating. The Court's Order itself noted that

Plaintiffs had been informed of pleading defects by Judge Altonaga in a *related* case and by Defendants prior to the FAC (ECF No. 165, p. 39) [1], but this does not equate to *this Court* providing a specific opportunity to cure defects in the *operative FAC in this case*. Dismissing with prejudice under these combined circumstances—pro se status, first amended complaint before this Court, complex claims, potential procedural errors by the Court, and serious unresolved questions about opposing counsel's conduct—is an unduly harsh sanction that results in manifest injustice.  Plaintiffs have demonstrated considerable diligence in attempting to articulate their claims with extensive factual detail (see FAC, generally). [1] If, after considering the arguments herein, the Court still finds deficiencies in the FAC, the appropriate remedy is not a dismissal with prejudice that forever bars Plaintiffs from seeking redress for the alleged wrongs. Instead, justice requires that Plaintiffs be granted leave to file a Second Amended Complaint, with specific guidance from the Court as to the precise deficiencies that require curing. Dismissal with prejudice is a sanction of last resort and should not be imposed when pro se litigants have made a substantial, good-faith effort to state their claims and where amendment is not clearly futile. [6]

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully submit that the Court committed clear errors of law and fact in its Order (ECF No. 165) dismissing the First Amended Complaint. The Court erred in its application of the standards for shotgun pleadings, its calculation of response deadlines for international pro se litigants, its overly broad application of the single publication/single action rule, and its substantive analysis of Plaintiffs' federal claims under RICO, 42 U.S.C. § 1985, 42 U.S.C. § 1986, and the Alien Tort Statute. These errors, particularly

the dismissal of federal claims with prejudice, result in manifest injustice to the Plaintiffs.

Therefore, Plaintiffs respectfully request that this Honorable Court:

1. **VACATE** its Order Granting Motion to Dismiss (ECF No. 165); and

2. **REINSTATE** Plaintiffs' First Amended Complaint (ECF No. 52) in its entirety; or,

3. **IN THE ALTERNATIVE**, should the Court find that deficiencies remain, **MODIFY** the Order to dismiss the federal claims **WITHOUT PREJUDICE** and grant Plaintiffs **LEAVE TO FILE A SECOND AMENDED COMPLAINT** to address any specific deficiencies the Court may identify, providing clear guidance as to those deficiencies; and

4. Grant such other and further relief as the Court deems just and proper.

Dated: June 7th, 2025

Respectfully submitted,

| Ivan R. Freites C., Pro Se | Jorge Alejandro Rodriguez | Miguel E. Otero., Pro Se |
|---|---|---|
| ℅ Villasana | Eichholzstrasse 2 | ℅ Rodriguez |
| 4370 NW 107 Ave, Apt. 102 | 6312 - Steinhausen | Eichholzstrasse 2 |
| Doral, FL 33178 | Switzerland | 6312 - Steinhausen |
| | | Switzerland |

**Attachments:** Attachment A - Works cited.

## Attachment A

**Works cited**

1. UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA Case No. 22-cv-21601-BLOOM/Otazo-Reyes GARFIELD KEANE, Plaintiff, v. H - GovInfo, accessed June 7, 2025, https://www.govinfo.gov/content/pkg/USCOURTS-flsd-1_22-cv-21601/pdf/USCOURTS-flsd-1_22-cv-21601-0.pdf

2. Page -1- Motions for reconsideration under Rule 59 of the Federal Rules of Civil Procedure, are only granted in rare circumstanc - GovInfo, accessed June 7, 2025, https://www.govinfo.gov/content/pkg/USCOURTS-flsd-9_05-cv-80765/pdf/USCOURTS-flsd-9_05-cv-80765-2.pdf

3. Surviving Dismissal, accessed June 7, 2025, https://nysba.org/Sections/International/Events/2019/Florida_Chapter_Feb_13/coursebook/Hardmon_--_Outline_-_Surviving_Dismissal.html

4. shotgun pleading - Dismiss, accessed June 7, 2025, https://ecf.flmd.uscourts.gov/cgi-bin/show_public_doc?2024-00581-13-2-cv

5. USCA11 Case: 23-12285 Document: 30-1 Date Filed: 05/30/2025 Page: 1 of 12 - United States Court of Appeals, accessed June 7, 2025, https://media.ca11.uscourts.gov/opinions/unpub/files/202312285.pdf

6. Order Dismissing Case without prejudice and with leave to amend and Denying 4 Plaintiff's Motion for Referral to Volunteer, accessed June 7, 2025,

https://cases.justia.com/federal/district-courts/florida/flsdce/1:2024cv24260/678009/7/0.pdf

7. Eleventh Circuit Defines Standards for Dismissing Shotgun Pleadings and Tolling State Law Claims - CaseMine, accessed June 7, 2025, https://www.casemine.com/commentary/us/eleventh-circuit-defines-standards-for-dismissing-shotgun-pleadings-and-tolling-state-law-claims/view

8. United States Court of Appeals, accessed June 7, 2025, https://media.ca11.uscourts.gov/opinions/unpub/files/202410435.pdf

9. HOUSE OF REPRESENTATIVES STAFF ANALYSIS BILL #: CS/CS/HB 757 Defamation, False Light, and Unauthorized Publication of Name - Florida Senate, accessed June 7, 2025, https://www.flsenate.gov/Session/Bill/2024/757/Analyses/h0757e.JDC.PDF

10. Florida's Single Publication Rule (and Defamation Claims) - ProveMyFloridaCase.com, accessed June 7, 2025, https://provemyfloridacase.com/floridas-single-publication-rule-and-defamation-claims/

11. Defamation Attorney In Miami - Romano Law, accessed June 7, 2025, https://www.romanolaw.com/disputes/defamation-in-miami/

12. Images and the Right of Publicity - The California Supreme - Sheppard Mullin, accessed June 7, 2025, https://www.sheppardmullin.com/media/article/738_An%20Advertising%20Face-Off%20.pdf

13. 2403. Hobbs Act -- Extortion By Force, Violence, Or Fear - Department of Justice,

accessed June 7, 2025,

https://www.justice.gov/archives/jm/criminal-resource-manual-2403-hobbs-act-extortion-f

orce-violence-or-fear

14. Chapter 17.00 Hobbs Act Offenses Introduction (current through Jan. 1, 2024) The pattern

instructions cover the Hobbs Act offens - Sixth Circuit Court of Appeals, accessed June 7,

2025,

https://www.ca6.uscourts.gov/sites/ca6/files/documents/pattern_jury/pdf/Chapter%2017.pd

f

15. Hobbs Act Extortion and Robbery (18 U.S.C. § 1951) - Third Circuit, accessed June 7,

2025,

https://www.ca3.uscourts.gov/sites/ca3/files/2023%20Chap%206%20HobbsAct%20revisi

ons%20final.pdf

16. Office of the Solicitor General | Haddle v. Garrison - Amicus (Merits) - Department of

Justice, accessed June 7, 2025,

https://www.justice.gov/osg/brief/haddle-v-garrison-amicus-merits

17. Civil Rights Conspiracies: Section 1985(3) after Carpenters v. Scott - University of

Missouri School of Law, accessed June 7, 2025,

https://scholarship.law.missouri.edu/cgi/viewcontent.cgi?article=2805&context=mlr

18. The Long Arm of Bostock v. Clayton County: Opening 42 U.S.C. § 1985(3) to Claims of

Anti-LGBT Discrimination - Chicago Unbound, accessed June 7, 2025,

https://chicagounbound.uchicago.edu/cgi/viewcontent.cgi?article=6346&context=uclrev

19. Remedying Intimidating Voter Disinformation Through § 1985(3)'s Support-or-Advocacy

Clauses - Georgetown Law, accessed June 7, 2025,

https://www.law.georgetown.edu/georgetown-law-journal/wp-content/uploads/sites/26/202

1/11/Weingartner_Remedying-Voter-Disinformation.pdf

20. The Klan Act: Legal Liability for Political Violence | Lawfare, accessed June 7, 2025,

https://www.lawfaremedia.org/article/the-klan-act--legal-liability-for-political-violence

21. Ku Klux Klan - KKK - Free Speech Center, accessed June 7, 2025,

https://firstamendment.mtsu.edu/article/ku-klux-klan/

22. What is Persecution? - Center for Constitutional Rights, accessed June 7, 2025,

https://ccrjustice.org/sites/default/files/attach/2015/11/Smug_infosheets_3.pdf

23. Supreme Court of the United States, accessed June 7, 2025,

https://www.supremecourt.gov/DocketPDF/18/18-1034/87668/20190215090925446_0000

0041.pdf

24. 42 U.S. Code § 1985 - Conspiracy to interfere with civil rights - Law.Cornell.Edu,

accessed June 7, 2025, https://www.law.cornell.edu/uscode/text/42/1985

25. Alien Tort Statute - Wikipedia, accessed June 7, 2025,

https://en.wikipedia.org/wiki/Alien_Tort_Statute

26. Alien Tort Claims Act (ATCA) - ECCHR, accessed June 7, 2025,

https://www.ecchr.eu/en/glossary/alien-tort-claims-act-atca/

27. Crimes against humanity - Wikipedia, accessed June 7, 2025,

https://en.wikipedia.org/wiki/Crimes_against_humanity

28. jnslp.com, accessed June 7, 2025,

https://jnslp.com/wp-content/uploads/2010/08/04_pocar-finalpageproofs-12-17-08changes

JCS012109.pdf

29. Persecution in International Criminal Law and International Refugee Law - ZIS-Online, accessed June 7, 2025, https://www.zis-online.com/dat/artikel/2020_6_1372.pdf

## Certificate of Service

I hereby certify that on June    , 2025, a true and correct copy of the foregoing **Document** was submitted to the Clerk of the Court, to be docketed and served via the Court's CM/ECF electronic filing system (or, if CM/ECF was unavailable to pro se parties, via electronic mail) upon the parties.

**Respectfully submitted,**

*Dated:* $O6$ *, 2025.*

| |
|---|
| Ivan R. Freites C., Pro Se |
| % Villasana |
| 4370 NW 107 Ave, Apt. 102 |
| Doral, FL 33178 |