## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-CV-20465-BLOOM/Elfenbein

**IVAN R. FREITES C.**, *et al.*,

      Plaintiffs,

v.

**HORACIO MEDINA**, *et al.*,

      Defendants.

_____/

## REPORT AND RECOMMENDATIONS ON
## PLAINTIFFS' RULE 60(b) MOTION AND MOTION FOR INJUNCTION

**THIS CAUSE** is before the Court on two motions filed by *Pro se* Plaintiffs Ivan R. Freites C. ("Freites"), Miguel Enrique Otero C. ("Otero"), and Jorge Alejandro Rodriguez M. ("Rodriguez"): (1) Expedited Motion for Evidentiary Hearing and Relief from Final Judgment Pursuant to Federal Rule of Civil Procedure 60(b)(2)–(3) ("Rule 60(b) Motion"), ECF No. [218]; and (2) Motion for Preliminary Injunctive Relief to Enjoin Improper Coordination Between Defense Counsel ("Motion for Injunction"), ECF No. [269] (collectively, the "Motions"). The Honorable Beth Bloom referred the motions to me "for a Report and Recommendations." *See* ECF No. [226]; ECF No. [271]. For the reasons explained below, I respectfully **RECOMMEND** that both Motions be **DENIED**.

### I.    RELEVANT BACKGROUND

#### A.  The Amended Complaint

According to their Amended Complaint, Plaintiffs are "known Venezuelan dissidents in exile" who are "actively involved in significant legal proceedings related to" Venezuela's "state-owned oil company" and "its U.S. subsidiary." ECF No. [52] at 15. Defendants are a group of

twenty — ten individuals, four for-profit companies, and six non-profit corporations, *see* ECF No. [52] at 21–30 — that Plaintiffs alleged coordinated a "malicious campaign involving defamation, intimidation, obstruction of justice, witness tampering, and racketeering against" them, *see* ECF No. [52] at 15.  Four of those Defendants are relevant here: Horacio Medina, who Plaintiffs alleged is a former official of Venezuela Petróleos de Venezuela, S.A. ("PDVSA") "and prominent activist who initiated, financed, and directed" an "ongoing defamatory campaign against" them; Thaelman Urgelles, who Plaintiffs alleged is a "media personality who amplified defamatory narratives" about Plaintiffs through "social media and possible radio/TV programs;" Yon Goicoechea, who Plaintiffs alleged is "a Venezuelan attorney and political figure who helped finance and strategize the smear campaign" against them; and Jose Carrasquero, who Plaintiffs alleged "actively coordinated and propagated the defamatory campaign" through "social media" and "served as a central hub for disseminating false information, ensuring a continuous flow of malicious content." *See* ECF No. [52] at 19–25.

In their Amended Complaint, Plaintiffs brought a total of ten claims against Defendants, six claims under state law and four claims under federal law.  *See* ECF No. [52] at 55–119.  Among the state law claims was a claim for defamation, in which Plaintiffs asserted that Defendants "made and published numerous false and defamatory statements about" them, "including online postings," "video subtitles," and "spoken statements in videos, podcasts, and radio broadcasts." *See* ECF No. [52] at 70–79.  According to Plaintiffs, these false statements included accusations that Plaintiffs are "fraudsters, thugs, false opposition, traitors," and "figures engaged in a conspiracy to harm" PDVSA "for personal gain," and that Plaintiffs have "participated in criminal, corrupt, or treasonous activities."  *See* ECF No. [52] at 71.

Among the federal law claims was a claim under the Racketeer Influenced and Corrupt

Organizations Act ("RICO"), 18 U.S.C. § 1962(c), in which Plaintiffs asserted that Defendants acted "in concert" with the "common purpose of defaming, intimidating, and silencing Plaintiffs to obstruct justice and retaliate against Plaintiffs' legal activities."  *See* ECF No. [52] at 55.  In support of their RICO claim, Plaintiffs alleged Defendants committed seven predicate acts, including witness tampering under 18 U.S.C. § 1512; obstruction of justice under 18 U.S.C. § 1503; and money laundering under 18 U.S.C. §§ 1956–57.  *See* ECF No. [52] at 57–66.

### B.  Defendants' Motions to Dismiss are Granted

Fourteen Defendants moved to dismiss the Amended Complaint.  *See* ECF No. [96]; ECF No. [100].  Judge Bloom granted the motions, dismissing Plaintiffs' federal claims with prejudice and their state law claims without prejudice.  *See* ECF No. [165].  Judge Bloom held that dismissal was warranted for three reasons.  First, she "agree[d] with Defendants that Plaintiffs' Amended Complaint constitutes a classic shotgun pleading," which on its own "is sufficient to warrant dismissal."  *See* ECF No. [165] at 8–10.  That conclusion was based, in part, on Plaintiffs' failure "to clearly identify which defendant was responsible for the wrongful conduct in each count."  *See* ECF No. [165] at 9.

Second, Judge Bloom found that "Plaintiffs' federal claims are prohibited by the single action rule," which applies when parties assert multiple causes of action arising from the same publication or publications upon which their defamation claim is based.  *See* ECF No. [165] at 10–13.  Judge Bloom explained that "Plaintiffs have attempted to repackage their defamation allegations into additional federal causes of actions to drastically broaden the sweep of the instant suit and litigate their claims in federal court" without "distinguish[ing] their defamation allegations from those supporting their federal claims."  *See* ECF No. [165] at 10–13.  In particular, Plaintiffs' defamation claim was based on the allegation that Defendants "posted numerous allegedly false

allegations in connection with Plaintiffs' involvement in" a separate federal lawsuit in Delaware, and their "federal claims in this case are all premised on the same publications and the same allegations of a coordinated defamatory scheme by Defendants." *See* ECF No. [165] at 12.

Finally, Judge Bloom concluded that "even if Plaintiffs' federal claims relied on facts and publications beyond those outlined in Plaintiffs' defamation claim, Plaintiffs still fail to adequately state a federal claim upon which relief may be granted." *See* ECF No. [165] at 13. As to Plaintiffs' RICO claim, Judge Bloom found that Plaintiffs "failed to sufficiently allege valid predicate acts as required to establish racketeering activity under § 1962(c)." *See* ECF No. [165] at 14. In particular, Plaintiffs had "not plausibly established predicate acts of witness tampering or obstruction of justice" because they based those predicates on Defendants' alleged defamatory campaign, which was designed to "stop them from testifying or punish them for testifying in the Delaware litigation." *See* ECF No. [165] at 17–18. But "defamation is not a predicate act under RICO, and courts routinely reject a party's attempt to shoehorn defamation claims and other claims of reputational harm into a RICO framework." *See* ECF No. [165] at 18. Similarly, "Plaintiffs' money laundering allegations" were "too vague to constitute predicate acts" because they failed "to offer any information about the alleged transaction or how they worked." *See* ECF No. [165] at 23.

Because she dismissed all of Plaintiffs' federal claims, Judge Bloom declined to exercise supplemental jurisdiction over their state law claims and dismissed them without prejudice "to allow Plaintiffs to assert any valid claims in state court." *See* ECF No. [165] at 37–40. Judge Bloom dismissed Plaintiffs' federal law claims with prejudice, however, because they "have had multiple opportunities" — both in this case and in an earlier, substantially similar case before Chief Judge Cecilia M. Altonaga — "to cure the deficiencies in their pleadings yet continue to file claims

that are both substantially deficient and amount to shotgun pleadings." *See* ECF No. [165] at 39. Plaintiffs appealed the dismissal of the Amended Complaint to the Eleventh Circuit, *see* ECF No. [180], and the appeal remains pending, *see* ECF No. [238].

In a typical case, once an appeal is docketed, the parties shift their focus to litigating in the appellate court and no longer file motions for relief from this Court. But this is not a typical case. Since filing the Notice of Appeal in June 2025, Plaintiffs have filed dozens of documents, including many motions, with this Court. This Report and Recommendation ("R&R") addresses two of those post-judgment motions.[1]

### C.  Plaintiffs' Rule 60(b) Motion

In the Rule 60(b) Motion, Plaintiffs ask the Court to vacate its order dismissing their claims because it was, they argue, "the result of a factual record that has now been proven to be naïve, rendered incomplete and misleading by Defendants' misconduct." *See* ECF No. [218] at 13. Specifically, they contend Defendants "denied the existence of a coordinated enterprise while actively funding and directing it, thereby lying to this Court." *See* ECF No. [218] at 1. They argue they have discovered "new evidence, comprising official announcements and public admissions," that "amounts to a post-judgment confession of the very malicious enterprise" Defendants "successfully convinced this Court was a baseless allegation." *See* ECF No. [218] at 1.

That new evidence includes: (1) the announcement and launch of a documentary film that PDVSA sponsored and Defendant Urgelles produced/directed, which included Defendant Medina as a speaker at the launch event; (2) a promotional interview in which Defendant Urgelles "admitted" that "discussions to finance" the film "were underway as early as January 2024;" and

---

[1] The Court previously ruled on Plaintiffs' Expedited Motion to Conduct Limited Discovery, ECF No. [187], *see* ECF No. [305], and will address the other six post-judgment motions Judge Bloom referred, *see* ECF No. [172]; ECF No. [225]; ECF No. [227]; ECF No. [233]; ECF No. [235]; ECF No. [301], in due course.

(3) public interviews related to the film in which Defendant Goicoechea accused Plaintiff Otero of treason, Plaintiff Rodriguez of being a "corrupt insider," and all three Plaintiffs of blackmail and Defendant Urgelles accused Plaintiff Freites of being a criminal and a strikebreaker and all three Plaintiffs of being "judicial terrorists." *See* ECF No. [218] at 2–3, 7.  Plaintiffs argue the new evidence "provides a point-by-point cure for the specific pleading deficiencies that led to the dismissal with prejudice" — that is, the shotgun character of the Amended Complaint — because it "transforms allegations the Court found 'vague' and 'conclusory' into concrete, provable facts supported by Defendants' own words." *See* ECF No. [218] at 3–4, 12. It also "cures the deficiencies in Plaintiffs' RICO claim" because it "establishes plausible allegations of" witness tampering, obstruction of justice, and money laundering.  *See* ECF No. [218] at 10–12.  Finally, it shows that the dismissal "was procured by Defendants' deliberate concealment and misconduct," which prevented Plaintiffs "from fully and fairly presenting their claims."  *See* ECF No. [218] at 9.

In his Response, Defendant Medina contends the Rule 60(b) Motion "should be denied for two fundamental reasons": (1) the purported new evidence is simply "additional examples of the same type of conduct this Court already found legally insufficient to support the federal claims;" and (2) "Plaintiffs rely on post-judgment media statements and a documentary film as purported evidence of pre-judgment fraud," which are protected speech under the First Amendment and do "not establish by clear and convincing evidence any fraud, misrepresentations, or misconduct during the course of litigation."  *See* ECF No. [221] at 2–3, 11.  For those reasons, Defendant Medina argues an evidentiary hearing is not necessary but that sanctions — including the entry of an injunction to prevent "further filings without leave of the Court" — against Plaintiffs are warranted to stop their "stream of improper and meritless filings."  *See* ECF No. [221] at 12–14.

A group of twelve other Defendants, including Carrasquero and Urgelles, make the same arguments and request the same sanctions as does Defendant Medina. *See generally* ECF No. [222].

In their Reply, Plaintiffs argue the documentary film was meant to "mask the financing" of the "harmful campaign" against them, the promotion of the film revealed that its "clear underlying purpose" was to "attack" them, and the concealment of the film and its financing prevented them from fully and fairly litigating their case because it withheld "material evidence that directly corroborates" their "central theory." *See* ECF No. [228] at 1–5; ECF No. [229]. They also reiterate that the new evidence cures the Amended Complaint's pleading deficiencies because it specifically identifies which Defendants took what actions, gives concrete examples of "intimidation" and "corrupt persuasion" to support witness tampering, and identifies "two specific funding streams" showing the film "was made with the express intent to promote the witness tampering campaign," which supports money laundering. *See* ECF No. [228] at 5–8. Plaintiffs argue that an evidentiary hearing is necessary because whether Medina authorized the film's financing is a "central factual dispute" the Court must resolve, Defendants' protected speech argument is a "misdirection," and sanctions against them are "baseless" because their motion is meritorious. *See* ECF No. [228] at 8–9.

### D.  Plaintiffs' Motion for Injunction

In the Motion for Injunction, Plaintiffs "seek an order enjoining the law firms" representing Defendants — Diaz Reus LLP (formerly Diaz, Reus & Targ, LLP) ("DRT") and Sardi Law PLLC — "from coordinating their defense." *See* ECF No. [269] at 1–2. In support, they argue there has been "a documented pattern of improper coordination between defense counsel, rooted in" DRT's "severe and disqualifying conflict of interest," that is "a direct continuation of the underlying

harassment campaign" and "a unified front of intimidation" that "has already caused tangible, life-threatening physical harm to a Plaintiff." *See* ECF No. [269] at 2–3. They assert that by "coordinating strategies, sharing information, and speaking with one voice, Sardi Law becomes a participant in and beneficiary of DRT's ethical breach," infecting "the entire defense, creating an unfair informational advantage, and continuing the pattern of a unified enterprise acting against Plaintiffs." *See* ECF No. [269] at 6–8. And Plaintiffs argue that this unfair advantage is irreparably harming them (and the Court), the balance of harms favors them because they face "a tangible risk to life and health and the denial of a fair legal process," and an injunction would benefit the public because it "has a profound interest in the ethical conduct of attorneys and the integrity of the federal courts." *See* ECF No. [269] at 7–9.

In their Response, Defendants argue the Court should deny the Motion for Injunction because it violates this District's Local Rules by failing to identify any legal authority supporting its arguments. *See* ECF No. [272] at 5–6; ECF No. [274]. They assert Plaintiffs do not have a substantial likelihood of success on the merits because there is "no law forbidding counsel" from coordinating, and "it is normal practice for defense counsel to cooperate when they share a joint interest in defending against a plaintiff's claims." *See* ECF No. [272] at 7–8. They argue Plaintiffs will not suffer irreparable injury because "they have not shown that DRT used any confidential information to obtain the dismissal of this case" or that "there is a true threat to any Plaintiff's health, much less any harm that is actual and imminent" and because "the Court has previously rejected Plaintiffs' claims of 'harm.'" *See* ECF No. [272] at 8–9. Defendants argue that the balance of harms weighs against Plaintiffs because they have not shown how defense counsel's actions "risks" their "lives, their health, or the fairness of the legal process" but that the public will be harmed by an injunction because it "will open the door to other vexatious litigants abusing the

Court's power in an attempt to handcuff defense counsel and prevent them from pursuing legal efforts that are lawful." *See* ECF No. [272] at 9–10.  Defendants once again request sanctions, including a pre-filing injunction, against Plaintiffs.  *See* ECF No. [272] at 12–14; ECF No. [274]. Plaintiffs did not file a Reply, and the Motion for Injunction is now ripe for review.

## II.   LEGAL STANDARDS

### A.  District Court's Jurisdiction While an Appeal is Pending

"As a general matter, the filing of a notice of appeal deprives the district court of jurisdiction over all issues involved in the appeal."  *Mahone v. Ray*, 326 F.3d 1176, 1179 (11th Cir. 2003); *see also Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58, (1982) ("The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal.").  "However, it does not prevent the district court from taking action in furtherance of the appeal."  *Mahone*, 326 F.3d at 1179 (quotation marks omitted).  "Nor does it prevent the court from entertaining motions on matters collateral to those at issue on appeal."  *Id.*

In the related context of a Rule 41(a)(1) voluntary dismissal, which also deprives the district court of jurisdiction over a case, the Eleventh Circuit has explained that, even after they no longer have jurisdiction, "district courts retain jurisdiction to consider at least five different types of collateral issues: costs, fees, contempt sanctions, Rule 11 sanctions, and motions to confirm arbitral awards."  *Absolute Activist Value Master Fund Ltd. v. Devine*, 998 F.3d 1258, 1266 (11th Cir. 2021); *cf. Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 397–98 (1990).  As the phrase "at least" makes clear, that list is not intended to be exhaustive. Indeed, the Eleventh Circuit has recognized "the district court maintains jurisdiction" over other kinds of issues as well, including whether "to order stays," to "modify injunctive relief," *see Doe, 1-13 ex rel. Doe Sr. 1-13 v. Bush*,

261 F.3d 1037, 1064–65 (11th Cir. 2001), or "to enjoin arbitration," *see Weaver v. Fla. Power & Light Co.*, 172 F.3d 771, 773 (11th Cir. 1999). The important consideration when deciding if a matter is collateral is whether it raises questions that are "separate and distinct from the issues raised by the direct appeal," *see id.*, such that resolving those questions does "not affect[] the questions presented on appeal," *see Bush*, 261 F.3d at 1064.

Similarly, the Eleventh Circuit has "held that district courts retain jurisdiction after the filing of a notice of appeal to entertain and *deny* a Rule 60(b) motion," but they "do not possess jurisdiction to *grant* a Rule 60(b) motion." *Mahone*, 326 F.3d at 1180 (emphasis added). The same principle has been enshrined in the Federal Rules of Civil Procedure, which provide: "If a timely motion is made for relief that the court lacks authority to grant because of an appeal that has been docketed and is pending, the court may: (1) defer considering the motion; (2) deny the motion; or (3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue." Fed. R. Civ. P. 62.1(a). "The Court also has the jurisdiction, authority and obligation to preserve the status quo during the pendency of an appeal." *Int'l Schs. Servs., Inc. v. AAUG Ins. Co.*, No. 10-CV-62115, 2010 WL 9004379, at *2 (S.D. Fla. Dec. 30, 2010); *see also Pettway v. Am. Cast Iron Pipe Co.*, 411 F.2d 998, 1003 (5th Cir. 1969) (noting that Rule 62 "is expressive of the power in the courts to preserve the status quo pending appeal").

**B. Rule 60(b)**

"On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for [six] reasons." *See* Fed. R. Civ. P. 60(b). Two of those reasons are relevant here: "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)" and "fraud (whether

previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party."
*See* Fed. R. Civ. P. 60(b)(2)–(3).  "A motion under Rule 60(b) must be made within a reasonable time."  Fed. R. Civ. P. 60(c)(1).  When the Rule 60(b) motion is based on newly discovered evidence or fraud, the party bringing it must do so "no more than a year after the entry of the judgment or order or the date of the proceeding."  *See* Fed. R. Civ. P. 60(c)(1).  "A claim for relief under rule 60(b)(2) is separate and distinct from a claim for relief under rule 60(b)(3)."  *Vasconcelo v. Miami Auto Max, Inc.*, 851 F. App'x 979, 982 (11th Cir. 2021).  But under either subsection, "nothing in [R]ule 60(b) or [this Circuit's] case law interpreting it" requires "the district court to hold an evidentiary hearing before making its findings."  *See id.* at 985; *Jenkins v. Anton*, 922 F.3d 1257, 1270–71 (11th Cir. 2019).

"For the court to grant relief based upon newly discovered evidence under Rule 60(b)(2), a movant must meet a five-part test: (1) the evidence must be newly discovered since the trial; (2) due diligence on the part of the movant to discover the new evidence must be shown; (3) the evidence must not be merely cumulative or impeaching; (4) the evidence must be material; and (5) the evidence must be such that a new trial would probably produce a new result."  *Waddell v. Hendry Cnty. Sheriff's Off.*, 329 F.3d 1300, 1309 (11th Cir. 2003).  "A motion for a new trial under Rule 60(b)(2) is an extraordinary motion and the requirements of the rule must be strictly met."  *Toole v. Baxter Healthcare Corp.*, 235 F.3d 1307, 1316 (11th Cir. 2000).  "[P]arties who request relief under Rule 60(b)(2) are not barred from it simply because they rely on issues that had been litigated earlier. . . . What matters is whether the movant presents new evidence to support the motion, in addition to satisfying the other criteria of Rule 60(b)(2)."  *In re Glob. Energies, LLC*, 763 F.3d 1341, 1347–48 (11th Cir. 2014).

"To obtain relief from a final judgment based upon fraud under Rule 60(b)(3), the moving

party must prove by clear and convincing evidence that the adverse party obtained the verdict

through fraud, misrepresentations, or other misconduct."[2]  *Waddell*, 329 F.3d at 1309.  "The

moving party must also demonstrate that the conduct prevented them from fully presenting his

case."  *Id.*; *see also Rozier*, 573 F.2d at 1339 ("The conduct complained of must be such as

prevented the losing party from fully and fairly presenting his case or defense.").  "Although Rule

60(b)(3) applies to misconduct in withholding information called for by discovery, it does not

require that the information withheld be of such nature as to alter the result in the case."  *Rozier*,

573 F.2d at 1339 (citation omitted).  That is because Rule 60(b)(3) "is aimed at judgments which

were unfairly obtained, not at those which are factually incorrect."[3]  *Id.* (footnote omitted).  "The

granting of Rule 60(b)(3) relief rests within the sound discretion of the trial court and should be

liberally construed."  *Scutieri v. Paige*, 808 F.2d 785, 794 (11th Cir. 1987); *see also Rozier*, 573

---

[2] A Rule 60(b)(3) motion is not the only avenue through which a party can seek to "set aside a judgment for fraud on the court."  *See* Fed. R. Civ. P. 60(d)(3) (explaining that the "rule does not limit a court's power to . . . set aside a judgment for fraud on the court.").  Indeed, Rule 60(d) contains a "savings clause" that allows parties to ask the court to set aside a fraudulent judgment even after the one-year deadline to bring a Rule 60(b)(3) motion has passed.  *See Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1337–38 (5th Cir. 1978). "The distinction between a 60(b)(3) motion and a motion alleging fraud upon the court is rooted in policies basic to the law of judgments," specifically "the belief that in most instances society is best served by putting an end to litigation after a case has been tried and judgment entered."  *See id.* at 1338 (quoting *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 244 (1944)).  But while courts can set aside judgments based on "after-discovered fraud . . . regardless of the term of their entry," *see Hazel-Atlas*, 322 U.S. at 244, parties invoking the savings clause must show that relief is warranted using the "more exacting 'fraud upon the court' standard," *Rozier*, 573 F.2d at 1337; *see also Monarch Air Grp., LLC v. JPMorgan Chase Bank, N.A.* (*Monarch II*), No. 21-CV-62429, 2025 WL 2684866, at *2 (S.D. Fla. Sept. 10, 2025) ("Because Plaintiffs move for relief from judgment over one year beyond the entry of judgment in this case under Rule 60(d)(3), Plaintiffs must show fraud on the court, rather than the lower showing required for relief under Rule 60(b)(3)." (quotation marks omitted)).  "Generally speaking, only the most egregious misconduct, such as bribery of a judge or members of a jury, or the fabrication of evidence by a party in which the attorney is implicated, will constitute a fraud on the court," whereas "[l]ess egregious misconduct, such as nondisclosure to the court of facts allegedly pertinent to the matter before it, will not ordinarily rise to the level of fraud on the court."  *See Rozier*, 573 F.2d at 1338 (quoting *Hazel-Atlas*, 322 U.S. at 238, 244).  On the other hand, under Rule 60(b)(3), "the district courts have greater discretion to balance the policy of finality of judgments against the other salutary policies embodied in the alternate grounds for relief provided in" Rule 60(b)(1)–(3).  *See id.* at 1339.

[3] "Factually incorrect judgments are the subject of Rule 60(b)(2)." *Rozier*, 573 F.2d at 1339 n.4.

F.2d at 1346 ("Although the granting of such relief is within the discretion of the trial court, the rule is remedial and should be liberally construed." (citation and quotation marks omitted)).

### C. Preliminary Injunctions

The Federal Rules of Civil Procedure authorize courts to issue preliminary injunctions. *See* Fed. R. Civ. P. 65(a); *Schiavo ex. rel Schindler v. Schiavo*, 403 F.3d 1223, 1229 (11th Cir. 2005) (recognizing Rule 65 "provides for temporary restraining orders and preliminary injunctions"). To obtain a preliminary injunction, a party must demonstrate "(1) [there is] a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest." *Schiavo*, 403 F.3d at 1225–26. A "preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly carries the burden of persuasion as to the four prerequisites." *United States v. Jefferson Cnty.*, 720 F.2d 1511, 1519 (11th Cir. 1983) (quotation marks omitted).

A traditional injunction, which is the kind Rule 65 authorizes, "must be predicated upon a cause of action, such as nuisance, trespass, the First Amendment, etc., regarding which a plaintiff must show a likelihood or actuality of success on the merits." *See Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1097 (11th Cir. 2004); *id.* at 1098 (noting the moving party must show "some independent legal right is being infringed" that makes up a "cause of action for which a party may sue"). "Plaintiffs with questionable claims would not meet the likelihood of success criterion." *Grupo Mexicano de Desarrollo v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 339 (1999). Similarly, plaintiffs with injuries that are "remote" or "speculative" instead of "actual and imminent" would not meet the irreparable injury criterion. *See Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc) (quotation marks omitted).

## III.     DISCUSSION

As noted above, this R&R addresses Plaintiffs' Rule 60(b) Motion and their Motion for Injunction.  Before evaluating the merits of those motions, however, the Court must address its own authority to decide them.  *See, e.g.*, *Univ. of S. Alabama v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999) ("[A] federal court is obligated to inquire into subject matter jurisdiction *sua sponte* whenever it may be lacking.").  The reason the Court's subject-matter jurisdiction is in question here is, of course, because the Amended Complaint has been dismissed and Plaintiffs have appealed that dismissal.  But while a notice of appeal deprives a district court of jurisdiction over all issues involved in the appeal, it does not prevent the court from entertaining motions on matters collateral to those at issue on appeal.  *See Mahone*, 326 F.3d at 1179.  Similarly, district courts retain jurisdiction after the filing of a notice of appeal to entertain and deny a Rule 60(b) motion, though they do not possess jurisdiction to grant one.  *See id.* at 1180; Fed. R. Civ. P. 62.1(a)(2).

As those principles make clear, the Court has subject-matter jurisdiction over Plaintiffs' Rule 60(b) Motion because, for the reasons explained below, the Court concludes that motion should be denied.  *See infra* Section III.A.  And while a motion for injunction does not appear on the illustrative list of collateral issues the Eleventh Circuit compiled in *Absolute Activist*, it has recognized injunction issues can be collateral, *see, e.g.*, *see Bush*, 261 F.3d at 1064–65; *Weaver*, 172 F.3d at 773, as has this Court, *see FTC v. On Point Glob. LLC*, No. 19-CV-25046, 2021 WL 12371368, at *1 (S.D. Fla. May 11, 2021) (finding a motion for relief from asset freeze, which asked the Court to modify the preliminary injunction on appeal, to be collateral).  The Court reaches the same conclusion on the Motion for Injunction here.

The Motion for Injunction asks the Court to prohibit Defendants' counsel from

coordinating their defenses, *see* ECF No. [269], and the allegedly improper coordination was not a basis for, or even a consideration in, Judge Bloom's dismissal of the Amended Complaint, *see* ECF No. [165]. For that reason, the Motion for Injunction raises issues that are separate and distinct from the issues Plaintiffs have appealed, and resolving them will not affect the questions presented on appeal. *See Weaver*, 172 F.3d at 773; *Bush*, 261 F.3d at 1064. That is the very definition of collateral, so the Court concludes that it retains jurisdiction to resolve the Motion for Injunction while the appeal is pending. *See Weaver*, 172 F.3d at 773; *Bush*, 261 F.3d at 1064.

### A. Rule 60(b) Motion – ECF No. [218]

As earlier explained, in the Rule 60(b) Motion, Plaintiffs ask the Court to vacate its order dismissing their claims for two reasons. First, they argue post-judgment statements by Defendants Urgelles and Goicoechea are new evidence that cures the pleading deficiencies in the Amended Complaint, which satisfies the requirements for relief under Rule 60(b)(2). *See* ECF No. [218] at 1–4, 7–12. Second, they argue those same statements demonstrate that Defendants procured the dismissal through their deliberate concealment and misconduct, which satisfies the requirements for relief under Rule 60(b)(3), because it prevented them from fully and fairly presenting their claims. *See* ECF No. [218] at 9. The Court disagrees.

### 1. New Evidence Under Rule 60(b)(2)

To qualify for relief under Rule 60(b)(2), Plaintiffs must show that the evidence they offer is newly discovered since the dispositive order, is material and not merely cumulative or impeaching, and would probably produce a new result if the Court reconsidered its findings in view of the evidence. *See Waddell*, 329 F.3d at 1309. Plaintiffs also must show that they exercised due diligence to discover the evidence. *See id.* There appears to be no dispute that the evidence is newly discovered or that Plaintiffs exercised due diligence to discover it, *see generally* ECF No.

[221]; ECF No. [222], which makes sense because the announcements and statements Plaintiffs offer were not made until after Judge Bloom dismissed the Amended Complaint and Plaintiffs filed their Rule 60(b) Motion within weeks of the statements, *see* ECF No. [218] at 2 (noting the statements occurred in July 2025, less than two months after dismissal, and filing the motion that same month). That leaves the question of whether the new evidence is material instead of cumulative or impeaching and would probably produce a new result. The Court concludes the answer is no.

Plaintiffs argue the new evidence is material and would change the result because it "directly cures the fatal deficiencies" the Court identified in its dismissal order, specifically by attributing "specific acts to specific defendants" and by providing "non-conclusory factual allegations" to support RICO predicate acts of witness tampering, obstruction of justice, and money laundering. *See* ECF No. [218] at 10–12. But even adding the new evidence to the calculus, Plaintiffs still fail to state a RICO claim against Defendants. That is because, as one of the many elements of a civil RICO claim, Plaintiffs had to "allege a pattern of racketeering activity," which in part requires showing "the defendants committed two or more predicate acts within a ten-year time span." *See Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1264 (11th Cir. 2004); *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1068 (11th Cir. 2007) ("[A]bsent any valid predicate acts, [a party] cannot state a claim for RICO violations."). And the new evidence does not fix the problems with Plaintiffs' witness tampering, witness retaliation, obstruction of justice, and money laundering allegations.

Relevant here, to show witness tampering under 18 U.S.C. § 1512, Plaintiffs had to allege Defendants "knowingly use[d] intimidation, threaten[ed], or corruptly persuade[d] another person, or attempt[ed] to do so, or engage[d] in misleading conduct toward another person, with intent"

either to "influence, delay, or prevent the testimony of any person in an official proceeding" or to "cause or induce any person" to "withhold testimony, or withhold a record, document, or other object, from an official proceeding."[4]  *See* 18 U.S.C. § 1512(b)(1)–(2).  Similarly, to show obstruction of justice under 18 U.S.C. § 1503, Plaintiffs had to allege Defendants "corruptly or by threats or force, or by any threatening letter or communication, influence[d], obstruct[ed], or impede[d], or endeavor[ed] to influence, obstruct, or impede, the due administration of justice." *See id.* § 1503.  Plaintiffs assert Defendants' post-dismissal statements about them meet these standards because they amount to the "public branding of federal litigants as terrorists, blackmailers, false oppositors, and traitors for pursuing their legal rights," which they argue are both "textbook" acts of "corrupt persuasion" and "intimidation" designed to deter them from pursuing their lawsuit and a "direct attack on the integrity of the judicial process."  *See* ECF No. [218] at 10–11.  But comparing the new allegations with those Judge Bloom assessed when deciding dismissal was warranted demonstrates that they are merely cumulative.

In holding that Plaintiffs had not stated a claim for witness tampering, witness retaliation, or obstruction of justice, Judge Bloom highlighted Plaintiffs' allegations that Defendants made public statements through social media in which they labeled Plaintiffs as "traitors" with the "goal" of stopping Plaintiffs from testifying, or punishing them for testifying, in the Delaware litigation. *See* ECF No. [165] at 18.  But those allegations did not meet the various standards to allege those crimes because "defamation is not a predicate act under RICO, and courts routinely reject a party's attempt to shoehorn defamation claims and other claims of reputational harm into a RICO

---

[4] To the extent Plaintiffs base their witness tampering predicate on retaliation instead of intimidation, they do so under 18 U.S.C. § 1513.  And as Judge Bloom noted in her dismissal order, that section "criminalizes the same conduct as § 1512," *see* ECF No. [165] at 17 n.12, at least in large part, *see* 18 U.S.C. § 1513(b) (prohibiting conduct that "causes bodily injury to another person or damages the tangible property of another person, or threatens to do so, with intent to retaliate"). For that reason, the Court focuses its analysis on § 1512, as Judge Bloom did, *see* ECF No. [165] at 16–20.

framework." *See* ECF No. [165] at 18.   Here, Plaintiffs' new evidence consists of public statements, through both social and traditional media this time, in which they labeled Plaintiffs as terrorists, blackmailers, false oppositors, and traitors with the goal of deterring Plaintiffs from pursuing their lawsuit.  *See* ECF No. [218] at 10–11.

While the new allegations are a bit broader because they involve more media platforms (social media standing alone versus social and traditional media), more offensive names (just traitors versus traitors, terrorists, blackmailers, and false oppositors), and a more comprehensive statement of the alleged enterprise's ultimate goal (just preventing or punishing their testimony versus preventing their lawsuit), in character the new allegations are nearly identical to the allegations Judge Bloom concluded were insufficient to state a claim.  Unsurprisingly, then, the new allegations do the same thing the old ones did: they attempt to shoehorn defamation claims into a RICO framework.  *See* ECF No. [165] at 18.  For that reason, the new evidence fails to fix the problems with Plaintiffs' witness tampering, witness retaliation, and obstruction of justice predicates.  This evidence cannot, therefore, be a basis for relief under Rule 60(b)(2).  In addition, Plaintiffs' proposed RICO predicates based on this newly discovered evidence still fall within the same single-action rule prohibition that formed an alternative basis for dismissing Plaintiffs' RICO claim.  *See* ECF No. [165] at 10–13.  Notably, Plaintiffs' Rule 60(b) Motion fails to address this alternative basis for dismissal of their claims.

But even setting aside the fact that the new allegations are simply more examples of potentially defamatory conduct, they still would not state a claim for witness tampering, witness retaliation, or obstruction of justice.  Each of those crimes requires some version of threatening or intimidating behavior, *see* 18 U.S.C. §§ 1503(b), 1512(b), 1513(b), and the Court assesses the purportedly threatening or intimidating behavior objectively, *see United States v. Wilkins*, No. 19-

CR-80032, 2020 WL 7294525, at *8 (S.D. Fla. Dec. 10, 2020), *aff'd*, No. 20-14798, 2022 WL 98748 (11th Cir. Jan. 10, 2022); *United States v. Davis*, 854 F.3d 1276, 1293 (11th Cir. 2017) (noting the test is whether "a reasonable recipient, familiar with the context of the communication, would interpret it as a threat" (quotation marks omitted)).

While there is nothing nice about the name calling alleged here, this language fails to satisfy that objective standard, which typically involves some ominous comment about how the witness's testimony will doom the defendant, *see, e.g.*, *Davis*, 854 F.3d at 1293 (finding that a defendant father's statement to his witness daughter that he did not want her to testify because it would "fuck [him] up" and send him "to jail for a long time" was threatening), and, often, how the defendant can find (and presumably harm) the witness, *see, e.g.*, *Wilkins*, 2020 WL 7294525, at *8–9 (finding a defendant's statement to his witness ex-girlfriend that, even if she moves, his "people" would let him "know exactly where" she is to be threatening); *cf. United States v. White*, 256 F. App'x 333, 339 (11th Cir. 2007) (affirming finding of intimidation where defendant told witness to lie to authorities and that he "knew where" the witness "and his mother lived"). Instead, Defendants' statements communicated their assessments of Plaintiffs' character, which were certainly mean-spirited, but did not emphasize how those characteristics would harm Defendants[5] or how, because of them, Defendants would harm Plaintiffs. So even if the new evidence did not constitute defamation, it would still fail to establish a required element of witness tampering, witness retaliation, and obstruction of justice and would still fail to establish one of the required predicate acts for a RICO claim.

---

[5] Plaintiffs assert that Defendant Goicoechea accused Plaintiffs of trying to blackmail Defendants so that they would "accede to a claim that defends" Plaintiffs' "interests but not the interests of the [PDVSA Ad Hoc] company." *See* ECF No. [218] at 7. But compromising a company's legal claim is not harm of the same tenor as the loss-of-life-or-liberty harm that is generally present in the language courts have found to be threats. *See Davis*, 854 F.3d at 1293.

Because civil RICO claims require at least two predicate acts, *see Jackson*, 372 F.3d at 1264, and the Court has already found that Plaintiffs' new evidence does not fix the problems with their witness tampering, witness retaliation, and obstruction of justice claims, the analysis could end here.  For completeness, however, the Court also finds that the new evidence does not cure Plaintiffs' money laundering claim either.  To show money laundering, Plaintiffs had to allege Defendants "conduct[ed] or attempt[ed] to conduct a financial transaction with money [they knew] to be the proceeds of an unlawful activity, with the purpose of concealing or disguising the nature, location, source, ownership or control of the proceeds."  *See United States v. Flynt*, 15 F.3d 1002, 1007 (11th Cir. 1994) (citing 18 U.S.C. § 1956(a)(1)(B)(i)); *accord* 18 U.S.C. § 1957(a) (prohibiting knowingly engaging or attempting to engage "in a monetary transaction in criminally derived property of a value greater than $10,000" that "is derived from specified unlawful activity").

Plaintiffs assert that the new evidence "completely" fixes their money laundering claim "by identifying two specific sets of transactions" in which Medina gave "over $240,000" to Carrasquero and the PDVSA Ad Hoc Board (which Medina chairs) gave $74,280 to Urgelles' company to finance the documentary film.  *See* ECF No. [218] at 11–12.  But the new allegations still do not identify what "unlawful activity" produced these specific funds or whether and how Defendants knew these funds were derived from that unidentified alleged unlawful activity, both of which are required to support a money laundering claim.  *See Flynt*, 15 F.3d at 1007; 18 U.S.C. § 1956(a)(1)(B)(i); *id.* § 1957(a).  For that reason, Plaintiffs' new evidence does not cure their money laundering claim, so that claim cannot act as a predicate for their civil RICO claim.  And "absent any valid predicate acts," Plaintiffs "cannot state a claim for RICO violations."  *See Martinez*, 480 F.3d at 1068.  Because a Rule 60(b)(2) motion is an "extraordinary" request for

which the requirements of the rule must be strictly met, *see Toole*, 235 F.3d at 1316, I respectfully **RECOMMEND** that the Rule 60(b)(2) portion of Plaintiffs' Rule 60(b) Motion be **DENIED**.[6]

### 2.  Fraud Under Rule 60(b)(3)

To qualify for relief under Rule 60(b)(3), Plaintiffs must show by clear and convincing evidence both that Defendants obtained the dismissal through fraud, misrepresentations, or other misconduct and that Defendants' conduct prevented Plaintiffs from fully and fairly presenting their case.  *See Waddell*, 329 F.3d at 1309; *Rozier*, 573 F.2d at 1339.  Relief under Rule 60(b)(3) does not require that the information withheld be of such nature as to alter the result in the case, *see Rozier*, 573 F.2d at 1339, and because Rule 60(b)(3) is remedial, the court has greater discretion to grant relief under Rule 60(b)(3) than it has under Rule 60(b)(2), *see id.* at 1346; *Scutieri*, 808 F.2d at 794.  Even with greater discretion, though, and even accepting that Rule 60(b)(3) should be liberally construed, *see Rozier*, 573 F.2d at 1346, the Court finds that Rule 60(b)(3) relief is not warranted here.

For the same reasons they gave in the context of their Rule 60(b)(2) request — specifically, Defendants' concealment of both the funding source for the documentary film and the film's "clear underlying purpose" to "attack" them — Plaintiffs argue they meet the Rule 60(b)(3) standard. *See* ECF No. [218] at 9; ECF No. [228] at 1–5; ECF No. [229].  They assert that the Amended Complaint's dismissal "was procured by Defendants' deliberate concealment and misconduct," which created an "incomplete and misleading" factual record and prevented Plaintiffs "from fully and fairly presenting their claims," *see* ECF No. [218] at 9, 13, because it withheld "material evidence that directly corroborates" their "central theory," *see* ECF No. [228] at 1–5; ECF No.

---

[6] The Court recommends that the Rule 60(b)(2) portion of Plaintiffs' Rule 60(b) Motion be denied because the new evidence fails to fix the substantive pleading deficiencies in the Amended Complaint.  As a result, the Court does not address Plaintiffs' additional argument that the new evidence cures the shotgun character of the Amended Complaint.

[229].  That incomplete record "successfully convinced this Court" that the "malicious enterprise" Plaintiffs alleged against Defendants "was a baseless allegation" when, in truth, Defendants had been "actively funding and directing" the enterprise behind the scenes the whole time.  *See* ECF No. [218] at 1.  The Court disagrees.

Looking at the first requirement for Rule 60(b)(3) relief, Plaintiffs have failed to show "by clear and convincing evidence that [Defendants] obtained the verdict through fraud, misrepresentations, or other misconduct."  *Waddell*, 329 F.3d at 1309.  In their arguments, Plaintiffs overlook that the dismissal of the Amended Complaint was not based on any alleged misrepresentations that Defendants made to the Court, thereby influencing Judge Bloom's decision.  When Judge Bloom ruled on the Motion to Dismiss, she took all allegations in the Amended Complaint — allegations that Plaintiffs, not Defendants provided — as true and then analyzed whether those allegations stated a claim for relief, ultimately determining that they did not.  *See* ECF No. [165] at 6.  While the dismissal was based on Defendants' legal arguments, it was not based on any factual misinformation or omission by Defendants; dismissal was based on Plaintiffs' failure to allege facts that could form the basis of a viable federal claim.  Because the allegedly omitted information did not influence the outcome on the Motion to Dismiss, this cannot form the basis for relief under Rule 60(b)(3) as Plaintiffs have failed to show that Defendants *obtained* the dismissal through fraud, misrepresentation, or other misconduct.  *See Jones v. Hugine*, No. 22-13366, 2023 WL 4340514, at *5 (11th Cir. July 5, 2023) (affirming district court's decision to deny relief under Rule 60(b)(3) "because the presumedly 'misleading' statement did not influence its decision to dismiss the claim under Rule 12(b)(6) or to dismiss the lawsuit for failure to comply with its orders.").  Further, as the Court has already explained, even if the new evidence that Plaintiffs proffer about the documentary film, its financing, and its public promotion

were presented to Judge Bloom, it does not add any allegations to the factual record that change the landscape she saw when she dismissed the Amended Complaint. *See supra* Section III.A.1.

Similarly, the Court cannot find in either the Rule 60(b) Motion or Plaintiffs' Reply in support of it any explanation of how Defendants' statements during the release and promotion of the documentary film are evidence of fraud or misrepresentation. *See generally* ECF No. [218]; ECF No. [228]; ECF No. [229]. Even accepting Plaintiffs' contention that Defendants used the film's promotional interviews and social media posts to attack them, *see* ECF No. [218] at 2–3, that behavior does not amount to a fraud on or misrepresentation to the Court.

Turning to the second prong for relief under Rule 60(b)(3), the evidence must convince the Court that Plaintiffs were unable to fully and fairly present their case. *See Rozier*, 573 F.2d at 1339. Plaintiffs maintain that the new evidence is material and directly corroborates their central theory, *see* ECF No. [228] at 1–5, because it shows Defendants argued to Judge Bloom that no "coordinated campaign" existed when "they had already been funding it for over a year," *see* ECF No. [218] at 3. But the Court fails to see how the funding of a documentary film that is not about the Plaintiffs and, going off of Plaintiffs' description, does not mention them establishes "a coordinated and malicious campaign of racketeering and intimidation." *See* ECF No. [218] at 2. Nor does the Court see how such a film's clear underlying purpose could be to attack Plaintiffs, as they contend. *See* ECF No. [228] at 4. So the Court does not agree that Plaintiffs' lack of knowledge about the film's funding impaired their ability to present to Judge Bloom their theory of the case, particularly because Plaintiffs do not point to a single affirmative statement that Defendants made during discovery that would suggest they deliberately concealed the newly discovered information from Plaintiffs or that it is otherwise evidence of fraud or misrepresentation.

For these reasons, the Court concludes that Rule 60(b)(3) relief is not warranted either. *See Waddell*, 329 F.3d at 1309; *Rozier*, 573 F.2d at 1339.  Accordingly, I respectfully **RECOMMEND** that the Rule 60(b) Motion, **ECF No. [218]**, be **DENIED** in its entirety.

### B.  Motion for Injunction – ECF No. [269]

In the Motion for Injunction, Plaintiffs ask the Court to enjoin defense counsel — specifically, DRT, Sardi Law, and the lawyers from those law firms — from coordinating strategies, sharing information, and taking the same legal positions because, they contend, such coordination is improper.  *See* ECF No. [269] at 1–3.  Plaintiffs argue the coordination is improper because DRT's "disqualifying conflict of interest," which gives it an "unfair informational advantage," is tainting Sardi Law and because it amounts to "the denial of a fair legal process." *See* ECF No. [269] at 2–3, 6–9.  And they argue the two law firms' "unified threats of sanctions" are irreparably harming them because defense counsel's "weaponization of the litigation process itself" has prompted serious health issues for one Plaintiff.  *See* ECF No. [269] at 2–3, 6–9.

To obtain a preliminary injunction, Plaintiffs have the burden of establishing four elements: (1) there is a substantial likelihood of success on the merits of their claims; (2) that they will suffer irreparable injury if an injunction is not granted; (3) that their threatened injury outweighs any harm an injunction would inflict on Defendants; and (4) that an injunction would serve the public interest.  *See Schiavo*, 403 F.3d at 1225–26; *Jefferson Cnty.*, 720 F.2d at 1519.  Meeting their burden on the first element requires Plaintiffs to show they have "some independent legal right" that makes up a "cause of action for which a party may sue" that Defendants have infringed.  *See Klay*, 376 F.3d at 1097–98.  They have not done so.

According to Plaintiffs, the "'merit' at issue" here "is that the coordination between DRT and Sardi Law is improper."  *See* ECF No. [269] at 6.  For at least three reasons, the Court

disagrees. First, as Defendants recognize, "Plaintiffs identify no law forbidding counsel for Defendants from agreeing" on their legal positions. *See* ECF No. [272] at 7–8. Indeed, there is not one citation to a case, statute, rule, or other legal provision anywhere in the Motion for Injunction. *See generally* ECF No. [269]. Under this District's Local Rules, that alone is reason enough to deny the Motion for Injunction. *See* S.D. Fla. L.R. 7.1(a)(1) ("Every motion when filed and served shall incorporate a memorandum of law citing supporting authorities."); *cf.* S.D. Fla. L.R. 7.1(a)(3) (noting that "[f]ailure to comply with the requirements of this Local Rule may be cause for the Court to grant or deny the motion").

Second, as Defendants also recognize, "it is normal practice for defense counsel to cooperate when they share a joint interest in defending against a plaintiff's claims." *See* ECF No. [272] at 8. Indeed, while the Eleventh Circuit has not recognized that precise principle, it has recognized two similar ones: the validity of joint defense agreements and the "common interest" privilege. *See In re Blue Cross Blue Shield Antitrust Litig. MDL 2406*, 85 F.4th 1070, 1096 (11th Cir. 2023); *United States v. Almeida*, 341 F.3d 1318, 1323 (11th Cir. 2003); *Wilson P. Abraham Const. Corp. v. Armco Steel Corp.*, 559 F.2d 250, 253 (5th Cir. 1977). In a joint defense agreement, "each defendant retains his own attorney" but "confidential communications made during joint defense strategy sessions are privileged." *Almeida*, 341 F.3d at 1323; *see also Armco Steel*, 559 F.2d at 253 (noting that conspiracy co-defendants "have a right to consult together about the case" and "that all information derived by any of the counsel from such consultation is necessarily privileged"). And "the common-interest privilege, which applies when multiple clients share a common interest about a legal matter," protects "the confidentiality of communications passing from one party to the attorney for another party where a joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel." *Blue Cross*, 85 F.4th at

CASE NO. 25-CV-20465-BLOOM/Elfenbein

1096 (quotation marks omitted); *see also Almeida*, 341 F.3d at 1324.  That is because the "need to protect the free flow of information from client to attorney logically exists whenever multiple clients share a common interest about a legal matter," even if the common interest is only "substantially similar" and the parties' other interests "are adverse in substantial respects."  *See Blue Cross*, 85 F.4th at 1096 (quotation marks omitted); *Almeida*, 341 F.3d at 1324.

A necessary component of both joint defense agreements and the common interest privilege is the cooperation and coordination of counsel.  There is no way two lawyers with separate clients could strategize about a joint defense if they were prohibited from cooperating and coordinating, just as there is no way to protect the free flow of information from client to attorney that creates joint strategies without cooperation and coordination. Because the coordination of different parties' counsel is essential to joint defense agreements and the common interest privilege, the Eleventh Circuit's approval of both necessarily includes the companion approval of counsel coordination.  So not only are Plaintiffs incorrect that there is something nefarious or unfair about Defendants' counsel coordinating, but the opposite is actually true: counsel coordination is a party's right when multiple parties share a common interest about a legal matter. *See Armco Steel*, 559 F.2d at 253; *Blue Cross*, 85 F.4th at 1096; *Almeida*, 341 F.3d at 1324.

Third and finally, because there is no prohibition on coordination of counsel, Plaintiffs cannot show that they have an independent legal right to be free of such coordination, let alone that they have a cause of action for which they may sue arising out of counsel coordination.  *See Klay*, 376 F.3d at 1097–98.  In fact, as just explained, Defendants actually have the opposite right — to coordinate, with the participation of their counsel, about their common interest in this case. *See Armco Steel*, 559 F.2d at 253; *Blue Cross*, 85 F.4th at 1096; *Almeida*, 341 F.3d at 1324. Without a cognizable cause of action regarding which Plaintiffs can show a likelihood of success

on the merits, they cannot meet their burden on the first element of the preliminary injunction test. *See Klay*, 376 F.3d at 1097–98; *Schiavo*, 403 F.3d at 1225–26; *Jefferson Cnty.*, 720 F.2d at 1519.

A preliminary injunction is an extraordinary and drastic remedy; a court cannot grant one unless the movants clearly carry their burden on all four elements of the test. *See Jefferson Cnty.*, 720 F.2d at 1519. Because Plaintiffs have not satisfied the first element, the Court cannot grant them a preliminary injunction.[7] Accordingly, I respectfully **RECOMMEND** that the Motion for Injunction, **ECF No. [269]**, be **DENIED**.

### C. Defendants' Requests for Sanctions

In their Responses to the Rule 60(b) Motion and the Motion for Injunction, Defendants argue that the Court should "sanction Plaintiffs for their repeated bad faith multiplication of proceedings." *See* ECF No. [221] at 13–15; ECF No. [222]; ECF No. [272] at 12–14; ECF No. [274]. They assert sanctions are warranted under both 28 U.S.C. § 1927, which authorizes shifting "costs, expenses, and attorneys' fees" to parties who multiply "the proceedings in any case unreasonably and vexatiously," and the Court's inherent authority, which allows the Court to sanction parties for bad faith litigation misconduct. *See* ECF No. [221] at 13–15; ECF No. [272] at 12–14. They argue Plaintiffs have multiplied the proceedings here by consistently "ignoring this Court's rules and procedures" and "making improper filings that serve only to increase" Defendants' "legal costs, burden the Court's resources, and demonstrate their disregard for the Court's authority." *See* ECF No. [221] at 14; ECF No. [272] at 12–13.

Defendants also argue Plaintiffs have shown bad faith here by, in addition to multiplying the proceedings, continuing to make "baseless allegations of fraud" and to refile "denied motions." *See* ECF No. [221] at 14; ECF No. [272] at 12–13. Although Defendants reference § 1927, which

---

[7] Because Plaintiffs fail to satisfy the first element of the preliminary injunction test, the Court does not analyze the other three elements of that test.

permits only cost and fee shifting and does not apply to non-attorney *pro se* litigants, *see In re Micron Devices, Inc.*, No. 24-11215, 2025 WL 2449469, at *3 (11th Cir. Aug. 26, 2025) ("Because section 1927 cannot support sanctions against a non-attorney pro se litigant, the bankruptcy court abused its discretion."), the sole form of sanctions they request is a "narrow injunction against Plaintiffs, preventing further filings without leave of the Court" to stop Plaintiffs' "relentless post-judgment motion practice," *see* ECF No. [221] at 14–15; ECF No. [272] at 13–14.

In their Reply in support of the Rule 60(b) Motion, Plaintiffs argue that Defendants' request for sanctions is a "baseless, retaliatory tactic" that is "devoid of legal merit. *See* ECF No. [228] at 8; ECF No. [229] at 9. Plaintiffs argue they have not acted in bad faith because their Rule 60(b) Motion is "a proper and necessary effort to seek justice" that is "grounded in specific, newly discovered evidence and supported by" precedent. *See* ECF No. [228] at 8; ECF No. [229] at 9. They note that many of their post-judgment filings "were responsive to Defendants' own conduct" and that a "pre-filing injunction is an extreme sanction reserved for litigants with a documented history of filing numerous, repetitive, and patently frivolous lawsuits, which is inappropriate here." *See* ECF No. [228] at 8–9; ECF No. [229] at 9–10. Plaintiffs did not file a Reply in support of their Motion for Injunction, so they do not offer a position on how that filing fits into this framework.

"Federal courts have both the inherent power and the constitutional obligation to protect their jurisdiction from conduct which impairs their ability to carry out Article III functions." *Johnson v. 27th Ave. Caraf, Inc.*, 9 F.4th 1300, 1317 (11th Cir. 2021) (quoting *Procup v. Strickland*, 792 F.2d 1069, 1073 (11th Cir. 1986) (en banc)). Under that power, "federal courts can protect their dockets from abuse by frequent filers so long as the measures taken are a reasonable response to the abuse and access to the courts is not entirely foreclosed." *Id.* That is

because "[f]rivolous and vexatious law suits threaten the availability of a well-functioning judiciary to all litigants," so "courts are authorized by the All Writs Act, 28 U.S.C. § 1651(a), to restrict access to vexatious and abusive litigants." *See Miller v. Donald*, 541 F.3d 1091, 1096 (11th Cir. 2008).

"Indeed, as long as *some* access to the courts is allowed, federal courts have considerable discretion to restrict filings of litigants who continuously bring frivolous suits that abuse the judicial process." *Johnson*, 9 F.4th at 1317–18 (quotation marks omitted); *see also Procup*, 792 F.2d at 1074 ("[The plaintiff] can be severely restricted as to what he may file and how he must behave in his applications for judicial relief. He just cannot be completely foreclosed from *any* access to the court."). "Prefiling orders are a common way to restrict such filings while still allowing access to the courts," *Johnson*, 9 F.4th at 1318; *see also Martin-Trigona v. Shaw*, 986 F.2d 1384, 1387 (11th Cir. 1993) (noting the court allows "injunctions designed to protect against abusive and vexatious litigation"), including against *pro se* parties, *see Cofield v. Ala. Pub. Serv. Comm'n*, 936 F.2d 512, 514 (11th Cir. 1991) (affirming pre-filing injunction in all but one respect against a *pro se* party).

To impose a prefiling injunction on a vexatious litigant, the "traditional standards applicable to issuance of an injunction do not apply." *Lustig v. Stone*, No. 15-CV-20150, 2020 WL 3469719, at *10 (S.D. Fla. June 25, 2020); *see also Klay*, 1100–01 ("The requirements for a traditional injunction do not apply to injunctions under the All Writs Act because a court's traditional power to protect its jurisdiction, codified by the Act, is grounded in entirely separate concerns."). "Instead, a history of litigation entailing vexation, harassment and needless burden on the courts and their supporting personnel is enough." *Lustig*, 2020 WL 3469719, at *10 (citation modified). When deciding whether a litigant's conduct fits that description, courts in this

District have been guided by five factors: "(1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits, (2) the litigant's motive in pursuing the litigation, e.g. does the litigant have an objective good faith expectation of prevailing, (3) whether the litigant is represented by counsel, (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel, [and] (5) whether other sanctions would be adequate to protect the courts and other parties." *See id.* Courts have also routinely "restrict[ed] a vexatious litigant from filing anything without prior approval from the Court." *Id.* at *22; *see also, e.g.*, *Montford v. Pryor*, No. 24-CV-20381, 2024 WL 4799101, at *1 (S.D. Fla. Nov. 15, 2024); *Thomas v. Christina*, No. 22-CV-20498, 2022 WL 1100851, at *4 (S.D. Fla. Apr. 13, 2022).

The Court is familiar with these guidelines, having recommended injunctions in other cases similar to the one Defendants request here. *See, e.g.*, *Gabriel v. JW Marriott Miami Turnberry Resort & SPA*, No. 25-CV-24627, 2025 WL 3159525, at *7 (S.D. Fla. Oct. 8, 2025), *R.&R. adopted*, No. 25-CV-24627-RAR, 2025 WL 3039283 (S.D. Fla. Oct. 31, 2025). With the benefit of that perspective, the Court concludes that Plaintiffs' conduct does not yet meet this District's threshold for being deemed vexatious filers. As Plaintiffs recognize, a vexatious filer designation (and the accompanying pre-filing injunction) is an extreme sanction. *See* ECF No. [228] at 8–9; ECF No. [229] at 9–10. The Court will not recommend such a sanction unless the party to be sanctioned has a long history of filing unsuccessful motions and, despite those denials, continues to file baseless motions anyway.

While Defendants are correct that Plaintiffs are responsible for many filings, including since their Amended Complaint was dismissed, *see* ECF No. [221] at 13–15; ECF No. [272] at 12–14, at this stage in the litigation, Plaintiffs do not have the kind of losing track record that

justifies a pre-filing injunction.  So far on the merits, Plaintiffs have "lost" on only two motions: their Motion to Disqualify Sardi Law, *see* ECF No. [51]; ECF No. [161], and Defendants' Motions to Dismiss, *see* ECF No. [96]; ECF No. [100]; ECF No. [165].  And while the Court recommends that Plaintiffs' Rule 60(b) Motion be denied, the analysis in this R&R demonstrates that it was not patently frivolous.  *See supra* Section III.A.  Plaintiffs' Motion for Injunction, however, is a closer call, as this R&R's analysis makes clear that Plaintiffs based their request on a legal right that does not exist.  *See supra* Section III.B.

Still, the Court does not view Plaintiffs' litigation conduct to this point to be severe enough to warrant a vexatious filer designation and a pre-filing injunction, particularly because the pace of Plaintiffs' filings has slowed since the Court cautioned them not to file duplicative motions or motions improperly designated as emergencies. *See, e.g.*, ECF No. [245]; ECF No. [290]. Accordingly, I respectfully **RECOMMEND** that Defendants' requests for the sanction of a pre-filing injunction against Plaintiffs contained in their Responses to Plaintiffs' Motions, *see* ECF No. [221] at 13–15; ECF No. [222]; ECF No. [272] at 12–14; ECF No. [274], be **DENIED**.  Even so, the Court warns Plaintiffs that if they fail to follow this Court's guidance about not filing duplicative motions, motions improperly designated for expedited or emergency consideration, or motions requesting relief that the Court is already considering but has not yet ruled upon, or if they continue to file non-meritorious motions, the Court may recommend that Judge Bloom deem them vexatious filers and enter the appropriate pre-filing injunction.

IV.    **CONCLUSION**

For the reasons explained above, I respectfully **RECOMMEND** that the Rule 60(b) Motion, **ECF No. [218]**, and the Motion for Injunction, **ECF No. [269]**, be **DENIED**.[8]  I also

---

[8] This includes the requests for an evidentiary hearing within both motions. *See Vasconcelo*, 851 F. App'x at 985 (noting that nothing in Rule 60(b) or this Circuit's case law interpreting it requires the district court

respectfully **RECOMMEND** that Defendants' requests for the sanction of a pre-filing injunction against Plaintiffs contained in their Responses to Plaintiffs' Motions, *see* ECF No. [221] at 13–15; ECF No. [222]; ECF No. [272] at 12–14; ECF No. [274], be **DENIED**.

The Parties will have **fourteen (14) days** from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Beth Bloom, United States District Judge.  Failure to timely file objections shall bar the Parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the Parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice.  *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1.

**RESPECTFULLY SUBMITTED** in Chambers in Miami, Florida on December 23, 2025.

**MARTY FULGUEIRA ELFENBEIN**
**UNITED STATES MAGISTRATE JUDGE**

cc:     All Counsel of Record

**Ivan R. Freites C.**
c/o Villasana
4370 NW 107th Ave, Apt. 102
Doral, FL 33178
*PRO SE*

**Miguel Enrique Otero C.**
Plaintiff.v.Medina@proton.me
*PRO SE*

**Jorge Alejandro Rodriguez M.**
Plaintiff.2.v.Medina@proton.me
*PRO SE*

---

to hold an evidentiary hearing before making its findings); *Jenkins*, 922 F.3d at 1270–71.