

FILED BY _____ D.C.

JAN 13 2026

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

### UNITED STATES DISTRICT COURT

### SOUTHERN DISTRICT OF FLORIDA

Case No. 1:25-cv-20465-BB

**IVAN R. FREITES C., MIGUEL ENRIQUE OTERO, and JORGE ALEJANDRO RODRIGUEZ,**

*Plaintiffs-Movants,*          v.

**DIAZ REUS LLP, MICHAEL DIAZ, JR., JAVIER CORONADO, and MARTA COLOMAR GARCIA,**

*Respondents.*

_____/

**INDEPENDENT VERIFIED MOTION FOR WRIT OF REPLEVIN, TEMPORARY RESTRAINING ORDER TO PREVENT SPOLIATION OF EVIDENCE AND SEVERANCE OF PARTIES, INCORPORATING PRIOR DEMANDS FOR PRODUCTION AND MEMORANDUM OF LAW**

Plaintiffs/Movants, **IVAN R. FREITES C., MIGUEL ENRIQUE OTERO, and JORGE ALEJANDRO RODRIGUEZ**, acting *Pro Se*, respectfully file this Independent Verified Motion pursuant to Federal Rule of Civil Procedure 64 (authorizing seizure of property under state law), Federal Rule of Civil Procedure 65, Florida Statute Chapter 78 (Replevin), and the inherent supervisory powers of this Court over members of its Bar. Plaintiffs move this Court for the immediate issuance of a **Pre-Judgment Writ of Replevin** compelling Respondents to surrender specific "digital chattels" and wrongfully detained client property.

1

Furthermore, Plaintiffs request a **Temporary Restraining Order (TRO)** enjoining Respondents from deleting, scrubbing, or altering forensic Electronically Stored Information (ESI). In support thereof, Movants incorporate the following verified facts and legal arguments:

## I. PRELIMINARY STATEMENT: REPLEVIN VS. DISCOVERY

This action is distinct from collateral litigation. It is not a motion to compel discovery subject to the proportionality constraints of Federal Rule of Civil Procedure 26 or Florida Rule of Civil Procedure 1.280. Rather, it is a substantive, independent cause of action for Replevin pursuant to Florida Statute Chapter 78.

The property in question comprises specific, identifiable digital records, logs, and metadata generated during the professional relationship between Mr. Rodriguez and **DIAZ REUS LLP** ("Diaz Reus"). These records constitute the "digital fruits" of that relationship. By refusing to surrender them, Diaz Reus wrongfully detains client property to shield itself from disqualification in adverse litigation (*Freites v. Medina*), creating an imminent danger of "spoliation by expiration" due to automated server deletion policies.

## II. VERIFIED STATEMENT OF FACTS

### A. The Foundation: Historical Representation (2012–2016)

1. Mr. Rodriguez and Diaz Reus share a long-standing professional relationship. As the correspondence record evidences, Mr. Rodriguez was a client of the Firm between 2012 and 2015 . During this period, Michael Diaz, the Firm's Global Managing Partner, advised Mr. Rodriguez on a complex matter involving US

2

Law, Venezuelan Law and Geman Law  identified as *"Continental vs. DMG"*.

2. Additionally, Mr. Rodriguez held formal legal meetings with Mr. Michael Diaz in 2000 on unrelated matters. Although these matters were distinct, the interactions influenced Mr. Rodriguez's state of mind when he re-approached Diaz Reus. Mr. Rodriguez requested the logs of these 2000 meetings from Mr. Javier Coronado, who refused to provide them.

3. Between 2012 and 2023, the Firm acquired a repository of Mr. Rodriguez's confidential information. Under the "Complete File Doctrine," the Firm's internal utilization of these historical files to prepare for subsequent consultations in 2023 continues that property interest. Consequently, logs evidencing the access and review of these 2013–2015 files during the 2023 consultation period constitute new records belonging to the client.

**B. The 2023 Re-Engagement and Consultation**

4. On September 20, 2023, Mr. Rodriguez contacted Michael Diaz, Jr. **in writing** to request a consultation regarding *"litigation in Federal Court... related to workers indemnization from CITGO and PDVSA."* *(ECF 59-1)* The matter involved complex issues of international commercial law, workers' rights, civil rights, and human rights. It is to be highlighted that this was an ongoing litigation filed on or about September 7th, 2023 in the District of Delaware *(Del. 1:23-CV-00989-JLH)*.   The scope of this mandate was significant, involving indemnification claims estimated at several billion USD for thousands of workers. Mr. Rodriguez specifically sought Mr. Diaz's counsel due to his Board

Certification in these areas. His intent was explicit: he sought to "discuss potential legal remedies and strategies," "clarify the next steps," and "provide a more comprehensive overview of the case" (ECF 30-1 page 11 filed by Plaintiffs and acknowledged by Defendant Medina).

5. Mr. Diaz promptly accepted, replying *stating he was "happy to discuss... sometime next week."* This exchange confirmed the initiation of a prospective client relationship under Rule 4-1.18. The moment the parties agreed to the consultation, the duties of confidentiality—and the client's right to the records generated by that consultation—attached. (ECF 30-1 Pages 34 and 35)

## C. The "Res" (Property) Created: October 2, 2023

7. On October 2, 2023, the parties conducted a Zoom meeting (Meeting ID: 929 9074 4032), coordinated by Managing Partner Marta Colomar Garcia and Administrative Staff Mrs. Belkys GUILLEN.  This meeting generated specific electronic records—not abstract memories, but tangible digital artifacts stored on servers. These include Meeting UUIDs, Participant Telemetry (Source IP Addresses, device fingerprinting), and Temporal Data (Start/End times in UTC). **Mr. Rodriguez had proposed the specific agenda for this meeting on September 20, 2023, which had been duly accepted as the agenda for the meeting as accepted by Diaz Reus (*Exhibit 1:* Agenda as agreed by parties in September 20th, 2023 E-Mail.).  In addition to other Diaz Reus assistants to the meeting, Diaz Reus expressly allocated one hour of its two top lawyers for the entirety of the meeting, Mr. Michael DIAZ and**

4

Mr. Javier CORONADO (See Exhibit 2 , meeting calendar for Michael Diaz and Javier Coronado for Monday October 2nd, 2023 between 6 and 7 pm Central European Time i.e. 12:00 to 1:00 pm Eastern Time US). The agenda as agreed by parties was:

- Provide a more comprehensive overview of the case.
- Understand the Firm's approach to similar cases or issues.
- Discuss potential legal remedies and strategies.
- Address any questions or concerns.
- Clarify next steps and potential timelines.

> *Exhibit 1:* Agenda as agreed by parties in September 20th, 2023 E-Mail.
>
> *Exhibit 2:* Meeting calendar for Michael Diaz and Javier Coronado for Monday October 2nd, 2023 between 6 and 7 pm Central European Time i.e. 12:00 to 1:00 pm Eastern Time US)

8. Mr. Diaz agreed to this agenda, pending only administrative coordination.

9. During the consultation, Mr. Rodriguez disclosed and discussed confidential strategies with the attendees, primarily Mr. Diaz. These discussions included:

- The tortious conduct of Horacio Medina (President of the *Junta Administradora Ad hoc de PDVSA*).

5

- ○ The potential impact of said conduct on the lawsuit recently filed in the U.S. District Court for the District of Delaware (*Del. 1:23-CV-00989-MN*).

- ○ Litigation strategy, including potential defamation claims to Mr. Horacio MEDINA and potentially to PDVSA and The Junta Administradora ad hoc de PDVSA.

10. **Notably, at the time of the Zoom meeting, the Delaware lawsuit was under seal as *Lead Plaintiff et al. v. CITGO Petroleum Corporation et al.*, with Mr. Rodriguez serving as Lead Plaintiff. Although the caption later changed to *Freites v. República Bolivariana de Venezuela* following an unopposed motion by CITGO, Mr. Rodriguez remains as Lead Plaintiff.** Testimony provided by Administrative Managing Partner Marta Colomar Garcia at the January 6, 2026, evidentiary hearing stated that Mr. Rodriguez attempted to have another person join the call. This sworn statement by Mrs. Colomar refreshed Mr. Rodriguez's recollection regarding a delay at the start of the meeting somehow similar to the delay recalled by Ms. Colomar. Following this refreshment and a review of his notes during the court recess, Mr. Rodriguez confirmed the delay resulted from an unsuccessful attempt to have Co-Plaintiff Ivan Freites join the Zoom meeting. **Mr. Rodriguez expressly recognizes any rights Mr. Freites may have to records or log entries pertaining to his connection attempts.**

**D. Wrongful Detention and Refusal to Surrender**

14. **The Adverse Representation:** Diaz Reus currently represents Horacio Medina against interests aligned with Mr. Rodriguez in the *Freites* litigation. To maintain this representation, Diaz Reus denies the existence of the prior relationship.

15. **The February 20th Freites Demand:** On February 20th, 2023, Plaintiff Freites addressed Diaz Reus on the potential ongoing conflict of interest for the case (Mr. Freites was the only Plaintiff in the case at that instant moment) as Diaz Reus had ethical fiduciary duties with Mr. Jorge Alejandro Rodriguez M. on the related matter as discussed with Diaz Reus in the October 2nd 2023 meeting (***Exhibit 3:*** E-Mail from Plaintiff Freites addressed to Diaz Reus on the potential ongoing conflict of interest for the case Freites v. Medina).

> ***Exhibit 3:*** E-Mail from Plaintiff Freites addressed to Diaz Reus on the potential ongoing conflict of interest for the case Freites v. Medina.

16. Subsequently and in parallel, Diaz Reus' attorney Coronado dismissed and opposed to the allegations of Plaintiff Freites on the matter as well as to the ongoing requirements by Mr. Rodriguez (Exhibit 4), who had at about the same days notified Diaz Reus of the ongoing conflict of interest with his co-plaintiff Freites (then co-plaintiff in the Delaware case) and the imminent joinder of Mr. Rodriguez to the instant complaint.

> ***Exhibit 4:*** E-Mail from Diaz Reus Coronado addressed to Mr. Freites in opposition to Mr. Freites

good faith requests on the conflict of interest.

17. **The April 2025 Demand:** On April 22, 2025, Mr. Rodriguez (then already a Plaintiff to this case) demanded production of his client file, including Zoom recordings and communication records from 2012–2025. (Exhibit 5)

> **Exhibit 5:** E-Mail from Mr. Rodriguez on April 22nd, 2025 (then already a Plaintiff to this case) demanding production of his client file, including Zoom recordings and communication records from 2023.

18. **The May 2025 Obstruction:** On May 2 and May 6, 2025, Respondent Coronado denied the request, asserting that "no DRT attorney has represented you in any legal matter" and claiming Mr. Rodriguez required "leave from the Court to conduct discovery," falsely conflating a property right with litigation discovery. (See **Exhibit 6:** E-Mail from Coronado opposing production of Mr. Rodriguez' client file, including Zoom recordings and communication records).

> **Exhibit 6:** E-Mail from Coronado to Mr. Rodriguez opposing production of Mr. Rodriguez' client file, including Zoom recordings and communication records.

19. **The December 31, 2025 Demand:** On December 31, 2025, Mr. Rodriguez sent an "Urgent: Preservation Notice and Demand for Inspection" specifically listing the Zoom UUIDs and IP addresses (See **Exhibit 7**)

> ***Exhibit 7:*** Email from Mr. Rodriguez to Coronado and Counsel of Record for Defendant Medina on December

31st, 2025 on the subject of "Urgent: Preservation Notice and Demand for Inspection" specifically listing the Zoom UUIDs and IP addresses.

20. **The January 1, 2026 Denial:** Respondent Javier Coronado summarily rejected the request, claiming "there is no legal authority supporting your improper discovery request" and falsely asserting Mr. Rodriguez "already possess[es]" the documents. (See **Exhibit 8**).  It was, and it is, a material impossibility that Mr. Rodriguez could have such documents as the PBX (internal Diaz Reus phone central records pertaining to phone calls to or from Mr. Rodriguez, or the equivalent Zoom meeting logs and records).

> *Exhibit 8:* E-Mail from Coronado to Mr. Rodriguez on January 1st, 2026, summarily rejecting the request, claiming "there is no legal authority supporting your improper discovery request" and falsely asserting Mr. Rodriguez "already possess[es]" the documents.

## III. INCORPORATED MEMORANDUM OF LAW

### A. The Digital Records Are "Personal Property" Subject to Replevin

### 1. Digital Files as Chattels

While replevin historically applied to physical goods, Florida law recognizes electronic data as an asset. Fla. Stat. § 78.01 applies broadly to "personal property." The specific digital records sought here—Zoom administrative telemetry, PBX routing data, and access logs—serve as the digital equivalent of a "fax band" or a

9

consultation receipt. They possess independent value to Mr. Rodriguez as objective proof of the legal services provided. **The Firm's refusal constitutes the "wrongful detention" required for Replevin. Mr. Coronado's assertion that Mr. Rodriguez "already possesses" the documents is factually incorrect and technically misleading.** A critical **Information Asymmetry** exists: Mr. Rodriguez possesses or might posses "Client-Side" data (his sent emails, carrier call logs, browser history). **He *lacks* possession of the "Firm-Side" data subject to this Writ:** Zoom Administrator Dashboard telemetry (showing Firm attendees), internal PBX routing logs (showing call forwarding/recording), and forensic audit trails of attorney notes. These records reside solely in the Firm's custody.

### 2. Specificity of Identification (Fla. Stat. § 78.055)

The Motion describes the property with sufficient certainty:

- **Group 1: Zoom Meeting Instance Metadata (October 2, 2023).**
  - *The Chattel:* The specific database record associated with the Zoom session of Oct 2, 2023.
  - *Identification:* The 32-character Universally Unique Identifier (UUID).
  - *Technical Distinction:* Unlike a reusable "Meeting ID" (e.g., 929 9074 4032), the UUID acts as the unique serial number for a specific *instance* of a meeting. Possession of the UUID is required to query the Zoom API for that past meeting.
  - *Value to Plaintiff:* It serves as immutable proof of the fact, time, and duration of the legal service.

10

- **Group 2: Participant Detailed Telemetry.**
  - *The Chattel:* Native exports from the "Dashboard > Meetings > Past Meetings > Participant Details section of the Zoom Administrator portal.
  - *Data Fields:* Source IP Addresses (IPv4/v6), Device Fingerprinting (hardware/OS), and Join/Leave Timestamps (UTC).
  - *Value to Plaintiff:* These logs function as the digital equivalent of a visitor sign-in book, allowing Plaintiff to verify exactly who entered the "privileged bubble" of the consultation.

- **Group 3: Forensic Audit Trails for Notes.**
  - *The Chattel:* JSON or CSV technical logs documenting the existence of internal notes.
  - *Content:* Indices documenting the author, creation time, and modification time of notes taken regarding Mr. Rodriguez in 2023.
  - *Legal Basis:* Under *Donahue*, "internal legal memoranda and research materials" constitute client property.

- **Group 4: PBX/VoIP Telephone Records (2012-2025).**
  - *The Chattel:* Internal Call Detail Records (CDRs) from the Firm's PBX or VoIP provider.
  - *Scope:* Routing trails for the Firm's main number and direct lines.
  - *Necessity:* While Plaintiff has logs showing he *called* the Firm, he requires the "black box" data showing how the Firm's switch handled the call (e.g., forwarding to a partner).

- **Group 5: Access Logs of Historical Files.**
  - *The Chattel:* Metadata showing internal retrieval of the 2013–2015 "Continental vs. DMG" files.
  - *Theory:* If the Firm accessed archived files in 2023 to prepare for the consultation, those access logs constitute new records generated *relating to* the Plaintiff's file. Under the Entire File Doctrine, the client is entitled to know how their file is utilized.

## B. Plaintiff Has a Superior Right to Possession Under the "Entire File Doctrine"

### 1. Donahue v. Vaughn Mandates Surrender

Under Florida law, the "Entire File Doctrine" establishes that a client is entitled to the full fruits of the representation, including internal notes and research [^29]. The Florida Fifth District Court of Appeal in Donahue v. Vaughn, 721 So. 2d 356 (Fla. 5th DCA 1998), explicitly rejected the distinction between "work product" and "client property". Unlike federal discovery, where work product acts as a shield against adversaries, the file belongs to the client in a dispute between lawyer and client.

### 2. Prospective Clients and Rule 4-1.18

Diaz Reus argues Mr. Rodriguez was never a "retained" client. This defense fails under Rule 4-1.18, which extends duties of confidentiality to prospective clients [^32]. The records generated during the consultation embody that confidential information. If the lawyer retains them to the exclusion of the prospective client to

conceal a conflict, they convert client property.

### 3. Florida Ethics Opinion 88-11 (Reconsideration)

Even if a lien existed (which it does not, as no fees are owed), a lawyer must surrender papers if withholding them causes "foreseeable prejudice." Withholding these logs causes severe prejudice by preventing Mr. Rodriguez from proving the conflict of interest in the Freites litigation.

### C. Replevin Is Distinct from Civil Discovery

Respondents' assertion that this request requires "leave for discovery" is legally erroneous.

- **Discovery (Rule 1.280):** Procedural gathering of evidence; subject to proportionality; requester seeks a copy.
- **Replevin (Chapter 78):** Substantive cause of action; requester owns the document; no "undue burden" defense applies.

Mr. Rodriguez asserts a property right independent of the federal litigation. He is entitled to his property *now*, independent of any discovery motion.

### D. THE JANUARY 9, 2026 VOLTE-FACE: ADMISSION OF SPOLIATION AND CONTRADICTORY DEFENSES

On January 9, 2026, during the mandatory conferral call, Respondents' counsel, Mr. Gabor Gazso, abandoned the Firm's previous defenses in favor of a new, alarming admission. While Respondent Coronado previously asserted in writing on January 1, 2026, that Plaintiff "already possess[es]" the requested records [Exhibit 7], Mr. Gazso admitted that the specific "Firm-Side" logs did exist but have now been

destroyed.  Mr. Gazso stated: *"We did review the logs and the Zoom logs do not exist anymore. As one of the persons in charge of the 2023 Zoom meeting is not with the firm anymore (a secretary) the logs were in her account."*

This admission creates three fatal inconsistencies in Respondents' position:

1. **Admission of Existence vs. Denial of Representation:** Previously, Respondents argued that no representation existed and therefore no file existed. Mr. Gazso's admission that the Firm held unique logs in a secretary's account—and that the Firm attempted to retrieve them to "corroborate that no one else joined the meeting"—confirms these records were material evidence generated during the consultation.

2. **Spoliation vs. "Already Possess":** Mr. Coronado's January 1st claim that Plaintiff "already possesses" the documents is now proven factually impossible. If the logs were solely in a departed employee's account and are now "gone," the Plaintiff could not possibly possess them. This confirms the "Information Asymmetry" argued in this Motion.

3. **The Timeline of Destruction:** When pressed by Mr. Rodriguez, Mr. Gazso was unable to state *when* these records ceased to exist. This silence is critical. If the deletion occurred after the April 2025 demand or the December 31, 2025 Preservation Notice, it constitutes active spoliation of evidence. Attributing the deletion of forensic data regarding a Global Managing Partner's high-stakes consultation to the departure of administrative staff suggests, at best, gross negligence in data retention, and at worst, willful

destruction of the client file.

**D. Grounds for Pre-Judgment Writ and TRO**

**1. Danger of Destruction ("Spoliation by Expiration")**

Unlike physical files, server logs are volatile. Zoom and VoIP logs are subject to automated retention policies (e.g., 30-day deletion cycles). Diaz Reus's claim that they "found no records" suggests they may have already permitted automated deletion or intend to do so. This constitutes "destruction" or "waste" under Fla. Stat. § 78.068, justifying a Pre-Judgment Writ.

**2. Wrongful Detention**

The refusal to surrender the logs relied on a procedural objection ("improper discovery"), not a substantive claim of ownership or lien. Therefore, the detention is wrongful on its face.

**IV. PROCEDURAL COMPLIANCE: S.D. FLA. LOCAL RULES**

Plaintiffs have strictly adhered to the procedural requirements of the Southern District of Florida.

**Compliance with Local Rule 7.1(a)(3) (Conferral)**

S.D. Fla. Local Rule 7.1(a)(3) requires a movant to make a "good faith effort" to resolve issues before filing a motion. Plaintiff satisfied this requirement:

- **Certification:** Plaintiff's email on January 2, 2026, explicitly stated: "Consider this email exchange as the Mandatory Rule 7.1 conferral."
- **Impasse:** The Firm's categorical refusal on January 1, 2026 ("we reject" [1]) rendered further conferral futile. Under S.D. Fla. practice, a party need not

engage in endless debate once the opposing party issues a final rejection based on a claim of "no legal authority."

Distinction from Local Rule 26.1 (Discovery Disputes)

The Firm may argue this Motion is a "discovery dispute" subject to Local Rule 26.1(g) and its 28-day window. This argument fails for two reasons:

1. **Substantive vs. Procedural:** This is an independent action for Replevin, not a motion to compel under FRCP 37. The 28-day discovery window applies to procedural disputes within active litigation, not to a substantive claim for the return of property. The statute of limitations for Replevin is measured in years, not days.

2. **Timeliness:** Even applying the 28-day window by analogy, the Motion is timely. The "occurrence of grounds" was Mr. Coronado's refusal email on January 1, 2026.[1] Plaintiff filed this Expedited Motion well within the 28-day period.

Requirements for Expedited/Emergency Motion (Local Rule 7.1(d))

The urgency here is not a matter of convenience but of digital survival.

- **Spoliation by Expiration:** Server logs are subject to automated deletion.

- **Danger of Destruction:** The Firm rejected the "Preservation Notice" sent on December 31, 2025. Without a Writ ordering sequestration, digital data is in peril of "vanishing". This constitutes "conduct that may place the claimed property in danger of destruction" under Fla. Stat. § 78.068(2), justifying immediate pre-judgment relief. Furthermore, during the mandatory Rule 7.1 Conferal that Movants initiated with respect to the instant motion on **January**

16

**9th, 2026**, Respondents mentioned that,

- *"We did review the logs and the Zoom logs **do not exist any more**. As one of the persons in charge of the 2023 Zoom meeting is not with the firm anymore (a secretary) the logs were in her account."*

- Attorney for Respondents, Mr. Gabor GAZSO, was unable to state, when questioned by Mr. Rodriguez during conferral on the afternoon of January 9th 2026, when did the logs/records cease to exist - now that at least their "previous existence" had been acknowledged.

- *" If we (Diaz Reus) would of found the files/logs we would of brought them to the hearing to corroborate that no one else joined the meeting (other than Diaz, Colomar and Rodriguez)."*

> *In the Certificate of Good Faith Conferral for*
> *this instant motion.*

If true, Diaz Reus is additionally in breach of its fiduciary duties with respect to client's property; and every day that passes by, the risk of logs "fully vanishing" increases, as electronic files when "deleted" or "wiped" usually simply undergo a "digital deterioration" or "corruption" process that makes them potentially available even after "deletion" but the chances deteriorate with each passing day. It is to be highlighted that preservation of this data is not only mandatory but had also been requested by Plaintiff Rodriguez in early 2025.

## V.   LEGAL ARGUMENT FOR REPLEVIN, BOND WAIVER, AND SEVERANCE

17

### A. The Statutory Right to Replevin

Fla. Stat. § 78.01 provides that "Any person whose personal property is wrongfully detained by any other person... may have a writ of replevin to recover said personal property". The property is described with "sufficient certainty" via the UUIDs and technical parameters in the demands. Its value to the Firm is nominal, but substantial to the Plaintiff.

### B. Writ of Replevin under Fla. Stat. § 78.06

Plaintiff satisfies the criteria for a Pre-Judgment Writ without notice (or with shortened notice) based on the "Entire File Doctrine" and the statutory trigger of "danger of destruction" via either automated or malicious deletion.

### C. Waiver of Bond Requirement

Typically, a replevin plaintiff must post a bond. However, Plaintiff moves for a waiver or a "Show Cause" framework under Fla. Stat. § 78.067.

- **Show Cause Procedure:** The court may issue an Order to Show Cause or Show Cause Hearing why the property should not be delivered.
- **No Financial Prejudice:** The purpose of the bond is to protect the defendant from financial loss. "Seizing" a copy of digital logs causes no financial loss to the Firm; they are merely copying data. Therefore, the bond should be waived or set at a nominal amount.

### D. Severance of Parties

Pursuant to FRCP 21, Plaintiffs move for the severance of this possessory action. Co-Plaintiffs Otero and Freites agree to severance regarding the limited issue of

18

replevin, acknowledging that the property interest in these specific technical logs belongs exclusively to Rodriguez (other than the logs for attempt of access by Plaintiff Freites which might be considered as non-fungible co-property of both Rodriguez and Freites). Severance is mandated because the right to immediate possession is the "sole legal issue" at hand (*Belvant v. Cohen*, No. 3D23-1707, Fla. 3d DCA Nov. 19, 2025).

## VI. CONCLUSION AND PRAYER FOR RELIEF

Plaintiff has established a clear, substantive right to the immediate possession of his client file grounded in the "Entire File Doctrine" of *Donahue v. Vaughn*. The Respondents' attempt to shield this property behind the procedural wall of "improper discovery" is legally unsound. Replevin is the correct, independent vehicle to recover property wrongfully held by a former attorney.

**WHEREFORE**, Plaintiffs respectfully request that this Honorable Court:

1. **GRANT** the Expedited Verified Motion for Issuance of Writ of Replevin and Severance of Parties;

2. **ISSUE A TEMPORARY RESTRAINING ORDER** immediately enjoining Diaz Reus LLP from deleting, overwriting, or allowing the "spoliation by expiration" of the ESI described above;

3. **ISSUE A PRE-JUDGMENT WRIT OF REPLEVIN** directing the United States Marshal or appropriate officer to seize and deliver the following digital chattels to Plaintiff in native format (CSV/JSON/XML) within 24 hours:

   ○ **Groups 1 & 2:** All Zoom UUIDs, telemetry, and IP logs for Meeting ID 929

9074 4032 (Oct 2, 2023).

- **Group 3:** All logs of notes taken regarding Mr. Rodriguez in 2023.
- **Group 4:** PBX/VoIP routing logs for calls involving Mr. Rodriguez (2012–2025).
- **Group 5:** DMS access logs showing internal retrieval of Mr. Rodriguez's 2012–2016 files during 2023.

4. **ORDER** the immediate suspension of all automated deletion policies regarding the subject data;

5. **RECOGNIZE** Plaintiff's full compliance with S.D. Fla. Local Rule 7.1(a)(3) via the "good faith" conferral attempt on January 2, 2026;

6. **ORDER** severance of parties regarding the limited issue of replevin, acknowledging that the property interest in these specific technical logs belongs exclusively to Rodriguez, as RODRIGUEZ will be the sole Movant in the limited issue of replevin for the technical logs.

7. **FIND** that the danger of spoliation by expiration and the lack of financial prejudice to Respondents justifies expedited relief without a bond; and

8. **ORDER** Respondents to show cause why they claimed "no records" exist for a meeting confirmed by their own Managing Partner.

## V. VERIFICATION

I declare under penalty of perjury under the laws of the United States of America that the foregoing "**II. VERIFIED STATEMENT OF FACTS**" is true and correct. Executed on this 11th day of January, 2026.

20

JORGE ALEJANDRO RODRIGUEZ, Pro Se 

Eichholzstrasse 2,

6312-Steinhausen, CH

Dated: , 2025

Acting Pro Se

_____

Respectfully submitted,

/s/ Ivan R. Freites C.

IVAN R. FREITES C., Pro Se

4370 NW 107th Ave., Apt. 102

Doral, FL 33178

/s/ Miguel Enrique Otero

MIGUEL ENRIQUE OTERO, Pro Se

Eichholzstrasse 2,

6312-Steinhausen, CH

/s/ Jorge Alejandro Rodriguez

JORGE ALEJANDRO RODRIGUEZ, Pro Se

Eichholzstrasse 2,

6312-Steinhausen, CH

Dated: , 2026

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this date the foregoing document was sent to be filed with the Clerk of the Court by certified mail, and the Clerk of the Court using CM/ECF will serve counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF to:

Javier Coronado (jcoronado@diazreus.com)

Michael Diaz, Jr. (MDiaz@diazreus.com)

Marta Colomar Garcia (mcolomar@diazreus.com)

Diaz Reus & Targ, LLP

Respectfully submitted,

Jorge Alejandro Rodriguez M.   

State of Florida

County of Duval

This foregoing instrument was acknowledged before me by means of online notarization, this 01/12/2026 by Jorge Alejandro Rodriguez.



Ashley Postell
Online Notary
___ Personally Known OR ___ Produced Identification
Type of Identification Produced _____ PASSPORT

23

## CERTIFICATE OF GOOD FAITH CONFERENCE PURSUANT TO LOCAL RULE 7.1(a)(3)

Pursuant to S.D. Fla. Local Rule 7.1(a)(3), I hereby certify that I have conferred with counsel for the Respondents, Gabor Gazso, Esq. in absence of Javier Coronado, Esq., in a good faith effort to resolve the issues raised in this Motion and have been unable to do so.

Specifically, the conferral occurred as follows:

On January 9th 2025 around 3:00 pm, I reached over the phone with the firm of Diaz Reus and attempted to talk to Mr. Coronado, was communicated with Mr. Gazso.

Mr. Gazso confirmed the position of Diaz Reus and additionally provided the following *post hoc* information, that Diaz Reus had attempted to recover the files but they were not available as the Legal Assistant who created the call (Ms. Elerit Wizzard) was no longer working for Diaz Reus and therefore Diaz Reus was not able to produce the files, and that if they would have had the files (logs), they would have provided them. While this assertion is a contradiction in its own terms (objecting our request but stating that they wished to fulfil it) at the end the impass remained, and Diaz Reus opposes to  deliver the logs or records based upon the previous stance ("improper discovery" and "Mr Rodriguez is in possession of the documents") combined with new ***post hoc*** arguments such as:

- *"Zoom, T Mobile and carriers are the owners of the files and they do not need*

24

> *to provide the files, and that if Plaintiff required the files, Plaintiff is to request them from the carrier."*

- *"We do not consider such data as customer's property but of Diaz Reus."*
- PBX (internal phone calling system) if they exist , would be probably in possession of external IT department.
- *"We do not consider the files seeked by Plaintiff Rodriguez as property of Mr. Rodriguez"*
- *"We did review the logs and the Zoom logs **do not exist any more**. As one of the persons in charge of the 2023 Zoom meeting is not with the firm anymore (a secretary) the logs were in her account."*
- Mr. Gazso was unable to state, when questioned by Mr. Rodriguez during conferral, when did the logs/records cease to exist - now that at least their "previous" existence had been acknowledged.
- *" If we (Diaz Reus) would of found the files/logs we would of brought them to the hearing to corroborate that no one else joined the meeting (other than Diaz, Colomar and Rodriguez)."*

In addition, the conferral occurred with the following background:

1. **Demand:** On December 31, 2025, the Movant served a written "Preservation Notice and Demand for Inspection" upon Respondents regarding the subject digital records.

2. **Refusal:** On January 1, 2026, counsel for Respondents, Javier Coronado,

summarily rejected the demand via email, stating: *"There is no legal authority supporting your improper discovery request, which we reject."* Mr. Coronado further asserted that the Movant already possessed the documents, a factual premise the Movant disputes.

3. **Impasse:** On January 2, 2026, the Movant responded in writing to Mr. Coronado, citing specific legal authority (*Donahue v. Vaughn*; Fla. Ethics Op. 88-11) and clarifying the distinction between "Client-Side" and "Firm-Side" data. The Movant explicitly advised Mr. Coronado to *"Consider this email exchange as the Mandatory Rule 7.1 conferral."*

Given the Respondents' categorical oral and written refusals and denials of any legal basis for the request, further oral conference was rendered futile. The parties remain at an impasse.

Dated: January 11th, 2026

Jorge Alejandro Rodriguez M. 

Acting Pro Se

State of Florida
County of Duval

This foregoing instrument was acknowledged before me by means of online notarization,

this 01/12/2026 by Jorge Alejandro Rodriguez.



Ashley Postell
Online Notary



___ Personally Known OR ___ Produced Identification
Type of Identification Produced ___PASSPORT

26

*Exhibit 1:* Agenda as agreed by parties in September 20th, 2023 E-Mail.

On Sep 20, 2023, at 11:28 AM, Jorge Alejandro Rodriguez M. <jorge.r@intremaq.com> wrote:

Hi Michael,

I hope this email finds you well.

I am writing to request an initial consultation with you regarding a case related to Petroleos de Venezuela S.A. (PDVSA) refering to litigation in Federal Court in the US of a case related to workers indemnization from CITGO and PDVSA - International law commercial, workers rights, civil rights and human rights.

The case relates to the collection of unpaid workers compensation for several thousands of workers in an amount estimated in several billion USD,

As you previously represented me and I am aware of some of your previous litigations in matters related to foreign firms as well as of your familiarity with Venezuelan substantive law and US Law in general, I therefore believe that your expertise in this area aligns with the specific needs of our case.

I am interested in discussing the details further and exploring potential legal strategies. , I understand that this consultation will be subject to client-attorney privilege, non-binding with respect to engagement of parties, and without any associated fees or costs unless specifically agreed upon in writing.

Would it be possible to arrange a consultation at your earliest convenience?

I am available from 10:00 am to 20:00 Central European (Zürich) time and can accommodate your preferred mode of consultation, whether it be in person, over the phone, or via video conference.

During our consultation, I hope to:

1. Provide a more comprehensive overview of the case.
2. Understand your approach to similar cases or issues,

3. Discuss potential legal remedies and strategies.
4. Address any questions or concerns you may have.
5. Clarify the next steps and potential timelines.

I understand that your time is valuable, and I greatly appreciate your consideration of our request. If you require any additional information or documentation ahead of our meeting, please do not hesitate to let me know.

Thank you for considering my request for consultation. I look forward to the opportunity to speak with you and potentially work together to address the matters related to PDVSA-CITGO.

Kind regards,

Jorge Alejandro Rodriguez

+41 79 272 00 69

1

*Exhibit 2:*   Meeting calendar for Michael Diaz and Javier Coronado for Monday October 2nd, 2023 between 6 and 7 pm Central European Time i.e. 12:00 to 1:00 pm Eastern Time US)



***Exhibit 3:*** Mail from February 18th 2025, (and E Mail) from Plaintiff Freites addressed to Diaz Reus on the potential ongoing conflict of interest for the case Freites v. Medina.

Ivan R. Freites
¼ Villasana
4370 NW 107 Ave. Apt. 102
Doral FL 33178

**Miami, Feb 18th, 2025**

**Via Email and Certified Mail**

**Mr. Javier Coronado**
**Díaz Reus & Targ LLP**
jcoronado@diazreus.com
100 SE 2nd Street, Suite 3400
Miami, FL 33131

Re: Potential Conflict of Interest in Representation of Defendant Horacio Medina
**Case No.: 1:25-CV-20465-BB**

Dear **Mr. Coronado,**

Pursuant to **Local Rule 7.1(a)(3)** of the United States District Court for the Southern District of Florida, I am writing to confer with you regarding the potential conflict of interest arising from your firm's representation of Defendant **Horacio Medina** in the above-captioned matter.

As you may be aware, an associate of mine and client of your firm in former cases, Mr. Jorge Alejandro RODRIGUEZ, previously engaged in a substantive discussion with you and attorneys from your firm regarding the facts, strategies, and potential legal theories materially related to this case. During that discussion, confidential information was disclosed concerning the allegations, evidence, and procedural posture of this litigation.

Given the nature of the information shared and the firm's current representation of Defendant Medina—whose interests are directly adverse to mine—I am concerned that your firm's continued involvement presents a potential violation of the **Florida Rules of Professional Conduct**, including but not limited to:

- **Rule 4-1.6** (Confidentiality of Information)
- **Rule 4-1.9** (Duties to Former Clients)
- **Rule 4-1.18** (Duties to Prospective Clients)

Furthermore, the facts of this situation appear to meet the "substantial relationship" test articulated in *State Farm Mut. Auto. Ins. Co. v. K.A.W.*, 575 So. 2d 630 (Fla. 1991) and *Estrada v. Cabrera*, 632 So. 2d 1092 (Fla. 3d DCA 1994), which prohibits attorneys from representing adverse parties when confidential information related to the current litigation was previously shared.

Accordingly, I am seeking your position regarding the following:

4

Ivan R. Freites
¼ Villasana
4370 NW 107 Ave. Apt. 102
Doral, FL 33178

1. Whether **Díaz Reus & Targ LLP** acknowledges the prior discussion of case-related confidential information with my associate;
2. Whether your firm has implemented an ethical wall to prevent the use of the disclosed information;
3. Whether your firm intends to voluntarily withdraw from representing Defendant **Horacio Medina** to avoid the appearance of impropriety; and
4. If your firm believes no conflict exists, an explanation regarding the basis for that position.

I am available to discuss this matter at your convenience and to explore a potential resolution without court intervention. However, if we are unable to resolve this issue, I will have no alternative but to file a **Motion for Court Inquiry Regarding Potential Conflict of Interest**.

Please respond to this letter by February 23rd, 2025.

Thank you for your time and consideration.

Sincerely,

_____

**Ivan R. Freites C., Pro Se**

_____

## Certificate of Service

I hereby certify that a true and correct copy of this correspondence was sent to:

**Mr. Javier CORONADO**
**Díaz Reus & Targ LLP**
100 SE 2nd Street, Suite 3400
Miami, FL 33131
**Via Certified Mail**: Tracking No.
**Via Email**: jcoronado@diazreus.com

_____

**Ivan R. Freites C., Pro Se**

5

*Exhibit 4:* E-Mail from Diaz Reus Coronado addressed to Mr. Freites in opposition to Mr. Freites good faith requests on the conflict of interest.

Case 1:25-cv-20465-BB   Document 59-19   Entered on FLSD Docket 03/21/2025   Page 1 of 3

| | |
|---|---|
| **From:** | Javier Coronado |
| **To:** | O.B.O. Ivan Freites; ivanfreites7@gmail.com |
| **Cc:** | Michael Diaz; Marta Colomar Garcia; Gabor Gazso von Klingspor; Aylin Hovispo |
| **Subject:** | Re: [EXTERNAL] Re: Request for Written Conferral – Freites v. Medina et al., Case No. 1:25-CV-20465-BB |
| **Date:** | Tuesday, February 25, 2025 9:15:41 PM |
| **Attachments:** | Outlook-kimfnoamp.png |

Dear Mr. Freites:

We have thoroughly reviewed this matter based on the allegations made by both you and Mr. Rodriguez, and find no conflict in our representation of Mr. Medina. None of the attorneys listed in the September-October 2023 email threshold provided by Mr. Rodriguez had the "discussions" outlined in his emails from last week, including those regarding the alleged defamatory statements made by Mr. Medina and any ongoing federal litigation. Additionally, we have found no records to support the existence of such discussions. Therefore, we object to any potential motion suggesting that DRT has a conflict in representing Mr. Medina, and we are prepared to seek sanctions from the Court for pursuing such a motion.

Further, we have reviewed the case law you provided in opposition to our forthcoming motion to strike filing DE-12, and it does not support the proposition that you may file a conferral letter with the Court in violation of Local Rule 7.7. On the contrary, *Chambers v. NASCO* supports the requirement that parties comply with court mandates, such as Local Rule 7.7. We also believe that *Witten, Burger,* and *Capua* are relevant here, as they confirm the Court's authority to strike filings made in violation of the Local Rules.

Please let us know if you are amenable to striking filing DE-12 from the record so that we may proceed accordingly.

Respectfully,

Javier Coronado
Partner
*Certified in AML & Sanctions by ACAMS*



Diaz, Reus & Targ, LLP
100 SE 2nd Street
Suite 3400 | Miami Tower

Miami, Florida

Office: (1) 305.375.9220
jcoronado@diazreus.com | www.diazreus.com

United States . Latin America . Europe . Asia . Middle East . Africa

6

**Exhibit 5:** E-Mail from Mr. Rodriguez on April 22nd, 2025 (then already a Plaintiff to this case) demanding production of his client file, including Zoom recordings and communication records from 2023.

Jorge Alejandro Rodriguez M. <jorge.r@intramaq.com>

---

## Request for Personal Data, Communication, and Interaction Records

---

**Jorge Alejandro Rodriguez M.** <jorge.r@intramaq.com>     22 de abril de 2025 a las 6:29 p.m.

Para: Michael Diaz <MDiaz@diazreus.com>, Javier Coronado <jcoronado@diazreus.com>, Gabor Gazso von Klingspor <ggazso@diazreus.com>

CC: "O.B.O. Ivan Freites" <freites.usdcsf.1.25.cv.20465.bb@gmail.com>

--

 Gmail

Jorge Alejandro Rodriguez M. <jorge.r@intramaq.com>

## Request for Personal Data, Communication, and Interaction Records

**Jorge Alejandro Rodriguez M.** <jorge.r@intramaq.com>                                    22 de abril de 2025 a las 6:29 p.m.
Para: Michael Diaz <MDiaz@diazreus.com>, Javier Coronado <jcoronado@diazreus.com>, Gabor Gazso von Klingspor
<ggazso@diazreus.com>
CC: "O.B.O. Ivan Freites" <freites.usdcsf.1.25.cv.20465.bb@gmail.com>

To: Diaz Reus & Targ LLP Attn: Michael Diaz, Esq. 100 SE 2nd Street, Suite 3400 Miami, FL 33131

From: Jorge Alejandro Rodríguez

Subject: Request for Personal Data, Communication, and Interaction Records

Date: April 22nd, 2025

Dear Mr. Diaz,

In my capacity as a former active or potential client, and pursuant to my inherent rights regarding attorney-client
interactions and confidentiality obligations, I respectfully request that your firm, Diaz Reus & Targ LLP, promptly
produce all records and electronic files detailed herein that directly involve my interactions, in any capacity, with your
firm, its attorneys, or representatives:

  1. **Records Pertaining to Zoom Interactions (2023-2025):**
       - Full recordings (audio and video), transcripts, chat logs, and metadata from all Zoom conferences, calls,
         or meetings between myself and any representative or attorney of Diaz Reus & Targ LLP during 2023,
         2024, and 2025 (prior to Feb 1st, 2025).
       - All scheduling records, calendar invites, and email correspondence related to these Zoom interactions.

  2. **Electronic and Telephonic Communication Records:**
       - Complete electronic records of all email exchanges, text messages, and other digital communications
         between myself and any Diaz Reus & Targ LLP attorney or representative from 2012 to 2025 (prior to
         Feb 1st, 2025)
       - Detailed incoming and outgoing call records from your Miami office specifically related to calls involving
         myself  2012 to 2025 (prior to Feb 1st, 2025)   , including dates, times, durations, and participants
         involved in each communication.

  3. **Zoom and Telecommunication Provider Records:**
       - I hereby explicitly request and authorize Diaz Reus & Targ LLP to formally request from Zoom Video
         Communications, Inc., the complete data sets relevant to all Zoom interactions involving myself and
         your firm from August 2023 through 2025. The requested data includes user account information, IP
         addresses, connection details, recorded meetings, logs, chat transcripts, and related metadata.
       - Additionally, I explicitly request and authorize Diaz Reus & Targ LLP to formally request from your
         telecommunication service provider(s) all data related to phone communications involving myself and
         your Miami office, including call logs, metadata, phone numbers, caller IDs, and timestamps  2012 to
         2025 (prior to Feb 1st, 2025) .

  4. **Separate Request for the Year 2000 Interactions with Michael Diaz:**
       - All records, including meeting notes, memoranda, billing records, correspondence, email
         communications, telephone logs, and any other documentation regarding my interactions with Michael
         Diaz specifically during the year 2000.

  5. **Record of interactions of lawyers from Diaz Reus in former proceedings involving me:** including but not
     limited to the presence of attorneys from Diaz Reus in any evidentiary hearing  where I took part, prior to Feb.
     1st, 2025 .

Given the significance of confidentiality and ethical responsibilities inherent in the attorney-client relationship, I kindly
request compliance with this memorandum within ten (10) business days from receipt, no later than May 4th, 2025.

8

Should your firm have questions or require further clarification, please communicate them directly to me at your earliest convenience.

Thank you for your cooperation and prompt attention to this matter.

Sincerely,

Jorge Alejandro Rodriguez

—
Cordialmente / Best regards / Mit freundlichen Gruessen,

Jorge A. Rodriguez M.

www.intramaq.com

jorge.r@intramaq.com

9

**Exhibit 6:** E-Mail from Coronado to Mr. Rodriguez opposing production of Mr. Rodriguez' client file, including Zoom recordings and communication records.

---

**Javier Coronado** <jcoronado@diazreus.com>                                    2 de mayo de 2025 a las 4:54 p.m.
Para: "Jorge Alejandro Rodriguez M." <jorge.r@intramaq.com>, Michael Diaz <MDiaz@diazreus.com>, Gabor Gazso von
Klingsor <ggazso@diazreus.com>
CC: "O.B.O. Ivan Freites" <freites.usdcsf.1.25.cv.20465.bb@gmail.com>, Aylin Hovispo <ahovispo@diazreus.com>,
Marta Colomar Garcia <mcolomar@diazreus.com>

Thank you, Mr. Rodriguez. As further explained in DE-59 and the exhibits attached thereto, no DRT
attorney has represented you in any legal matter. Respectfully,

Javier Coronado
Partner
*AML & Sanctions Certified by ACAMS*



**Miami, Florida, USA**
160 SE 2nd Street
Suite 3400 | Miami Tower

---

Office: 305.375.9220

jcoronado@diazreus.com | www.diazreus.com

North America . Latin America . Europe . Asia . Middle East . Africa

10

*Exhibit 7:* Email from Mr. Rodriguez to Coronado and Counsel of Record for Defendant Medina on December 31st, 2025 on the subject of "Urgent: Preservation Notice and Demand for Inspection" specifically listing the Zoom UUIDs and IP addresses.

 Gmail

Jorge Alejandro Rodriguez M. <jorge.r@intramaq.com>

**Meeting logs. Urgent.**

Jorge Alejandro Rodriguez M. <jorge.r@intramaq.com>
Para: Michael Diaz <MDiaz@diazreus.com>

31 de diciembre de 2025 a las 10:59 p.m.

Subject: **URGENT: PRESERVATION NOTICE AND DEMAND FOR INSPECTION – Zoom Teleconference ESI (October 2023)**

To: Legal Department / Managing Partner, Diaz Reus From: Jorge Alejandro Rodriguez Date: [Insert Date] Re: Demand for Production of Electronic Logs and Forensic Metadata regarding Zoom Sessions (October 1, 2023 – October 31, 2023)

**PRIVILEGED AND CONFIDENTIAL**

To Whom It May Concern,

I am writing to formally demand the immediate preservation and subsequent production of all Electronically Stored Information (ESI), specifically technical forensic artifacts, logs, and metadata, related to all Zoom video conferencing sessions conducted between **Mr. Jorge Alejandro Rodriguez and Diaz Reus** (including its partners, associates, and staff) during the period of **October 1, 2023, through October 31, 2023**.

This request is not limited to the audiovisual recordings of the meetings but specifically targets the backend telemetry and immutable audit trails necessary for forensic validation.

**I. Scope of Required Technical Data**

Pursuant to standard forensic discovery protocols, you are hereby requested to export and provide the following specific data sets. These must be retrieved via the **Zoom Web Portal (Administrator Dashboard)** or the **Zoom API** to ensure metadata integrity.

**A. Meeting Instance Metadata (The "Envelope" Data)** For every meeting occurring in October 2023 involving the parties, provide:

- **Meeting UUIDs:** The 32-character Universally Unique Identifier for each specific meeting instance (distinct from the recurring 9-11 digit Meeting ID).
- **Host Information:** The specific user account (Email and User ID) that hosted the session.
- **Temporal Data:** Precise Start Time and End Time in **UTC format** to avoid timezone ambiguity.
- **Scheduled vs. Actual:** The logs distinguishing when the meeting was scheduled versus when the first participant actually joined (creating the instance).

**B. Participant Detailed Telemetry (QoS and Access Logs)** To verify identity, location, and device integrity, provide the "Dashboard > Meetings > Past Meetings > Participant Details" export, including:

- **Source IP Addresses:** The public IP address (IPv4 or IPv6) for every participant at the moment of connection.
- **Device Fingerprinting:** Device definitions (e.g., "Windows 10", "iOS 15.1"), Hardware type, and Zoom Client Version.
- **Network Type:** Connection method (Wired, Wifi, 4G/5G).
- **Join/Leave Timestamps:** Precise logs of every entry and exit event, including re-connections due to network drops (Critical for establishing presence).
- **Microphone/Camera Status:** Boolean logs indicating if/when video and audio streams were active or muted during the session.

**C. Operation and Sign-In Logs (Audit Trail)** To ensure no tampering has occurred, provide the **Operation Logs** from the Admin portal for the dates in question:

- **Administrative Actions:** Logs showing if any changes were made to the recording settings, chat retention policies, or user permissions regarding Mr. Rodriguez's account or the specific meeting instances.

11

- **Deletion Logs:** Records of any files (cloud recordings, transcripts, or chats) related to these meetings that were moved to the trash or permanently deleted.

**D. In-Meeting Communication Artifacts**

- **Chat Logs:** The raw .txt or JSON export of in-meeting chats (to Everyone and Direct Messages, if captured by retention policy).

- **File Transfer Logs:** Metadata of any files transferred via the Zoom client during these sessions (Filename, Size, Sender, Timestamp).

**II. Format of Production**

To facilitate forensic analysis, this data must be provided in its **native digital format** (CSV, JSON, or XML exports directly from the Zoom platform).

- **Do not provide screenshots or PDFs of logs,** as these strip essential metadata and prevent automated parsing.

- If cloud recordings exist, provide the direct download links or raw .mp4 files accompanied by their generated **MD5 or SHA-256 hash values** to verify file integrity.

---

**III. Duty to Preserve (Litigation Hold)**

Please be advised that this email serves as a formal **Notice to Preserve.** You have an affirmative legal duty to suspend any automatic deletion policies, retention schedules, or scrubbing routines that would result in the destruction of the data described above. This includes ensuring that data in the Zoom "Trash" is not purged after the standard 30-day window.

**Failure to preserve this ESI, resulting in spoliation of evidence, will be met with severe legal consequences.**

Given the technical volatility of server logs, I expect a confirmation of receipt and a timeline for the production of this data within **48 hours.**

Governed by the applicable rules of E-Discovery and Digital Forensics.

Sincerely,

**Jorge Alejandro Rodriguez**
—
Cordialmente / Best regards / Mit freundlichen Gruessen.

Jorge A. Rodriguez M.

www.intramaq.com

jorge.r@intramaq.com

12

*Exhibit 8:* E-Mail from Coronado to Mr. Rodriguez on January 1st, 2026, summarily rejecting the request, claiming "there is no legal authority supporting your improper discovery request" and falsely asserting Mr. Rodriguez "already possess[es]" the documents.

